**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| VICKIE FORBY, individually and on behalf of all others similarity situated, | § § § | |
| Plaintiff, | § § | Civil Action 3:16-CV-856-L |
| v. | § § | |
| ONE TECHNOLOGIES, LP; ONE TECHNOLOGIES MANAGEMENT LLC; and ONE TECHNOLOGIES CAPITAL LLP, | § § § § | |
| Defendants. | § § § | |

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR
RELIEF FROM JUDGMENT OR ORDER PURSUANT TO RULE 60**

**TABLE OF CONTENTS**

Introduction ........................................................................................................................1

Legal Standard ...................................................................................................................1

Argument & Authorities .....................................................................................................2

Conclusion .........................................................................................................................5

# TABLE OF AUTHORITIES

CASES                                                                                            PAGE(S)

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ............................................................................................4

*Garrison v. United States*,
   No. 3:21-CV-1091-D, 2021 WL 4265767 (N.D. Tex.) ...................................... 1-2

*Hess v. Cockrell*,
   281 F.3d 212 (5th Cir. 2002) ..............................................................................2

*Kochina Pipeline Co. v. Lillis*,
   471 S.W.3d 445 (Tex. 2015) ...............................................................................4

*Nat'l City Golf Fin. v. Scott*,
   899 F.3d 412 (5th Cir. 2018) ..............................................................................2

*Rufo v. Inmates of Suffolk Cnty. Jail*,
   502 U.S. 367 (1992) ............................................................................................2

*Sec. & Exch. Comm'n v. Novinger*,
   No. 4:15-cv-00358-O, 2021 WL 4497672 (N.D. Tex.) .......................................2

*SEC v. Novinger*,
   (5th Cir. Sept. 30, 2021) ......................................................................................2

STATUTES & RULES

FED. R. CIV. P. 23 ...................................................................................................1

FED. R. CIV. P. 60(b) ...............................................................................................1

FED. R. CIV. P. 60(b)(2) ....................................................................................... 1-3

FED. R. CIV. P. 60(b)(5) ....................................................................................... 2-3

FED. R. CIV. P. 60(b)(6) ..........................................................................................2

## Introduction

This Court struck Plaintiff's class allegations because Plaintiff "cannot meet the numerosity requirement needed to certify a class under Rule 23 or the typicality and adequate representative requirements" because Defendant waived its arbitral rights with respect to Plaintiff, but not absent class members.[1]  However, newly discovered evidence in this case shows that Defendant indeed waived its arbitral rights with respect to absent class members because it could not arbitrate any consumer claims before the AAA, or under AAA's rules, until October 26, 2021.[2]

Further, the new evidence reveals that Defendant's arbitration agreement has maintained "a material or substantial deviation" from AAA's rules and policies, since at least 2014, when Plaintiff was fraudulently bound to Defendant's Terms and Conditions and subject to its unlawful business tactics.  Because Defendant's arbitration agreement failed to comply with AAA's rules and policies until October 26, 2021, no consumer claim against Defendant could have been arbitrated prior to that date.

Plaintiff therefore seeks relief from the Court's Order striking her class allegations [Dkt. 129].  The facts set forth in *Plaintiff's Motion for Leave to File Fourth Amended Complaint* are incorporated as if fully set forth herein.

## Legal Standard

Pursuant to Rule 60, on motion and just terms, a court may relieve a party from a final judgment or order. The Rule provides reasons for granting that relief.  Three reasons apply here: a) newly discovered evidence; b) application the judgment prospectively is no longer equitable; c) any other reason that justifies relief.  *See* FED. R. CIV. P. 60(b)(2), (5) and (6), respectively.  The movant has the burden of establishing at least one of the Rule 60(b) reasons applies. That

---

[1] [Dkt. 129] at 17.
[2] *See* Pltf.'s Mot. for Leave at ¶¶ 22-51.

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR RELIEF FROM JUDGMENT OR ORDER PURSUANT TO RULE 60 - Page 1**

determination rests with the discretion of the Court. *Garrison v. United States*, No. 3:21-CV-1091-D, 2021 WL 4265767, at *1 (N.D. Tex. Sept. 20, 2021) (citations omitted).

Plaintiff seeks relief from this Court's Order striking her class allegations [Dkt. 129] for the reasons set forth:  Rule 60(b)(2), (5), and (6).

To obtain relief under Rule 60(b)(2), the movant must show that it "exercised due diligence in obtaining the information" and "that the evidence is material and controlling and clearly would have produced a different result if present before the original judgment." *Nat'l City Golf Fin. v. Scott*, 899 F.3d 412, 418 (5th Cir. 2018) (citation and internal quotations omitted).  Rule 60(b)(2) is subject to a time limitation.

"To obtain relief under Rule 60(b)(5), the movant must show that: (1) a significant change in the facts or law warrants modification of an order; and (2) 'the proposed modification is suitably tailored to the changed circumstances.'" *Sec. & Exch. Comm'n v. Novinger*, No. 4:15-cv-00358-O, 2021 WL 4497672, at *3 (N.D. Tex. Aug. 10, 2021), *appeal filed SEC v. Novinger* (5th Cir. Sept. 30, 2021), (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383-84 (1992)). It is not subject to a time limitation.

To obtain relief under the Rule 60(b)(6) "catch-all" provision, extraordinary circumstances must be present. *Hess v. Cockrell*, 281 F.3d 212, 216 (5th Cir. 2002) (citation and internal quotations omitted).  As with Rule 60(b)(5), the catch-all provision has no time limitation.

Finally, Rule 60 "does not limit a court's power to . . . set aside a judgment for fraud on the court." FED. R. CIV. P. 60(d)(3).

## Argument & Authorities

Since this Court granted Defendant's motion to strike Plaintiff's class allegations, newly discovered evidence reveals that Defendant failed to ever register its consumer clause with the

AAA, and was prohibited from arbitrating any consumer claim prior to October 26, 2021.[3]  The evidence is material and controlling and would have produced a different result if known before the Court's Order striking Plaintiff's class allegations and the Fifth Circuit's opinion ordering Plaintiff's CROA claim to arbitration.  *See* FED. R. CIV. P. 60(b)(2).[4]

In fact, the AAA's review of Defendant's arbitration provision in October 2021 found that it "**has a material or substantial deviation from the [AAA]** *Consumer Rules* **and/or** *Protocol*," which Defendant had to waive in order for the AAA to accept its consumer clause.[5]  Accordingly, not only did Defendant fail to register its consumer clause with AAA prior to October 26, 2021, but Defendant's consumer clause has always maintained "a material or substantial deviation" from AAA's rules and policies, since the AAA required companies to register their consumer clauses for compliance and approval by the AAA in 2014.

The AAA told Defendants that it "will decline administration of cases filed pursuant to the One Technologies LLC consumer arbitration clause" unless Defendant waived those non-conforming provisions.[6]  Even then, the AAA made clear that "[t]he AAA decision to proceed with administration of One Technologies, LLC cases would not be applicable to previously declined cases and applies to new filings from this date [October 26, 2021] forward."[7]  It follows

---

[3] Ex. 1; Ex. 6; Ex. 9.

[4] While Rule 60(c)(1) provides that a motion under Rule 60(b)(1)-(3) must be brought within one year after entry of the order, Plaintiff had no reason to believe that Defendant would mislead her and this Court by claiming Plaintiff's claims must be arbitrated when Defendant was precluded from arbitrating Plaintiff's claims.  Rule 60 does not limit this Court's power to "set aside a judgment for fraud on the court."  FED. R. CIV. P. 60(d)(3).  Therefore, to the extent Plaintiff is not granted relief under Rule 60(b)(5) or (6), this Court should still set aside the Order striking Plaintiff's class allegations because Plaintiff was unaware of Defendant's fraud on the Court until October 2021.

[5] A true and correct copy of AAA correspondence to Defendant, dated October 20, 2021, is attached hereto as **<u>Exhibit 10</u>** (italicized emphasis original, bold emphasis added).

[6] Ex. 9

[7] *Id.*

that no consumer could have ever been bound by Defendant's arbitration agreement prior to October 26, 2021, because the consumer clause was never, and could have never been, accepted by the AAA as written in those agreements.

Additionally, even assuming the arbitration agreement is enforceable, which it is not,[8] the class waiver only applies to arbitration proceedings and not proceedings before this Court. The Terms and Conditions make clear that those bound thereby only waive their right to proceed in class arbitration, which this Court noted in its Order striking Plaintiff's class allegations.[9] If a contract's language can be given a certain or definite meaning and the contract is unambiguous, then the courts should interpret it as a matter of law. *Kochina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 449 (Tex. 2015); *cf. AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (FAA reflects the "fundamental principle that arbitration is a matter of contract") (citation omitted). A contract is not ambiguous "because the parties disagree on its meaning." *Id.* at 450.

Here, the Terms and Conditions unambiguously preclude the parties from joining or consolidating claims ***in arbitration*** and ***arbitrating any claims*** as a class representative or member.[10] As a matter of law, neither Plaintiff nor any other consumer purportedly bound by the Terms and Conditions waived any right to join or consolidate or adjudicate claims as class representative or member in this judicial forum.

The fact that Defendant could not arbitrate was and is the central fact of litigation to date. No other fact is more important. It is also a new fact. It warrants a change in the Court's previous

---

[8] *See* Plaintiff's Fourth Amended Complaint at ¶¶ 63-92.

[9] [Dkt. 129] at 14 ("the arbitration clause does not explicitly prohibit class action litigation in the judicial forum"); *see also* Ex. 4 at ¶ 23 ("NEITHER YOU NOR WE SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS ***IN ARBITRATION*** BY OR AGAINST OTHER CONSUMERS OR ***ARBITRATE*** ANY CLAIMS AS A CLASS REPRESENTATIVE OR MEMBER.") (emphasis added).

[10] Ex. 4 at ¶ 23.

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR RELIEF FROM JUDGMENT OR ORDER PURSUANT TO RULE 60 - Page 4**

order under Rule 61(b)(2).

However, if this Court were to conclude that it cannot grant relief because of the time limitation applicable to (b)(2), then the Court should determine that application of the order striking Plaintiff's class allegations prospectively is no longer equitable, for all of the reasons stated above. Surely this Court, when granting the motion to strike the class allegations, had no idea that Defendant could not arbitrate. Just as surely, if the Court were aware at that time that Defendant could not arbitrate, it would never have entered that order. The prospective application of the order would leave Plaintiff without a remedy, a consequence that is unjust, and one the Court had no reason to foresee.

The catch-all provision provides another reason for this Court to grant relief: under Rule 60(b)(6), this Court can grant relief based upon the newly discovered material fact (Defendant could not arbitrate) because, at the time it ruled on the order, the Court assumed **exactly the opposite fact:** that the parties could arbitrate. Relief can be granted without application of any time limitation.

At a minimum, Plaintiff is entitled to certification discovery to prove that One Tech never complied with the AAA rules and thus could not have compelled *any* class member to arbitration. As it turns out, Forby is not "in a class of one" *see* [Dkt. 129], but is a representative of an entire class of consumers whose claims could not and cannot be compelled to arbitration.  The end result is that One Tech has waived the arbitration provision globally: none of those consumers can arbitrate their claims, and they are not subject to any provision limiting their ability to bring or join class claims.

## Conclusion

Defendant's arbitration provision in Plaintiff's and every class members' Terms and Conditions was never registered with AAA, nor could it have been, as written, because it contained

a material or substantial deviation from AAA rules and policies.  Moreover, neither Plaintiff nor absent class members waived any right to pursue class litigation in this forum.  For these reasons, the Court should grant Plaintiff's Motion for Relief and reinstate Plaintiff's class allegations and Plaintiff's CROA claim.

November 12, 2021                                 Respectfully submitted,


                                                 */s/ Stuart L. Cochran*
                                                 Stuart L. Cochran
                                                 Texas Bar No. 24027936
                                                 Blake E. Mattingly
                                                 Texas Bar No. 24104229
                                                 STECKLER WAYNE COCHRAN CHERRY PLLC
                                                 12720 Hillcrest Rd., Ste. 1045
                                                 Dallas TX 75230
                                                 Tel:    972-387-4040
                                                 Email: stuart@swclaw.com
                                                 Email: blake@swclaw.com

                                                 David C. Nelson (ARDC 6225722)
                                                 NELSON & NELSON, ATTORNEYS AT LAW, P.C.
                                                 420 North High Street, P.O. Box Y
                                                 Belleville, IL 62222
                                                 Tel: 618-277-4000
                                                 Email: dnelson@nelsonlawpc.com

                                                 Matthew H. Armstrong (MoBar 42803)
                                                 ARMSTRONG LAW FIRM LLC
                                                 8816 Manchester Rd., No. 109
                                                 St. Louis MO 63144
                                                 Tel:    314-258-0212
                                                 Email: matt@mattarmstronglaw.com

                                                 **ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF CONFERENCE**

Plaintiff is filing this motion pursuant to the court's directive at the most recent status conference in this case. Based upon the discussions during same, counsel for Defendant indicated they were opposed to Plaintiff's relief sought.

*/s/ Stuart L. Cochran*
Stuart L. Cochran


## **CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2021, this document was filed through the Court's ECF system, which automatically transmits the filing to all counsel of record for all parties in this litigation.

*/s/ Stuart L. Cochran*
Stuart L. Cochran

# EXHIBIT 1



1101 Laurel Oak Road
Voorhees, NJ 08043

October 18, 2021

Stuart L. Cochran, Esq.
Steckler Wayne Cochran Cherry PLLC
12720 Hillcrest Rd.
Suite 1045
Dallas, TX 75230
Via Email to: stuart@swclaw.com

CSC-Lawyers Incorporating Service
211 East 7th Street Suite 620
Austin, TX 78701-3218
Via Mail

**Case Number: 01-21-0016-5576**

Vickie Forby Kimmel
-vs-
One Technologies, LLC

Dear Parties:

Claimant has filed with us a demand for arbitration. We note that the arbitration clause provides for arbitration by the American Arbitration Association ("AAA").

Prior to the filing of this arbitration, One Technologies, LLC failed to comply with the AAA's policies regarding consumer claims, set forth in the Consumer Due Process Protocol ("Protocol") and the Consumer Arbitration Rules ("Consumer Rules"), including the Costs of Arbitration, which can be found on our web site, www.adr.org. Accordingly, we must decline to administer this claim and any other claims between One Technologies, LLC and its consumers at this time. Please note that, for cases proceeding under the Consumer Rules, the AAA reviews the relevant arbitration agreement for material compliance with the Protocol and the Consumer Rules. The AAA's review is administrative; it is not an opinion on whether the arbitration agreement, the contract, or any part of the contract is legally enforceable, nor is it a determination regarding the arbitrability of the dispute.

We have administratively closed our file and will refund any payment received by the filing party. According to R-1(d) of the Consumer Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

If you believe we have declined this matter in error, please email ConsumerFiling@adr.org.

Pursuant to the AAA's current policy, in the normal course of our administration, the AAA may maintain certain electronic case documents in our electronic records system. Such electronic documents may not constitute a complete case file. Other than certain types of electronic case documents that the AAA maintains indefinitely, electronic case documents will be destroyed 3 months after the date of this letter.

If One Technologies, LLC advises the AAA in the future of its intention to comply with the AAA's Consumer Rules and Protocol and, if applicable, resolves any outstanding payment obligations, the AAA may consider at its sole discretion, accepting newly filed consumer cases going forward. Therefore, if One Technologies, LLC wishes for the AAA to consider accepting consumer disputes going forward, One Technologies, LLC must, at a

minimum, register its clause on the Consumer Clause Registry on our website, www.adr.org/clauseregistry. Upon completion of the registration process and confirmation from the AAA that One Technologies, LLC is now active on the Consumer Clause Registry, One Technologies, LLC is responsible for informing all parties that Claimant may re-file their claim.

Sincerely,

Consumer Filing Team
ConsumerFiling@adr.org
Fax: (877) 304-8457

cc:
Blake E. Mattingly, Esq.

# EXHIBIT 2

# Consumer Arbitration Rules



AMERICAN ARBITRATION ASSOCIATION®

Available online at **adr.org/consumer**

Rules Amended and Effective September 1, 2014
Cost of Arbitration Effective January 1, 2016

# Table of Contents

Consumer Arbitration Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

   About the AAA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

   The Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

   The AAA's Consumer Arbitration Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

   Availability of Mediation through Mediation.org . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

   Administrative Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

   Arbitrator's Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

   Notification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Filing a Case and Initial AAA Administrative Steps . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

   R-1. Applicability (When the AAA Applies These Rules) . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

   R-2. Starting Arbitration under an Arbitration Agreement in a Contract . . . . . . . . . . . . .11

   R-3. Agreement to Arbitrate When There is No AAA Arbitration Clause . . . . . . . . . . . .13

   R-4. AAA Administrative Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

   R-5. Neutral Arbitrator's Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

   R-6. Depositing Neutral Arbitrator's Compensation with the AAA. . . . . . . . . . . . . . . . . .14

   R-7. Expenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

   R-8. Changes of Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

   R-9. Small Claims Option for the Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

   R-10. Administrative Conference with the AAA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

   R-11. Fixing of Locale (the city, county, state, territory and/or country where the
       arbitration will take place) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

   R-12. Business Notification and Publicly-Accessible Consumer Clause Registry . . . . . .16

   R-13. AAA and Delegation of Duties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

   R-14. Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

Appointing the Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

   R-15. National Roster of Arbitrators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

   R-16. Appointment from National Roster . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

   R-17. Number of Arbitrators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

   R-18. Disclosure. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

   R-19. Disqualification of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

   R-20. Vacancies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

Pre-Hearing Preparation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

R-21. Preliminary Management Hearing with the Arbitrator . . . . . . . . . . . . . . . . . . . . . . .20

R-22. Exchange of Information between the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

R-23. Enforcement Powers of the Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

R-24. Written Motions (except for Dispositive Motions—see R-33) . . . . . . . . . . . . . . . .21

R-25. Representation of a Party . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

R-26. Setting the Date, Time, and Place (the physical site of the hearing within the
       designated locale) of Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

R-27. Written Record of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

R-28. Interpreters. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

R-29. Documents-Only Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23


Hearing Procedures. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

R-30. Attendance at Hearings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

R-31. Oaths . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

R-32. Conduct of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

R-33. Dispositive Motions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

R-34. Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

R-35. Evidence by Affidavit and Post-Hearing Filing of Documents or Other Evidence 25

R-36. Inspection or Investigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

R-37. Interim Measures (a preliminary decision made by the arbitrator involving part
       or all of the issue(s) in dispute in the arbitration) . . . . . . . . . . . . . . . . . . . . . . . . .26

R-38. Postponements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

R-39. Arbitration in the Absence of a Party or Representative . . . . . . . . . . . . . . . . . . . . .26

Conclusion of the Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

R-40. Closing of Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

R-41. Reopening of Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

R-42. Time of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

R-43. Form of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

R-44. Scope of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

R-45. Award upon Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

R-46. Delivery of Award to Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

R-47. Modification of Award for Clerical, Typographical, or Mathematical Errors. . . . . .29

Post Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

R-48. Release of Documents for Judicial Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . .30

R-49. Applications to Court and Exclusion of Liability . . . . . . . . . . . . . . . . . . . . . . . . .30


General Procedural Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31

R-50. Waiver of Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31

R-51. Extensions of Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31

R-52. Serving of Notice and AAA and Arbitrator Communications . . . . . . . . . . . . . . . .31

R-53. Interpretation and Application of Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

R-54. Remedies for Nonpayment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

R-55. Declining or Ceasing Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32


Costs of Arbitration (including AAA Administrative Fees) . . . . . . . . . . . . . . . . . . . . . .33

(i) Filing Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

(ii) Neutral Arbitrator's Compensation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

(iii) Refund Schedule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

(iv) Hearing Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

(v) Hearing Room Rental. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

(vi) Abeyance Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

(vii) Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

(viii) Consumer Clause Review and Registry Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36


Procedures for the Resolution of Disputes through Document Submission . . . . .37

D-1. Applicability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

D-2. Preliminary Management Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

D-3. Removal from the Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

D-4. Time of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .38

Glossary of Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

  Administrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

  ADR Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

  ADR Process. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

  ADR Program. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

  Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

  Arbitration Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

  Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

  Case Administrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

  Claimant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

  Demand for Arbitration (also referred to as "Demand"). . . . . . . . . . . . . . . . . . . . . . . . 40

  Documents-Only Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

  Independent ADR Institution  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

  In-Person Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

  Mediation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

  Neutral . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

  Party . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

  Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

  Opposing Party . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

  Respondent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

  Telephone Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42



# Consumer Arbitration Rules

## Introduction

Millions of consumer purchases take place each year. Occasionally, these transactions lead to disagreements between consumers and businesses. These disputes can be resolved by arbitration. Arbitration is usually faster and cheaper than going to court.

The American Arbitration Association® ("AAA®," "the Association") applies the *Consumer Arbitration Rules* ("Rules") to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA has the discretion to apply or not to apply the *Consumer Arbitration Rule*, and the parties are able to bring any disputes concerning the application or non-application of the Rules to the attention of the arbitrator. Consumers and businesses are permitted to seek relief in a small claims court for disputes or claims within the scope of the small claims court's jurisdiction. These Rules were drafted and designed to be consistent with the minimum due process principles of the *Consumer Due Process Protocol*.

### About the AAA

The administrator's role is to manage the administrative aspects of the arbitration, such as the appointment of the arbitrator, preliminary decisions about where hearings might take place, and handling the fees associated with the arbitration. As administrator, however, the AAA does not decide the merits of a case or make any rulings on issues such as what documents must be shared with each side. Because the AAA's role is only administrative, the AAA cannot overrule or change an arbitrator's decisions or rulings. The administrator will comply with any court orders issued from litigation involving the parties to the dispute.

The American Arbitration Association, founded in 1926, is a neutral, independent, and private not-for-profit organization. We offer a broad range of conflict management services to businesses, organizations, and individuals. We also provide education, training, and publications focused on methods for settling disputes out of court.

## The Arbitrator

Except where the parties to a case reach their own settlement, the arbitrator will make the final, binding decision called the Award on the dispute and render it in writing. The Arbitrator makes all the procedural decisions on a case not made by the Administrator or not decided jointly by the parties. The arbitrator may grant any remedy, relief, or outcome that the parties could have received in court, including awards of attorney's fees and costs, in accordance with the law or laws that apply to the case.

Arbitrators are neutral and independent decision makers who are not employees of the AAA. Once appointed to a case, an arbitrator may not be removed by one party without the other party's consent or unless the Administrator determines an arbitrator should be removed and replaced by another arbitrator chosen by the Administrator in a manner described in these Rules.

## The AAA's Consumer Arbitration Rules

The AAA has developed the *Consumer Arbitration Rules* for consumers and businesses that want to have their disagreements resolved through arbitration.

## Availability of Mediation through Mediation.org

Mediation in consumer disputes is also available to help parties resolve their disputes. Parties interested in participating in mediation may find a mediator through **www.mediation.org.**

## Administrative Fees

The Association charges a fee for its services under these Rules. A fee schedule is included at the end of these Rules in the Costs of Arbitration section.

### Arbitrator's Fees

Arbitrators are paid for the time they spend resolving disputes. The business makes deposits as outlined in the fee schedule in the Costs of Arbitration section of these Rules. Unused deposits are refunded at the end of the case.

### Notification

A business intending to incorporate these Rules or to refer to the dispute resolution services of the AAA in a consumer alternative dispute resolution ("ADR") plan should, at least 30 days prior to the planned effective date of the program,

• notify the Association of its intention to do so, and

• provide the Association with a copy of the consumer dispute resolution plan.

If a business does not comply with this requirement, the Association reserves the right to withhold its administrative services. For more information, please see R-12 below.

## Filing a Case and Initial AAA Administrative Steps

### R-1. Applicability (When the AAA Applies These Rules)

**(a)** The parties shall have made these *Consumer Arbitration Rules* ("Rules") a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association ("AAA"), and

   **1)** have specified that these *Consumer Arbitration Rules* shall apply;

   **2)** have specified that the *Supplementary Procedures for Consumer-Related Disputes* shall apply, which have been amended and renamed the *Consumer Arbitration Rules*;

   **3)** the arbitration agreement is contained within a consumer agreement, as defined below, that does not specify a particular set of rules; or

   **4)** the arbitration agreement is contained within a consumer agreement, as defined below, that specifies a particular set of rules other than the *Consumer Arbitration Rules.*

When parties have provided for the AAA's rules or AAA administration as part of their consumer agreement, they shall be deemed to have agreed that the application of the AAA's rules and AAA administration of the consumer arbitration shall be an essential term of their consumer agreement.

The AAA defines a consumer agreement as an agreement between an individual consumer and a business where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use.

Examples of contracts that typically meet the criteria for application of these Rules, if the contract is for personal or household goods or services and has an arbitration provision, include, but are not limited to the following:

- Credit card agreements
- Telecommunications (cell phone, ISP, cable TV) agreements
- Leases (residential, automobile)
- Automobile and manufactured home purchase contracts
- Finance agreements (car loans, mortgages, bank accounts)
- Home inspection contracts
- Pest control services

- Moving and storage contracts

- Warranties (home, automobile, product)

- Legal funding

- Health and fitness club membership agreements

- Travel services

- Insurance policies

- Private school enrollment agreements

Examples of contracts that typically do not meet the criteria for application of these Rules, should the contract contain an arbitration provision, include, but are not limited to the following:

- Home construction and remodeling contracts

- Real estate purchase and sale agreements

- Condominium or homeowner association by-laws

- Business insurance policies (including crop insurance)

- Commercial loan and lease agreements

- Commercial guaranty agreements

**(b)** When parties agree to arbitrate under these Rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these Rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in the agreement of the parties and in these Rules and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices. Arbitrations administered under these Rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so.

**(c)** The consumer and the business may agree to change these Rules. If they agree to change the Rules, they must agree in writing. If the consumer and the business want to change these Rules after the appointment of the arbitrator, any changes may be made only with the approval of the arbitrator.

**(d)** The AAA administers consumer disputes that meet the due process standards contained in the *Consumer Due Process Protocol* and the *Consumer Arbitration Rules.* The AAA will accept cases after the AAA reviews the parties' arbitration agreement and if the AAA determines the agreement substantially and materially complies with the due process standards of these Rules and the *Consumer Due Process Protocol.* Should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

**(e)** The AAA has the initial authority to apply or not to apply the *Consumer Arbitration Rules*. If either the consumer or the business disagrees with the AAA's decision, the objecting party must submit the objection by the due date for filing an answer to the demand for arbitration. If an objection is filed, the arbitrator shall have the authority to make the final decision on which AAA rules will apply.

**(f)** If, within 30 days after the AAA's commencement of administration, a party seeks judicial intervention with respect to a pending arbitration and provides the AAA with documentation that judicial intervention has been sought, the AAA will suspend administration for 30 days to permit the party to obtain a stay of arbitration from the court.

**(g)** Where no disclosed claims or counterclaims exceed $25,000, the dispute shall be resolved by the submission of documents only/desk arbitration (see R-29 and the *Procedures for the Resolution of Disputes through Document Submission* below). Any party, however, may ask for a hearing. The arbitrator also may decide that a hearing is necessary.

## R-2. Starting Arbitration under an Arbitration Agreement in a Contract

**(a)** Arbitration filed under an arbitration agreement naming the AAA shall be started in the following manner:

    **(1)** The party who starts the arbitration (referred to as the "claimant" throughout the arbitration) must contact, in writing, the party that the case is filed against (referred to as the "respondent" throughout the arbitration) that it wishes to arbitrate a dispute. This written contact is referred to as the Demand for Arbitration ("Demand"). The Demand must do the following:

- Briefly explain the dispute

- List the names and addresses of the consumer and the business, and, if known, the names of any representatives of the consumer and the business

- Specify the amount of money in dispute, if applicable

- Identify the requested location for the hearing if an in-person hearing is requested

- State what the claimant wants

    **(2)** The claimant must also send one copy of the Demand to the AAA at the same time the demand is sent to the respondent. When sending a Demand to the AAA, the claimant must also send the following:

- A copy of the arbitration agreement contained in the contract and/or agreement and/or purchase document

- The proper filing fee; the amount of the filing fee can be found in the Costs of Arbitration section at the end of these Rules.

**(3)** If the arbitration is pursuant to a court order, the claimant must send one copy of the Demand to the AAA at the same time the Demand is sent to the respondent. When sending a demand to the AAA, the claimant must also send the following:

- A copy of the court order
- A copy of the arbitration agreement contained in the contract and/or agreement and/or purchase document
- The proper filing fee

The filing fee must be paid before a matter is considered properly filed. If the court order directs that a specific party is responsible for the filing fee, it is the responsibility of the filing party either to make such payment to the AAA and seek reimbursement as directed in the court order or to make other such arrangements so that the filing fee is submitted to the AAA with the Demand.

The claimant may file by mail. The mailing address of the AAA's Case Filing Services is:

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

Or, the claimant may file online using AAA WebFile: **https://www.adr.org**

Or, the claimant may file at any of the AAA's offices.

**(b)** The AAA will send a written notice letting the consumer and the business know the Demand for Arbitration has been received.

**(c)** The respondent may submit a written response to the Demand, known as an "answer," which describes how the respondent responds to the claimant's claim. The answer must be sent to the AAA within 14 calendar days after the date the AAA notifies the parties that the Demand for Arbitration was received and all filing requirements were met. The answer must be

- in writing,
- sent to the AAA, and
- sent to the claimant at the same time.

**(d)** The respondent may also file a counterclaim, which is the respondent filing a Demand against the claimant. If the respondent has a counterclaim, the counterclaim must briefly explain the dispute, specify the amount of money involved, and state what the respondent wants.

**(e)** If no answer is filed within 14 calendar days, the AAA will assume that the respondent does not agree with the claim filed by the claimant. The case will move forward after 14 days regardless of whether an answer is filed.

**(f)** When sending a Demand or an answer, the consumer and the business are encouraged to provide enough details to make the dispute clear to the arbitrator.

## R-3. Agreement to Arbitrate When There is No AAA Arbitration Clause

If the consumer and business do not have an arbitration agreement or their arbitration agreement does not name the AAA, the parties may agree to have the AAA arbitrate their dispute. To start the arbitration, the parties must send the AAA a submission agreement, which is an agreement to arbitrate their case with the AAA, signed by the consumer and the business (email communications between all parties to a dispute reflecting an agreement to arbitrate also is acceptable). The submission agreement must

- be in writing (electronic communication is acceptable);
- be signed by both parties;
- briefly explain the dispute;
- list the names and addresses of the consumer and the business;
- specify the amount of money involved;
- specify the requested location for the hearing if an in-person hearing is requested; and
- state the solution sought.

The parties should send one copy of the submission agreement to the AAA. They must also send the proper filing fees. A fee schedule can be found in the Costs of Arbitration section at the end of these Rules.

## R-4. AAA Administrative Fees

As a not-for-profit organization, the AAA charges fees to compensate it for the cost of providing administrative services. The fee schedule in effect when the case is filed shall apply for all fees charged during the administration of the case. The AAA may, in the event of the consumer's extreme hardship, defer or reduce the consumer's administrative fees.

AAA fees shall be paid in accordance with the Costs of Arbitration section found at the end of these Rules.

## R-5. Neutral Arbitrator's Compensation

**(a)** Arbitrators serving under these Rules shall be compensated at a rate established by the AAA.

**(b)** Any arrangement for the compensation of an arbitrator shall be made through the AAA and not directly between the parties and the arbitrator.

**(c)** Arbitrator compensation shall be paid in accordance with the Costs of Arbitration section found at the end of these Rules.

## R-6. Depositing Neutral Arbitrator's Compensation with the AAA

The AAA may require the parties to deposit in advance of any hearings such sums of money as it decides are necessary to cover the expense of the arbitration, including the arbitrator's fee, and shall render an accounting to the parties and return any unused money at the conclusion of the case.

## R-7. Expenses

Unless otherwise agreed by the parties or as provided under applicable law, the expenses of witnesses for either side shall be borne by the party producing such witnesses.

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne in accordance with the Costs of Arbitration section found at the end of these Rules.

## R-8. Changes of Claim

Once a Demand has been filed, any new claims or counterclaims, or changes to the claim or counterclaim, must be made in writing and sent to the AAA. The party making the new or different claim or counterclaim shall send a copy to the opposing party. As with the original Demand or counterclaim, a party shall have 14 calendar days from the date the AAA notifies the parties it received the new or different claim or counterclaim to file an answering statement with the AAA.

If an arbitrator has already been appointed, a new or different claim or counterclaim may only be considered if the arbitrator allows it.

R-9. Small Claims Option for the Parties

If a party's claim is within the jurisdiction of a small claims court, either party may choose to take the claim to that court instead of arbitration as follows:

(a) The parties may take their claims to small claims court without first filing with the AAA.

(b) After a case is filed with the AAA, but before the arbitrator is formally appointed to the case by the AAA, a party can send a written notice to the opposing party and the AAA that it wants the case decided by a small claims court. After receiving this notice, the AAA will administratively close the case.

(c) After the arbitrator is appointed, if a party wants to take the case to small claims court and notifies the opposing party and the AAA, it is up to the arbitrator to determine if the case should be decided in arbitration or if the arbitration case should be closed and the dispute decided in small claims court.

## R-10. Administrative Conference with the AAA

At the request of any party or if the AAA should so decide, the AAA may have a telephone conference with the parties and/or their representatives. The conference may address issues such as arbitrator selection, the possibility of a mediated settlement, exchange of information before the hearing, timing of the hearing, the type of hearing that will be held, and other administrative matters.

## R-11. Fixing of Locale (the city, county, state, territory and/or country where the arbitration will take place)

If an in-person hearing is to be held and if the parties do not agree to the locale where the hearing is to be held, the AAA initially will determine the locale of the arbitration. If a party does not agree with the AAA's decision, that party can ask the arbitrator, once appointed, to make a final determination. The locale determination will be made after considering the positions of the parties, the circumstances of the parties and the dispute, and the *Consumer Due Process Protocol*.

## R-12. Business Notification and Publicly-Accessible Consumer Clause Registry

Beginning September 1, 2014, a business that provides for or intends to provide for these Rules or another set of AAA Rules in a consumer contract (as defined in R-1) should

1. notify the AAA of the existence of such a consumer contract or of its intention to do so at least 30 days before the planned effective date of the contract.
2. provide the AAA a copy of the arbitration agreement.

Upon receiving the arbitration agreement, the AAA will review the agreement for material compliance with due process standards contained in the *Consumer Due Process Protocol* and the *Consumer Arbitration Rules* (see Rule 1(d)). There is a nonrefundable fee to conduct this initial review and maintain a publicly-available clause registry, which is detailed in the Costs of Arbitration section found at the end of these Rules. Any subsequent changes, additions, deletions, or amendments to a currently-registered arbitration agreement must be resubmitted for review and a review fee will be assessed at that time. The AAA will decline to administer consumer arbitrations arising out of that arbitration agreement where the business fails to pay the review fee.

If a business does not submit its arbitration agreement for review and a consumer arbitration then is filed with the AAA, the AAA will conduct an expedited review at that time. Along with any other filing fees that are owed for that case, the business also will be responsible for paying the nonrefundable review and Registry fee (including any fee for expedited review at the time of filing) for this initial review, which is detailed in the Costs of Arbitration section found at the end of these Rules. The AAA will decline to administer consumer arbitrations arising out of that arbitration agreement if the business declines to pay the review and Registry fee.

After the AAA reviews the submitted consumer clause, receives the annual consumer registry fee, and determines it will administer consumer-related disputes filed pursuant to the consumer clause, the business will be included on the publicly-accessible Consumer Clause Registry. This Consumer Clause Registry maintained by the AAA will contain the name of the business, the address, and the consumer arbitration clause, along with any related documents as deemed necessary by the AAA. The AAA's review of a consumer arbitration clause and determination whether or not to administer arbitrations pursuant to

that clause is only an administrative determination by the AAA and cannot be relied upon or construed as a legal opinion or advice regarding the enforceability of the arbitration clause. Consumer arbitration agreements may be registered at: **www.adr.org/consumerclauseregistry** or via email at **consumerreview@adr.org.**

For more information concerning the Consumer Clause Registry, please visit the AAA's website at **www.adr.org/consumerclauseregistry.**

The Registry fee to initially review a business's agreement and maintain the clause registry list is a yearly, non-refundable fee for the business's arbitration agreement. Any different arbitration agreements submitted by the same business or its subsidiaries must be submitted for review and are subject to the current review fee.

If the AAA declines to administer a case due to the business's non-compliance with this notification requirement, the parties may choose to submit their dispute to the appropriate court.

### R-13. AAA and Delegation of Duties

When the consumer and the business agree to arbitrate under these Rules or other AAA rules, or when they provide for arbitration by the AAA and an arbitration is filed under these Rules, the parties also agree that the AAA will administer the arbitration. The AAA's administrative duties are set forth in the parties' arbitration agreement and in these Rules. The AAA will have the final decision on which office and which AAA staff members will administer the case. Arbitrations administered under these Rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so.

### R-14. Jurisdiction

(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

(c) A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

## Appointing the Arbitrator

### R-15. National Roster of Arbitrators

The AAA maintains a National Roster of Arbitrators ("National Roster") and shall appoint arbitrators from this National Roster to resolve the parties' dispute(s).

### R-16. Appointment from National Roster

**(a)** If the parties have not appointed an arbitrator and have not agreed to a process for appointing the arbitrator, immediately after the filing of the submission agreement or the answer, or after the deadline for filing the answer, the AAA will administratively appoint an arbitrator from the National Roster.

**(b)** If the parties' arbitration agreement provides for three or more arbitrators and they have not appointed the arbitrators and have not agreed to a process for appointing the arbitrators, immediately after the filing of the submission agreement or the answer, or after the deadline for filing the answer, the AAA will administratively appoint the arbitrators from the National Roster. The AAA will appoint the chairperson.

**(c)** Arbitrator(s) serving under these Rules will be neutral and must meet the standards of R-19 with respect to being impartial and independent.

### R-17. Number of Arbitrators

If the arbitration agreement does not specify the number of arbitrators and the parties do not agree on the number, the dispute shall be heard and decided by one arbitrator.

### R-18. Disclosure

**(a)** Any person appointed or to be appointed as an arbitrator, as well as the parties and their representatives, must provide information to the AAA of any circumstances likely to raise justifiable doubt as to whether the arbitrator can remain impartial or independent. This disclosure of information would include

  **(1)** any bias;

  **(2)** any financial interest in the result of the arbitration;

  **(3)** any personal interest in the result of the arbitration; or

  **(4)** any past or present relationship with the parties or their representatives.

Such obligation to provide disclosure information remains in effect throughout the arbitration. A failure on the part of a party or a representative to comply with the

requirements of this rule may result in the waiver of the right to object to an arbitrator in accordance with Rule R-50.

**(b)** If the AAA receives such information from the arbitrator or another source, the AAA will communicate the information to the parties. If the AAA decides it is appropriate, it will also communicate the information to the arbitrator and others.

**(c)** In order to encourage disclosure by arbitrators, disclosing such information does not mean that the arbitrator considers the disclosed information will likely affect his or her ability to be impartial or independent.

## R-19. Disqualification of Arbitrator

**(a)** Any arbitrator shall be impartial and independent and shall perform his or her duties carefully and in good faith. The AAA may disqualify an arbitrator who shows

  **(1)** partiality or lack of independence;

  **(2)** inability or refusal to perform his or her duties with diligence and in good faith; or

  **(3)** any grounds for disqualification provided by applicable law.

**(b)** If a party objects to the continued service of an arbitrator, or if the AAA should so decide to raise the issue of whether the arbitrator should continue on the case, the AAA will decide if the arbitrator should be disqualified.  After gathering the opinions of the parties, the AAA will decide and that decision shall be final and conclusive.

## R-20. Vacancies

If for any reason an arbitrator cannot or is unwilling to perform the duties of the office, the AAA may declare the office vacant. Any vacancies shall be filled based on the original procedures used to appoint the arbitrator. If a substitute arbitrator is appointed, the substitute arbitrator will decide if it is necessary to repeat all or part of any prior ruling or hearing.

Pre-Hearing Preparation

### R-21. Preliminary Management Hearing with the Arbitrator

(a) If any party asks for, or if the AAA or the arbitrator decides to hold one, the arbitrator will schedule a preliminary management hearing with the parties and/or their representatives as soon as possible. The preliminary management hearing will be conducted by telephone unless the arbitrator decides an in-person preliminary management hearing is necessary.

(b) During the preliminary management hearing, the parties and the arbitrator should discuss the future conduct of the case, including clarification of issues and claims, scheduling of the hearings, and any other preliminary matters.

(c) The arbitrator shall promptly issue written orders that state the arbitrator's decisions made during or as a result of the preliminary management hearing. The arbitrator may also conduct additional preliminary management hearings if the need arises.

### R-22. Exchange of Information between the Parties

(a) If any party asks or if the arbitrator decides on his or her own, keeping in mind that arbitration must remain a fast and economical process, the arbitrator may direct

   1) specific documents and other information to be shared between the consumer and business, and

   2) that the consumer and business identify the witnesses, if any, they plan to have testify at the hearing.

(b) Any exhibits the parties plan to submit at the hearing need to be shared between the parties at least five business days before the hearing, unless the arbitrator sets a different exchange date.

(c) No other exchange of information beyond what is provided for in section (a) above is contemplated under these Rules, unless an arbitrator determines further information exchange is needed to provide for a fundamentally fair process.

(d) The arbitrator has authority to resolve any disputes between the parties about exchanging information.

### R-23. Enforcement Powers of the Arbitrator

The arbitrator may issue any orders necessary to enforce the provisions of rules R-21 and R-22 and to otherwise achieve a fair, efficient, and economical resolution of the case, including, but not limited to:

(a) an order setting the conditions for any exchange or production of confidential documents and information, and the admission of confidential evidence at the hearing in order to preserve such confidentiality;

**(b)** to the extent the exchange of information takes place pursuant to R-22, imposing reasonable search limitations for electronic and other documents if the parties are unable to agree;

**(c)** allocating costs of producing documentation, including electronically-stored documentation;

**(d)** in the case of willful non-compliance with any order issued by the arbitrator, drawing adverse inferences, excluding evidence and other submissions, and/or making special allocations of costs or an interim award of costs arising from such non-compliance; and

**(e)** issuing any other enforcement orders that the arbitrator is empowered to issue under applicable law.

## R-24. Written Motions (except for Dispositive Motions—see R-33)

The arbitrator may consider a party's request to file a written motion (except for Dispositive Motions— see R-33) only after the parties and the arbitrator conduct a conference call to attempt to resolve the issue that gives rise to the proposed motion. Only after the parties and the arbitrator hold the call may the arbitrator consider a party's request to file a written motion. The arbitrator has the sole discretion to allow or deny the filing of a written motion and his or her decision is final.

## R-25. Representation of a Party

Any party may participate in the arbitration without representation, or may be represented by counsel or other authorized representative, unless such choice is prohibited by applicable law. A party intending to be represented shall give the opposing party and the AAA the name, address, and contact information of the representative at least three business days before the hearing where that representative will first appear in the case. It will be considered proper notice if a representative files the arbitration demand or answer or responds for a party during the course of the arbitration.

While parties do not need an attorney to participate in arbitration, arbitration is a final, legally-binding process that may impact a party's rights. As such, parties may want to consider consulting an attorney.

### R-26. Setting the Date, Time, and Place (the physical site of the hearing within the designated locale) of Hearing

The arbitrator will set the date, time, and place for each hearing within the locale as determined in R-11. A hearing may be by telephone or in person. For their part, the parties commit to

**(1)** respond promptly to the arbitrator when he or she asks what dates the parties are available to have the hearings;

**(2)** cooperate in the scheduling of the hearing on the earliest possible date; and

**(3)** follow the hearing schedule set up by the arbitrator.

The AAA will send a notice of the hearing to the parties at least 10 days before the hearing date, unless the parties agree to a different time frame.

### R-27. Written Record of Hearing

**(a)** If a party wants a written record of the hearing, that party must make such arrangement directly with a stenographer (court reporter) and notify the opposing parties, the AAA, and the arbitrator of these arrangements at least three business days before the hearing. The party or parties who request the written record shall pay the cost of the service.

**(b)** No other type of recording will be allowed unless the parties agree or the arbitrator directs a different form of recording.

**(c)** The arbitrator may resolve disputes between the parties over who will pay the costs of the written record or other type of recording.

**(d)** The parties can agree or the arbitrator may decide that the transcript (written record) is the official record of the hearing. If it is the official record of the hearing, the transcript must be given to the arbitrator and made available to all the parties so that it can be reviewed. The date, time, and place of the inspection will be decided by the arbitrator.

### R-28. Interpreters

If a party wants an interpreter present for any part of the process, that party must make arrangements directly with the interpreter and shall pay for the costs of the service.

R-29. Documents-Only Procedure

Disputes may be resolved by submission of documents and without in-person or telephonic hearings. For cases being decided by the submission of documents only, the *Procedures for the Resolution of Disputes through Document Submission* (found at the end of these Rules) shall supplement these Rules. These Procedures will apply where no disclosed claims or counterclaims exceed $25,000 (see R-1(g)), unless any party requests an in-person or telephonic hearing or the arbitrator decides that a hearing is necessary.

## Hearing Procedures

### R-30. Attendance at Hearings

The arbitrator and the AAA will keep information about the arbitration private except to the extent that a law provides that such information shall be shared or made public. The parties and their representatives in the arbitration are entitled to attend the hearings. The arbitrator will determine any disputes over whether a non-party may attend the hearing.

### R-31. Oaths

Before starting the hearing, each arbitrator may take an oath of office and, if required by law, shall do so. If the arbitrator determines that witnesses shall testify under oath, then the arbitrator will direct the oath be given by a duly-qualified person.

### R-32. Conduct of Proceedings

(a) The claimant must present evidence to support its claim. The respondent must then present evidence to support its defense. Witnesses for each party also must answer questions from the arbitrator and the opposing party. The arbitrator may change this procedure, as long as each party has the right to be heard and is given a fair opportunity to present its case.

(b) When the arbitrator decides it is appropriate, the arbitrator may also allow the parties to present evidence in alternative ways, including web conferencing, Internet communication, and telephonic conferences. All procedures must provide the parties with a full and equal opportunity to present any evidence that the arbitrator decides is material and relevant to deciding the dispute. If the alternative ways to present evidence involve witnesses, those ways may include that the witness submit to direct and cross-examination questioning.

(c) The arbitrator will use his or her discretion to resolve the dispute as quickly as possible and may direct the parties to present the evidence in a certain order, or may split the proceedings into multiple parts and direct the parties in the presentation of evidence.

(d) The hearing generally will not exceed one day. However, if a party shows good cause, the arbitrator may schedule additional hearings within seven calendar days after the initial day of hearing.

(e) The parties may agree in writing to waive oral hearings.

R-33. Dispositive Motions

The arbitrator may allow the filing of a dispositive motion if the arbitrator determines that the moving party has shown substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case.

## R-34. Evidence

(a) The parties may offer relevant and material evidence and must produce any evidence the arbitrator decides is necessary to understand and decide the dispute. Following the legal rules of evidence shall not be necessary. All evidence should be taken in the presence of the arbitrator and all of the parties, unless any of the parties is absent, in default, or has waived the right to be present.

(b) The arbitrator shall determine what evidence will be admitted, what evidence is relevant, and what evidence is material to the case. The arbitrator may also exclude evidence that the arbitrator decides is cumulative or not relevant.

(c) The arbitrator shall consider applicable principles of legal privilege, such as those that involve the confidentiality of communications between a lawyer and a client.

(d) An arbitrator or other person authorized by law to subpoena witnesses or documents may do so on the request of any party or on the arbitrator's own determination. If a party requests the arbitrator sign a subpoena, that party shall copy the request to the other parties in the arbitration at the same time it is provided to the arbitrator.

## R-35. Evidence by Affidavit and Post-Hearing Filing of Documents or Other Evidence

(a) The arbitrator may receive and consider the evidence of witnesses by declaration or affidavit rather than in-person testimony but will give this evidence only such credence as the arbitrator decides is appropriate. The arbitrator will consider any objection to such evidence made by the opposing party.

(b) If the parties agree or the arbitrator decides that documents or other evidence need to be submitted to the arbitrator after the hearing, those documents or other evidence will be filed with the AAA so that they can be sent to the arbitrator. All parties will be given the opportunity to review and respond to these documents or other evidence.

## R-36. Inspection or Investigation

An arbitrator finding it necessary to inspect property or conduct an investigation in connection with the arbitration will request that the AAA inform the parties. The arbitrator will set the date and time of the inspection and investigation, and

the AAA will notify the parties. Any party who would like to be present at the inspection or investigation may attend. If one or all parties are not present at the inspection or investigation, the arbitrator will make an oral or written report to the parties and allow them an opportunity to comment.

### R-37. Interim Measures (a preliminary decision made by the arbitrator involving part or all of the issue(s) in dispute in the arbitration)

**(a)** The arbitrator may grant whatever interim measures he or she decides are necessary, including granting an injunction and ordering that property be protected.

**(b)** Such interim measures may take the form of an interim award, and the arbitrator may require a security payment for the costs of such measures.

**(c)** When making a decision on an interim measure, the arbitrator may grant any remedy, relief, or outcome that the parties could have received in court.

**(d)** A party to an arbitration agreement under these Rules may instead file in state or federal court for interim relief. Applying to the court for this type of relief, including temporary restraining orders, is consistent with the agreement to arbitrate and will not be considered a waiver of the right to arbitrate.

### R-38. Postponements

The arbitrator may postpone any hearing

**(a)** if requested by a party, and the party shows good cause for the postponement;

**(b)** if all parties agree to a postponement;

**(c)** on his or her own decision.

### R-39. Arbitration in the Absence of a Party or Representative

The arbitration may proceed even if any party or representative is absent, so long as proper notice was given and that party or representative fails to appear or obtain a postponement from the arbitrator. An award cannot be made only because of the default of a party. The arbitrator shall require the party who participates in the hearing to submit the evidence needed by the arbitrator to make an award.

## Conclusion of the Hearing

### R-40. Closing of Hearing

The arbitrator must specifically ask all parties whether they have any further proofs to offer or witnesses to be heard. When the arbitrator receives negative replies or he or she is satisfied that the record is complete, the arbitrator will declare the hearing closed.

If briefs or other written documentation are to be filed by the parties, the hearing shall be declared closed as of the final date set by the arbitrator. Absent agreement of the parties, the time that the arbitrator has to make the award begins upon the closing of the hearing. The AAA may extend the time limit for the rendering of the award only in unusual and extreme circumstances.

### R-41. Reopening of Hearing

If a party requests, or if the arbitrator decides to do so, the hearing may be reopened at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed on by the parties in the contract(s) out of which the controversy has arisen, the matter may not be reopened unless the parties agree on an extension of time. If the arbitrator reopens the hearing, he or she shall have 30 days from the closing of the reopened hearing within which to make an award.

### R-42. Time of Award

The award shall be issued promptly by the arbitrator and, unless the parties agree differently or the law indicates a different time frame, no later than 30 calendar days from the date the hearing is closed, or, if the case is a documents-only procedure, 14 calendar days from the date the arbitrator set for his or her receipt of the final statements and proofs. The AAA may extend the time limit for the rendering of the award only in unusual and extreme circumstances.

### R-43. Form of Award

(a) Any award shall be in writing and executed in the form and manner required by law.

(b) The award shall provide the concise written reasons for the decision unless the parties all agree otherwise. Any disagreements over the form of the award shall be decided by the arbitrator.

**(c)** The AAA may choose to publish an award rendered under these Rules; however, the names of the parties and witnesses will be removed from awards that are published, unless a party agrees in writing to have its name included in the award.

### R-44. Scope of Award

**(a)** The arbitrator may grant any remedy, relief, or outcome that the parties could have received in court, including awards of attorney's fees and costs, in accordance with the law(s) that applies to the case.

**(b)** In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards. In any interim, interlocutory, or partial award, the arbitrator may assess and divide up the fees, expenses, and compensation related to such award as the arbitrator decides is appropriate, subject to the provisions and limitations contained in the Costs of Arbitration section.

**(c)** The arbitrator may also allocate compensation, expenses as defined in sections (v) and (vii) of the Costs of Arbitration section, and administrative fees (which include Filing and Hearing Fees) to any party upon the arbitrator's determination that the party's claim or counterclaim was filed for purposes of harassment or is patently frivolous.

**(d)** In the final award, the arbitrator shall assess the fees, expenses, and compensation provided in Sections R-4, R-5, and R-7 in favor of any party, subject to the provisions and limitations contained in the Costs of Arbitration section.

### R-45. Award upon Settlement

If the parties settle their dispute at any point during the arbitration and at the parties' request, the arbitrator may lay out the terms of the settlement in a "consent award" (an award drafted and signed by the arbitrator that reflects the settlement terms of the parties). A consent award must include a division of the arbitration costs, including administrative fees and expenses as well as arbitrator fees and expenses. Consent awards will not be made available to the public per Rule 43(c) unless the parties agree otherwise.

### R-46. Delivery of Award to Parties

Parties shall accept as notice and delivery of the award the placing of the award or a true copy thereof in the mail addressed to the parties or their representatives at the last known addresses, personal or electronic service of the award, or the filing of the award in any other manner that is permitted by law.

R-47. Modification of Award for Clerical, Typographical, or Mathematical Errors

**(a)** Within 20 days after the award is transmitted, any party, upon notice to the opposing parties, may contact the AAA and request that the arbitrator correct any clerical, typographical, or mathematical errors in the award. The arbitrator has no power to re-determine the merits of any claim already decided.

**(b)** The opposing parties shall be given 10 days to respond to the request. The arbitrator shall make a decision on the request within 20 days after the AAA transmits the request and any responses to the arbitrator.

**(c)** If applicable law provides a different procedural time frame, that procedure shall be followed.

Post Hearing

### R-48. Release of Documents for Judicial Proceedings

The AAA shall give a party certified copies of any records in the AAA's possession that may be required in judicial proceedings relating to the arbitration, except for records determined by the AAA to be privileged or confidential. The party will have to pay a fee for this service.

### R-49. Applications to Court and Exclusion of Liability

(a) No court or judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

(b) Neither the AAA nor any arbitrator in a proceeding under these Rules is a necessary or proper party in judicial proceedings relating to the arbitration.

(c) Parties to an arbitration under these Rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

(d) Parties to an arbitration under these Rules shall be deemed to have consented that neither the AAA, AAA employees, nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

(e) Parties to an arbitration under these Rules may not call the arbitrator, the AAA, or any AAA employee as a witness in litigation or any other proceeding relating to the arbitration. The arbitrator, the AAA, and AAA employees are not competent to and may not testify as witnesses in any such proceeding.

General Procedural Rules

### R-50. Waiver of Rules

If a party knows that any of these Rules have not been followed, it must object in writing before proceeding with arbitration or it will lose its right to object that the rule has not been followed.

### R-51. Extensions of Time

The parties may agree to change any period of time provided for in the Rules, except that any such modification that negatively affects the efficient resolution of the dispute is subject to review and approval by the arbitrator. The AAA or the arbitrator may for good cause extend any period of time in these Rules, except as set forth in R-42. The AAA will notify the parties of any extension.

### R-52. Serving of Notice and AAA and Arbitrator Communications

(a) Any papers or notices necessary for the initiation or continuation of an arbitration under these Rules, or for the entry of judgment on any award made under these Rules, may be served on a party by mail or email addressed to the party or its representative at the last-known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

(b) The AAA, the arbitrator, and the parties also may use overnight delivery, electronic facsimile transmission (fax), or electronic mail (email) to give the notices required by these rules. Where all parties and the arbitrator agree, notices may be sent by other methods of communication.

(c) Unless directed differently by the AAA or by the arbitrator, any documents and all written communications submitted by any party to the AAA or to the arbitrator also shall be sent at the same time to all parties to the arbitration.

(d) A failure to provide the other parties with copies of communications made to the AAA or to the arbitrator may prevent the AAA or the arbitrator from acting on any requests or objections contained within those communications.

(e) A party and/or someone acting on behalf of a party cannot have any communications with an arbitrator or a potential arbitrator about the arbitration outside of the presence of the opposing party. All such communications shall be conducted through the AAA.

(f) The AAA may direct that any oral or written communications that are sent by a party or their representative shall be sent in a particular manner. The failure of a party or its representative to do so may result in the AAA's refusal to consider the issue raised in the communication.

### R-53. Interpretation and Application of Rules

The arbitrator shall interpret and apply these Rules as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these Rules, it shall be decided by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other Rules shall be interpreted and applied by the AAA.

### R-54. Remedies for Nonpayment

(a) If arbitrator compensation or administrative charges have not been paid in full, the AAA may inform the parties so that one of them may forward the required payment.

(b) Once the AAA informs the parties that payments have not been received, a party may request an order from the arbitrator directing what measures might be taken in light of a party's nonpayment.

   Such measures may include limiting a party's ability to assert or pursue its claim. However, a party shall never be precluded from defending a claim or counterclaim. The arbitrator must provide the party opposing a request for relief with the opportunity to respond prior to making any determination. In the event that the arbitrator grants any request for relief that limits any party's participation in the arbitration, the arbitrator will require the party who is making a claim and who has made appropriate payments to submit the evidence required to make an award.

(c) Upon receipt of information from the AAA that full payments have not been received, the arbitrator, on the arbitrator's own initiative, may order the suspension of the arbitration. If no arbitrator has yet been appointed, the AAA may suspend the proceedings.

(d) If arbitrator compensation or AAA administrative fees remain unpaid after a determination to suspend an arbitration due to nonpayment, the arbitrator has the authority to terminate the proceedings. Such an order shall be in writing and signed by the arbitrator. The impact of the termination for nonpayment of the Consumer Clause Registry fee is the removal from the "Registered" section of the Registry.

### R-55. Declining or Ceasing Arbitration

The AAA in its sole discretion may decline to accept a Demand for Arbitration or stop the administration of an ongoing arbitration due to a party's improper conduct, including threatening or harassing behavior towards any AAA staff, an arbitrator, or a party or party's representative.

## Costs of Arbitration (including AAA Administrative Fees)*

Arbitrator compensation is not included as part of the administrative fees charged by the AAA. Arbitrator compensation is based on a rate established by the AAA as set forth below. If a Preliminary Management Hearing is held by the arbitrator, the arbitrator is entitled to one-half the arbitration compensation rate for a full hearing day or a documents-only hearing. Once evidentiary hearings are held, the arbitrator is entitled to the full-day rate of compensation. The business shall pay the arbitrator's compensation unless the consumer, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation. Arbitrator compensation, expenses as defined in sections (v) and (vii) below, and administrative fees (which include Filing and Hearing Fees) are not subject to reallocation by the arbitrator(s) except as may be required by applicable law or upon the arbitrator's determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous.

*  *Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the AAA at 1-800-778-7879, if you have any questions regarding the waiver of administrative fees. (Effective January 1, 2003)*

| Party | Desk Arbitration | In-Person or Telephonic Hearing – Single Arbitrator | In-Person or Telephonic Hearing – Three Or More Arbitrators |
|---|---|---|---|
| Consumer | Filing Fee—$200 (nonrefundable) | Filing Fee—$200 (nonrefundable) | Filing Fee—$200 (nonrefundable) |
| Business | Filing Fee—$1,700<br><br>Arbitrator Compensation—$750 per case | Filing Fee—$1,700<br><br>Hearing Fee—$500<br><br>Arbitrator Compensation—$1,500 per hearing day | Filing Fee—$2,200<br><br>Hearing Fee—$500<br><br>Arbitrator Compensation—$1,500 per hearing day per arbitrator |

### (i) Filing Fees

In cases before a single arbitrator, a nonrefundable filing fee capped in the amount of $200 is payable in full by the consumer when a case is filed, unless the parties' agreement provides that the consumer pay less. A partially refundable fee in the amount of $1,700 is payable in full by the business, unless the parties' agreement provides that the business pay more. This fee is due from the business once the consumer has met the filing requirements.

In cases before three or more arbitrators, a nonrefundable filing fee capped in the amount of $200 is payable in full by the consumer when a case is filed, unless the parties' agreement provides that the consumer pay less. A partially refundable fee in the amount of $2,200 is payable in full by the business, unless the parties' agreement provides that the business pay more. This fee is due from the business once the consumer has met the filing requirements.

There shall be no filing fee charged for a counterclaim.

The AAA reserves the right to assess additional administrative fees for services performed by the AAA beyond those provided for in these Rules and which may be required by the parties' agreement or stipulation.

### (ii) Neutral Arbitrator's Compensation

Arbitrators serving on a case with an in-person or telephonic hearing will receive compensation at a rate of **$1,500 per day.**

Arbitrators serving on a case with a desk arbitration/documents-only hearing will receive compensation at a rate of **$750 per case.**

The AAA reserves the right to raise the daily or per-case arbitrator compensation rate because of the complexity of the case or for processes and procedures beyond those provided for in these Rules and which may be required by the parties' requests, agreement, or stipulation (1) at the time of the AAA's initiation of the case; (2) upon the addition of a new party; (3) when a change of claim is made and, if necessary, approved by the arbitrator(s); (4) or if circumstances arise during the course of the case due to the complexity of issues and submissions by the parties.  Any determination by the AAA on compensation rates is in the sole discretion of the AAA and such decision is final and binding on the parties and arbitrator.

### (iii) Refund Schedule

Once the claimant has met the filing requirements, refunds to the business will be calculated as follows:

- if the case is settled or withdrawn within 30 calendar days, 50% of the filing fee will be refunded to the business.

However, no refund of the filing fee will be made once an arbitrator has been appointed and no refunds will be made on awarded cases. The date the claimant's filing requirements are met is the date used to calculate any refund of filing fees. If the matter is settled or withdrawn prior to receipt of filing fees from the business, the AAA will bill the business in accordance with this refund schedule.

### (iv) Hearing Fees

For telephonic hearings or in-person hearings held, an additional administrative fee of $500 is payable by the business.

There is no AAA hearing fee for the initial Administrative Conference (see R-10).

### (v) Hearing Room Rental

The hearing fees described above do not cover the rental of hearing rooms. The AAA maintains rental hearing rooms in most offices for the convenience of the parties. Check with the administrator for availability and rates. Hearing room rental fees will be borne by the business.

### (vi) Abeyance Fee

Parties on cases held as inactive for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the opposing party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed. All filing requirements, including payment of filing fees, must be met before a matter may be placed in abeyance.

### (vii) Expenses

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne by the business.

(viii) Consumer Clause Review and Registry Fee

Please note that all fees described below are **<u>nonrefundable.</u>**

For businesses submitting a clause, the cost of reviewing the clause and maintaining that clause on the Registry is $500.  A yearly Registry fee of $500 will be charged to maintain each clause on the Registry for each calendar year thereafter.

If the AAA receives a demand for consumer arbitration from an arbitration clause that was not previously submitted to the AAA for review and placement on the Registry, the business will incur an additional $250 fee to conduct an expedited review of the clause.

Any subsequent changes, additions, deletions, or amendments to currently registered arbitration agreement must be resubmitted for review and a review fee of $500 will assessed at that time.

## Procedures for the Resolution of Disputes through Document Submission

### D-1. Applicability

**(a)** In any case, regardless of claim size, the parties may agree to waive in-person/telephonic hearings and resolve the dispute through submission of documents to one arbitrator. Such agreement should be confirmed in writing no later than the deadline for the filing of an answer.

**(b)** Where no disclosed claims or counterclaims exceed $25,000, the dispute shall be resolved by these Procedures, unless a party asks for a hearing or the arbitrator decides that a hearing is necessary.

**(c)** If one party makes a request to use the *Procedures for the Resolution of Disputes through Document Submission* (Procedures) and the opposing party is unresponsive, the arbitrator shall have the power to determine whether to proceed under the Procedures. If both parties seek to use the Procedures after the appointment of an arbitrator, the arbitrator must also consent to the process.

**(d)** When parties agree to these Procedures, the procedures in Sections D-1 through D-4 of these Rules shall supplement other portions of these rules which are not in conflict with the Procedures.

### D-2. Preliminary Management Hearing

Within 14 calendar days of confirmation of the arbitrator's appointment, the arbitrator shall convene a preliminary management hearing, via conference call, video conference, or internet, to establish a fair and equitable procedure for the submission of documents, and, if the arbitrator deems appropriate, a schedule for one or more telephonic or electronic conferences.

### D-3. Removal from the Procedures

**(a)** The arbitrator has the discretion to remove the case from the Procedures if the arbitrator determines that an in-person or telephonic hearing is necessary.

**(b)** If the parties agree to in-person or telephonic hearings after a previous agreement to proceed under the Procedures, the arbitrator shall conduct such hearings. If a party seeks to have in-person or telephonic hearings after agreeing to the Procedures, but there is not agreement among the parties to proceed with in-person or telephonic hearings, the arbitrator shall resolve the issue after the parties have been given the opportunity to provide their respective positions on the issue.

D-4. Time of Award

**(a)** The arbitrator shall establish the date for either final written submissions or a final telephonic or electronic conference. Such date shall operate to close the hearing, and the time for the rendering of the award shall commence on that day as well.

**(b)** The arbitrator shall render the award within 14 calendar days from the date the hearing is closed.

**(c)** The award is subject to all other provisions of these Rules that pertain to awards.

# Glossary of Terms

## Administrator

The Administrator's role is to manage the administrative aspects of the arbitration, such as the appointment of the arbitrator, to make preliminary decisions about where hearings might take place, and to handle the fees associated with the arbitration. As Administrator, however, the Administrator does not decide the merits of a case or make any rulings on issues such as what documents must be shared with each side. Because the Administrator's role is only administrative, the Administrator cannot overrule or change an arbitrator's decisions or rulings. The Administrator will comply with any court orders issued from litigation involving the parties to the dispute.

## ADR Agreement

An ADR Agreement is an agreement between a business and a consumer to submit disputes to mediation, arbitration, or other ADR processes.

## ADR Process

An ADR (Alternative Dispute Resolution) Process is a method of resolving a dispute other than by court litigation. Mediation and Arbitration are the most widely used ADR processes.

## ADR Program

An ADR Program is any program or service set up or used by a business to resolve disputes out of court.

## Arbitration

In arbitration, the parties submit disputes to an impartial person (the arbitrator) for a decision. Each party can present evidence to the arbitrator. Arbitrators do not have to follow the Rules of Evidence used in court.

Arbitrators decide cases with written decisions or "awards." An award is usually binding on the parties. A court may enforce an arbitration award and the court's review of arbitration awards is limited.

## Arbitration Agreement

An arbitration agreement is a contract between parties to settle their disputes by binding arbitration. It is typically found in the parties' contract in a section entitled "Arbitration" or "Dispute Resolution." It gives the parties information about how they are choosing to settle any disputes that they might have.

## Arbitrator

Arbitrators are neutral and independent decision makers who are not employees of the administrator. Except where the parties to a case reach their own settlement, the Arbitrator will make the final, binding decision on the dispute and render it in writing, called the Award. The Arbitrator makes all the procedural decisions on a case not made by the administrator or not decided jointly by the parties. The Arbitrator may grant any remedy, relief, or outcome that the parties could have received in court, including awards of attorney's fees and costs, in accordance with the law(s) that applies to the case.

Once appointed to a case, an Arbitrator may not be removed by one party without the other party's consent or unless the administrator determines an Arbitrator should be removed and replaced by another Arbitrator chosen by the administrator in a manner described in these Rules.

## Case Administrator

The Case Administrator is the AAA's employee assigned to handle the administrative aspects of the case. He or she does not decide the case. He or she manages the case's administrative steps, such as exchanging documents, matching schedules, and setting up hearings. The Case Administrator is the parties' contact point for almost all aspects of the case outside of any hearings.

## Claimant

A Claimant is the party who files the claim or starts the arbitration. Either the consumer or the business may be the Claimant.

## Demand for Arbitration (also referred to as "Demand")

The written document created by the claimant that informs the respondent that it wishes to arbitrate a dispute. This document provides basic information about the dispute, the parties involved and what the claimant wants as a result of the arbitration.

### Documents-Only Arbitration

In a Documents-Only Arbitration, the parties submit their arguments and evidence to the arbitrator in writing. The arbitrator then makes an award based only on the documents. No in-person or telephone hearing is held.

### Independent ADR Institution

An Independent ADR Institution is an organization that provides independent and impartial administration of ADR programs for consumers and businesses. The American Arbitration Association is an Independent ADR Institution.

### In-Person Hearing

During an In-Person Hearing, the parties and the arbitrator meet in a conference room or office and the parties present their evidence in a process that is similar to going to court. However, an In-Person Hearing is not as formal as going to court.

### Mediation

In Mediation, an impartial person (the mediator) helps the parties try to settle their dispute by reaching an agreement together. A mediator's role is to help the parties come to an agreement. A mediator does not arbitrate or decide the outcome.

### Neutral

A "Neutral" is a mediator, arbitrator, or other independent, impartial person selected to serve as the independent third party in an ADR process.

### Party

The party is the person(s) or business that is involved in the dispute in the arbitration process. Usually, these are the people or businesses that have an arbitration agreement between them that specifies that a dispute should be resolved by arbitration.

## Parties

Parties are all the separate individuals, businesses, or organizations involved in the arbitration.

### Opposing Party

The opposing party is the other party that is on the opposite side of the arbitration from you. If you are the claimant, the Opposing Party is the respondent. If you are the respondent, the Opposing Party is the claimant. If you are the consumer, the Opposing Party is the business. If you are the business, the Opposing Party is the consumer.

### Respondent

The respondent is the party against whom the claim is filed. If a Respondent states a claim in arbitration, it is called a counterclaim. Either the consumer or the business may be the Respondent.

### Telephone Hearing

In a Telephone Hearing, the parties have the opportunity to tell the arbitrator about their case during a conference call. They also present their evidence to the arbitrator during the call. Often this is done after the parties have sent in documents for the arbitrator to review.

American Arbitration Association

*© 2016 American Arbitration Association®, Inc. All rights reserved. These rules are the copyrighted property of the
American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services.
Any unauthorized use or modification of these rules may violate copyright laws and other applicable laws.
Please contact 800.778.7879 or websitemail@adr.org for additional information.*



800.778.7879 | websitemail@adr.org | adr.org

# EXHIBIT 3

Membership is just $29.95 per month after your 7-day free trial.

# Terms & Conditions

Welcome to this website which offers one or more products and services. These products and services are offered at several web addresses or URLs, such as FreeScoreOnline.com, FreeScore360.com, ScoreSense.com, MyCreditHealth.com, CheckMyCreditNow.com, NationalCreditReport.com and others. Those URLs, individually and collectively, are referred to in these Terms and Conditions as the 'Sites.' We use the terms 'you' and 'your' to include any person who accesses the Sites, obtains Materials (defined below), or purchases or acquires any product or service offered on the Sites ('product(s)' and 'service(s)' collectively referred to as the 'Services') for any amount of time. We use the terms 'we', 'us' and 'our' to refer to 2211 Partners (the 'Company'), which operates the Sites; our employees, members, officers, partners, affiliated entities, representatives, attorneys, and agents. The companies that provide the Materials or the Services to us or to you, include but are not necessarily limited to, CoreLogic Credco, LLC ("Credco"), CoreLogic Consumer Services, Inc. ("CLCS"), Equidata, Inc., and TransUnion, LLC (all such companies that provide Materials and Services to you on our behalf are referred to collectively in this Agreement as the 'Providers'). We use the term 'Materials' to mean any data or information about you that we provide to you on any web page, email, text message, instant message, or printed page, including full and partial reports and summary alerts, as full or partial fulfillment of the Services.

## 1. This is a Binding Agreement

These Terms and Conditions are a binding legal agreement between you and us and govern your access to the Sites and your purchase and use of the Services. PLEASE READ THESE TERMS AND CONDITIONS CAREFULLY. Your use of the Services may also be subject to Credco's/CLCS's Terms and Conditions. Click here (https://web.archive.org/web/20130915071452/http://www.corelogic.com/landing-pages/consumer-services-terms-and-conditions.aspx) for a copy of their Terms and Conditions.

## 2. Important Notice - Your Written Instructions under the Fair Credit Reporting Act

The Materials may include information from your personal credit profile from Experian, Equifax, TransUnion and CoreLogic Credco, LLC. You understand that by submitting your order, you are providing 'written instructions' in accordance with the Fair Credit Reporting Act, as amended ('FCRA'), to the Providers, authorizing the Providers to obtain information from your personal credit profile from Experian, Equifax and TransUnion (collectively, the 'CRA Repositories') and provide such information to you for your own use. You also authorize the Providers to access your personal credit profile from the CRA Repositories to verify your identity and to provide you with credit monitoring, reporting and scoring products.

## 3. The Services

The Services consist of the products and services described on the Sites, and include but are not limited to all products and services provided on a recurring, subscription basis ("Subscription Services") or as a one-time transaction ("Transactional Services"). You acknowledge and agree that the Company obtains the Materials from the Providers. The Materials are intended to furnish you with information that you may not otherwise have readily available to you, but should not be relied upon for important personal and financial decisions. You should consult your own professional adviser for specific advice tailored to your personal situation. YOU AGREE THAT THE COMPANY AND THE PROVIDERS HAVE NO LIABILITY FOR ANY INFORMATION (ACCURATE OR INACCURATE, COMPLETE OR INCOMPLETE) IN THE MATERIALS OR ANY REPORTS PROVIDED TO YOU AS PART OF THE SERVICES. You further acknowledge and agree that any credit scores provided to you as part of the Services are not FICO scores. Although the Services are available to consumers in all 50 states and Puerto Rico, the Services may not provide data for all locations. If you enroll in a Subscription Service, you must ensure that it provides the information you desire for the location you desire during the applicable free trial period. If it does not, you may cancel such Subscription Service during the free trial period without charge.

## 4. How To Cancel Your Enrollment in Subscription Services

You may terminate your enrollment in Subscription Services at any time by calling us at the toll free number that appears on the applicable Site and on the emails that you receive from us. If for some reason you do not have access to a phone, you may terminate by writing us at 4447 North Central Expressway, Suite 110 PMB 406, Dallas, TX 75205, and requesting termination. You may not cancel via

email to us. We do not provide prorated refunds.

**5. Purchases of Transactional Services are Final.**

Transactional Services typically involve an order process associated with your request to purchase and receive a specific product and/or service, including but not limited to your credit report(s) and credit score(s) from the Providers. We will not issue a refund to you for any Transactional Services which allow you to access your credit report(s) and/or credit score(s) following the completion of your transaction.

## 6. Our Policy Regarding Children

By using the Sites or purchasing or using the Services, you certify that (a) you are over 18 years of age and old enough to legally enter into a contract in your jurisdiction of residence, and (2) you have the legal capacity and authority to enter into a contract. You must be at least 18 to access or enroll in any of the Services through the Sites. The Sites are not intended for the use of children and we do not intend to collect information about children through the Sites.

## 7. In order to use the Sites and the Services, You must provide the following information:

- You must provide valid debit or credit card payment information at time of enrollment in Subscription Services, or at the time of purchase of Transactional Services. We will verify your debit or credit card information before processing your order, including performing an authorization in an amount up to the stated monthly membership fee for all Subscription Services, and/or all fees associated with the purchase of Transaction Services. The authorization amount may count against your debit or credit limit. For Subscription Services which include a free-trial period, if you do not cancel your free trial within the free trial period, you will be charged at the monthly rate in effect at that time for the Subscription Services for which you enrolled. Your debit or credit card (including, if applicable, as automatically updated by your card provider following expiration or change in account number) will continue to be charged each month at the applicable monthly rate unless and until you cancel the Subscription Services. IF THE SERVICES YOU CHOOSE INCLUDE A FREE-TRIAL PERIOD, YOUR FREE TRIAL PERIOD IS MEASURED IN 24-HOUR DAYS. FOR EXAMPLE, IF YOU SIGN UP FOR A 7-DAY FREE TRIAL PERIOD AT 10:00 A.M. ON MARCH 1, 2010, YOUR FREE TRIAL PERIOD WILL EXPIRE AT 9:59 A.M. ON MARCH 8, 2010.
- You may be required to provide your social security number and other personal information, such as previous addresses, employment, and other names, so that your identity can be verified in order to use some Services.
- You must provide true, accurate and complete information about yourself as prompted by the applicable form(s) for the Services and, for Subscription Services, to promptly update your information if and when it changes. If you provide any information that is untrue, inaccurate, or incomplete, or we have reason to believe that such information is untrue, inaccurate, or incomplete, we reserve the right to terminate your subscription or void your transaction.

## 8. Important Information regarding your authorization to charge your credit or debit card

BY SUBMITTING YOUR ORDER, YOU AUTHORIZE US TO CHARGE YOUR CREDIT CARD OR DEBIT YOUR BANK ACCOUNT THE STATED ENROLLMENT OR TRANSACTION AMOUNT AND/OR PROCESSING FEES AND FOR SUBSCRIPTION SERVICES ONLY, THE STATED AMOUNT PER MONTH AFTER YOUR FREE TRIAL HAS EXPIRED. Your enrollment in Subscription Services will continue month-to-month unless and until you cancel or we terminate your enrollment. If you purchase additional Services, they will be billed to the debit or credit card provided to us during enrollment.

## 9. Privacy Policy

By using any of the Sites or purchasing any of the Services, you agree that we may use and share your personal information in accordance with the terms of our Privacy Policy. Our Privacy Policy can be found by clicking on the Privacy Policy link at the bottom of any page of the Sites. Credco's/CLCS's policy on how your personal information is used and disclosed is contained in Credco's/CLCS's Privacy Policy. Click here (https://web.archive.org/web/20130915071452/http://www.corelogic.com/landing-pages/consumer-services-privacy-policy.aspx) for a copy of Credco's/CLCS's Privacy Policy.

## 10. Copyright & Trademark Notices.

You acknowledge that the Sites and other forms of communication, including, but not limited to, electronic mail and direct mail, contain information, software, photos, video, text, graphics, music, sounds or other material (collectively, "Content") protected by copyrights, patents, trademarks, trade secrets, or other proprietary rights, and that these rights are valid and protect in all forms, media and technologies existing now or hereafter developed. All Content is copyrighted under U.S. copyright laws. The Services names

and logos are our service marks. All other service marks and trademarks appearing on the Sites are the trademarks of their respective owners. You may not modify, publish, transmit, participate in the transfer or sale, create derivative works, or in any way exploit any Content in whole or in part.

**11. We reserve the right to terminate your subscription**

We reserve the right to terminate your membership or access to the Services at any time without notice, for any reason, including but not limited to: (i) breach of these Terms and Conditions by you or anyone using your account, (ii) nonpayment for the Services or expiration of your subscription period, (iii) conduct we believe is harmful to the Services users, the business of the Company or the Company's affiliates, (iv) those reasons otherwise described in these Terms and Conditions, or (v) any other circumstances which we determine, in our sole discretion, merit termination. Any such termination may be without any refund to you of advance payments. You agree that we will not be liable to you or to any third party for any termination of your membership or termination of your access to the Services.

**12. Sending and Receiving Information over the Internet**

You understand and agree that no data transmitted over the Internet can be guaranteed to be 100% secure and we cannot guarantee that any personal information you submit or access will be free from unauthorized third party intrusion. You understand and agree that all actions you take in submitting or accessing information through the Sites or the Services are at your own risk and are subject to these Terms and Conditions, including but not limited to the 'DISCLAIMER OF WARRANTIES' and 'LIMITATION OF LIABILITY' Sections set forth below.

**13. Your User Name and Password**

While enrolling in Subscription Services, you will designate a user name and password. In addition, from time to time we may require you to reset your password. You understand and agree that the user name and password are only granted to the individual accepting these Terms and Conditions. You are responsible for maintaining the confidentiality of your user name and password and are responsible for all activities that occur under your user name and password, whether or not authorized by you. You agree to notify us immediately of any unauthorized use of your user name, password or account or any other breach of security. We will not be liable for any loss or damage arising from your failure to protect your password or account information. In addition, we will not be liable for actions taken by others who access your account.

**14. Changes to Prices and Terms and Discontinuance of Service**

If you enroll in Subscription Services, you agree to pay all charges at the effective monthly price. If you purchase Transactional Services, you agree to pay the price in effect at the time of such purchase. All prices are exclusive of any taxes, except as required by applicable law. We reserve the right to change prices or to institute new charges for the Services, or any portion thereof, at any time. Price changes and new charges will apply to subsequent subscription periods for current paid subscribers immediately on the effective date of the change and to all new Subscription Services users from such effective date forward. We reserve the right at any time to modify, suspend, or discontinue the Sites and the Services, or any part, version or feature thereof, in our sole discretion without prior notice to you. We will use reasonable efforts to notify you of any such material modifications to or suspensions or discontinuations of the Sites or the Services, including by posting a notice on the applicable Site. We may also, but are not required to, provide you notice by sending an email message to the current email address listed in your subscription. We will not be liable to you or any third party for any modification, suspension or discontinuation of the Sites or the Services, or for any failure to notify you of same. If you have a paid subscription to the Services and we modify, suspend or discontinue the Services due to no action on your part, when applicable, we may provide a pro rata refund of advance payments made. Your continued use of the Services or of the Sites, or your failure to terminate your subscription, after any such changes, modifications, or charge have been made to the Sites and/or Services, will constitute your acceptance of those changes, modifications, and charges.

**15. Prohibited Acts**

By using the Sites or the Services, you agree that you will not engage in any conduct that:

- interferes with or disrupts the Sites or the Services;
- intentionally or unintentionally violates any applicable local, state, national or international law;
- could subject the Company or the Providers to any legal liability, whether in tort or otherwise;
- would violate or attempt to violate our systems or network security; or
- would abuse the Services or the Sites.

In addition, by using the Sites or the Services you agree to comply with all laws, ordinances, rules, regulations, and requirements imposed by applicable governments and regulatory agencies regarding your use of the Services and the Sites. You may not reproduce, duplicate, copy, sell, resell or exploit any part of the Services or the Sites.

## 16. Our Trademarks, Service Marks, and Trade Dress

You are not authorized to use our trademarks, service marks, or trade dress, and you agree not to display or use them in any manner. The Sites and the Services are intended for your personal, non-commercial use only.

## 17. We will Cooperate with Law Enforcement Authorities and the Courts

We have no obligation to monitor your use of the Sites or the Services. You agree, however, that we retain the right to monitor your use of the Sites and the Services and to disclose any information as necessary or appropriate to satisfy any law, regulation or governmental request, to operate the Sites and the Services properly, to ensure your compliance with these Terms and Conditions, and to protect us, our affiliates, the Providers, and the general public. We reserve the right, and you hereby authorize us, to cooperate with law enforcement authorities, including but not limited to complying with warrants, court orders and subpoenas. We also reserve the right, and you hereby authorize us, to comply with any civil court orders and subpoenas. In addition, if we decide to investigate or resolve possible misuse by you involving the Sites or the Services, you authorize us to disclose to law enforcement or other government officials any information about you in our possession in connection with your use of the Sites or the Services. We may take the actions described above without giving notice to you.

## 18. Important Information regarding NeighborhoodScan.com and Family Safety Alerts

You acknowledge and agree as follows:

- All of the data and information (the 'Data') provided by NeighborhoodScan.com and Family Safety Alerts is provided by Providers, who in turn obtain it, directly or indirectly, from governmental web sites and other non-government sources;
- It is possible that information accessed or obtained through the Sites may not reflect current residences, employment, school attendance, or other information regarding sexual offenders, and you agree that it is incumbent upon you to verify the accuracy of any Data provided to you. You may do so by checking the applicable state governmental website. With regard to someone identified as a sexual offender, you agree that you will contact the responsible state agency and/or the local law enforcement agency where the offender resides, works, or attends school, as applicable, before accepting any such information as valid. If you believe that any portion of the Data is not accurate, you will communicate with the appropriate state agency;
- You will not use the Data or information contained in or accessed through this Website to threaten, intimidate, or harass any individual, and if you do, you acknowledge that you may be subject to criminal prosecution or civil liability under federal and/or state law;
- You acknowledge and agree that mistakes can and do occur in the Data and in the information gathered from governmental web sites;
- The Company provides no guaranty, warranty or representation as to the accuracy, timeliness, or completeness of the Data;
- The Providers may cease business operations, file bankruptcy, or cease providing Data to the Company at any time, over which the Company has no control, and for which you agree the Company has no responsibility; and
- The Company has no responsibility or liability for damages of any kind resulting from your use of the Data.

## 19. Important Information Regarding ScoreCast, Credit Score Simulator, and Score Tracker

The ScoreCast feature within ScoreSense is powered by CreditXpert. Interactive tools such as the CreditXpert Score and Analysis and the CreditXpert What-If Simulator are made available to you as self-help tools for your independent, personal use. Neither Credco nor CLCS represent or guarantee their accuracy or their applicability to your circumstances, or that they will help you raise your credit score, or establish or re-build good credit, or improve your credit record, credit history or credit rating. You acknowledge and agree to all of the following regarding Credit Score Simulator ('CSS') and Credit Score Tracker ('CST'):

- The credit scores provided to you are not FICO scores;
- Neither CSS nor CST provide any guaranty of any specific score but are only simulations to demonstrate how certain actions by you might affect your credit score;
- Neither CSS nor CST provide any guaranty that any action by you will have any effect on your credit score;
- Both CSS and CST show the possible effects of a single variable on your credit score, whereas your actual credit score is determined by factoring in multiple variables simultaneously;

- Neither CSS nor CST factor in the recalibration of scoring systems by the entities that create or use the scoring systems; and
- Neither CSS nor CST factor in the effect of data discrepancies or changes that may occur to the data used to determine your actual credit score, due to circumstances beyond your control.

## 20. Important Information Regarding Indemnity

YOU AGREE TO DEFEND, INDEMNIFY AND HOLD HARMLESS US, OUR PROVIDERS, THE CRA REPOSITORIES AND OUR AND OUR PROVIDERS', AND THE CRA REPOSITORIES' OFFICERS, DIRECTORS, MEMBERS, PARTNERS, EMPLOYEES, AGENTS, ATTORNEYS, AFFILIATED ENTITIES, AND REPRESENTATIVES FROM ANY AND ALL CLAIMS, LOSSES, LIABILITIES, DEMANDS, DAMAGES, COSTS AND EXPENSES, INCLUDING REASONABLE ATTORNEYS' FEES, IN ANY WAY ARISING FROM OR RELATED TO (I) A VIOLATION BY YOU OF THESE TERMS AND CONDITIONS, OR (II) ANY ACTIVITY RELATED TO THE USE OR MISUSE OF THE SITES OR THE SERVICES BY YOU OR BY ANY OTHER PERSON ACCESSING THE SITES OR THE SERVICES USING YOUR ACCOUNT. WE AND OUR PROVIDERS RESERVE THE RIGHT TO ASSUME THE EXCLUSIVE DEFENSE AND CONTROL OF ANY INDEMNIFIED MATTER AT YOUR EXPENSE AND DOING SO WILL NOT EXCUSE YOUR INDEMNITY OBLIGATIONS.

## 21. Important Information Regarding Disclaimer of Warranties and Limitations of Liability

YOU EXPRESSLY UNDERSTAND AND AGREE THAT YOUR USE OF THE SITES AND THE SERVICES IS AT YOUR SOLE RISK. ALL SERVICES AND MATERIALS (AND THE INFORMATION CONTAINED THEREIN) ARE PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS. WE, OUR PROVIDERS AND THE CRA REPOSITORIES EXPRESSLY DISCLAIM ALL WARRANTIES, GUARANTEES, REPRESENTATIONS AND CONDITIONS OF ANY KIND WHETHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, NONINFRINGEMENT, AND INFORMATIONAL CONTENT. THE INFORMATION CONTAINED ON THE SITES OR VIA THE SERVICES, INCLUDING THE MATERIALS, DOES NOT CONSTITUTE LEGAL, TAX, ACCOUNTING OR OTHER PROFESSIONAL ADVICE. WE, OUR PROVIDERS AND THE CRA REPOSITORIES MAKE NO WARRANTY OR REPRESENTATION THAT (I) THE SITES, THE SERVICES (AND THE INFORMATION CONTAINED THEREIN OR TRANSMITTED THEREBY), OR THE MATERIALS ARE ACCURATE, ERROR FREE, COMPLETE OR VALID, (II) THE SERVICES OR THE MATERIALS WILL BE DELIVERED IN A TIMELY FASHION, (III) THE SERVICES OR MATERIALS WILL BE DELIVERED ON AN UNINTERRUPTED BASIS OR BE ERROR-FREE; AND (IV) THE RESULTS THAT MAY BE OBTAINED FROM THE USE OF THE SERVICES OR THE MATERIALS WILL BE RELIABLE. THEREFORE, YOU AGREE THAT YOUR ACCESS TO AND USE OF THE SERVICES AND THE MATERIALS IS AT YOUR OWN RISK. YOU UNDERSTAND AND AGREE THAT WE, OUR PROVIDERS AND THE CRA REPOSITORIES WILL NOT BE LIABLE FOR ANY DIRECT, ACTUAL, INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL, MULTIPLIED, ADDITIONAL, STATUTORY, OR EXEMPLARY DAMAGES RESULTING FROM OR IN ANY WAY CONNECTED TO YOUR ACCESS TO, USE, OR INABILITY TO USE THE SITES OR THE SERVICES, EVEN IF WE, OUR PROVIDERS OR THE CRA REPOSITORIES HAVE BEEN ADVISED OF THE POSSIBILITY OF THOSE DAMAGES, INCLUDING LIABILITY ASSOCIATED WITH ANY VIRUSES THAT MAY INFECT YOUR COMPUTER EQUIPMENT. SOME JURISDICTIONS EITHER DO NOT ALLOW OR PLACE RESTRICTIONS UPON THE EXCLUSION OR LIMITATION OF DAMAGES IN CERTAIN TYPES OF AGREEMENTS; FOR THESE JURISDICTIONS, THE AFOREMENTIONED LIMITATION ON LIABILITY SHALL BE TO THE MAXIMUM DEGREE PERMITTED BY APPLICABLE LAW. IF, NOTWITHSTANDING THE ABOVE, LIABILITY IS IMPOSED UPON THE COMPANY OR ANY PROVIDER OR ANY CRA REPOSITORY, THEN YOU AGREE THAT THE COMPANY'S OR THE APPLICABLE PROVIDER'S OR THE APPLICABLE CRA REPOSITORIES' TOTAL LIABILITY TO YOU FOR ANY OR ALL OF YOUR LOSSES OR INJURIES FROM THE COMPANY'S, OR THE APPLICABLE PROVIDER'S, OR THE APPLICABLE CRA REPOSITORIES' ACTS OR OMISSIONS, REGARDLESS OF THE NATURE OF THE LEGAL OR EQUITABLE CLAIM, SHALL NOT EXCEED THE AMOUNT PAID BY YOU FOR THE SERVICES FOR THE ONE MONTH PRIOR TO THE DATE ON WHICH YOUR CLAIM AROSE, OR U.S. $30.00, WHICHEVER IS LESS.

## 22. Applicable Law and Location of any Disputes.

These Terms and Conditions and all issues collateral thereto are governed by, and will be construed in accordance with, the laws of the State of Texas, U.S.A., without regard to its choice of law rules, and regardless of your actual place of residence. This Agreement is to be performed in Dallas, Dallas County, Texas, and any arbitration, suit, action or other legal proceeding arising out of or related to these Terms and Conditions, the Sites, the Materials, or the Services or any issues collateral thereto must be brought in Dallas, Texas. You expressly waive any objection which you may have to the venue of any such arbitration, suit, action or proceeding in Dallas, Texas, and waive any right that you may have to assert forum non conveniens in any such arbitration, suit, action or proceeding.

## 23. ARBITRATION

YOU UNDERSTAND AND AGREE THAT ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN YOU AND US OR OUR PROVIDERS (INCLUDING OUR RESPECTIVE PARENT, AFFILIATED, SUBSIDIARY OR RELATED ENTITIES), INCLUDING BUT NOT LIMITED TO TORT AND CONTRACT CLAIMS, CLAIMS BASED UPON ANY FEDERAL, STATE OR LOCAL STATUTE, LAW, ORDER, ORDINANCE OR REGULATION, AND

THE ISSUE OF ARBITRABILITY, SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION THAT WILL BE HELD IN DALLAS, TEXAS, PURSUANT TO THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION. ANY CONTROVERSY CONCERNING WHETHER A DISPUTE IS ARBITRABLE SHALL BE DETERMINED BY THE ARBITRATOR AND NOT BY ANY COURT. JUDGMENT UPON ANY AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED BY ANY STATE OR FEDERAL COURT HAVING JURISDICTION THEREOF. THIS ARBITRATION CONTRACT IS MADE PURSUANT TO A TRANSACTION IN INTERSTATE COMMERCE AND ITS INTERPRETATION, APPLICATION, ENFORCEMENT AND PROCEEDINGS HEREUNDER SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT ("FAA"). NEITHER YOU NOR WE SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS IN ARBITRATION BY OR AGAINST OTHER CONSUMERS OR ARBITRATE ANY CLAIM AS A REPRESENTATIVE OR MEMBER OF A CLASS OR IN A PRIVATE ATTORNEY GENERAL CAPACITY. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL. Except where expressly prohibited by law, you agree that regardless of any statute or law to the contrary, any claim or cause of action arising out of or related to use of the Sites or the Services or related to these Terms and Conditions, must be filed within one year after such claim or cause of action arose or be forever barred.

### 24. Offers from Third Parties

While you are on the Sites, you may receive offers from third parties that are unrelated to the Company. You do not have to accept those offers to enroll in any of the Services or to accept the Services. However, if you do accept any third party offers, or visit any websites regarding such offers, you do so subject to the Terms and Conditions (sometimes also referred to as Terms of Use or Terms of Site) and the Privacy Policies of those sites. You acknowledge and agree that the Company has no control over, or responsibility or liability for, any offer, statement, or representation by, or any other matter connected or associated with, such third party offers or websites.

### 25. How we may contact you

We may communicate with and to you by e-mail sent to the email address you provided that you entered on a Site. If you have not provided an e-mail address, we may communicate with you at any e-mail or postal address that we reasonably believe is your address. You agree that all such notices and other communications that we provide to you via e-mail satisfy any legal requirement that such communications be in writing.

### 26. FCRA Disclosures

YOU UNDERSTAND THAT IT MAY BE A VIOLATION OF FEDERAL AND/OR STATE LAW FOR YOU TO OBTAIN A CREDIT REPORT ON ANY PERSON OTHER THAN YOURSELF, AND THAT UNDER THE FCRA, ANY PERSON WHO KNOWINGLY AND WILLFULLY OBTAINS INFORMATION ON A CONSUMER FROM A CONSUMER REPORTING AGENCY UNDER FALSE PRETENSES SHALL BE FINED UNDER TITLE 18, UNITED STATES CODE, IMPRISONED FOR NOT MORE THAN 2 YEARS, OR BOTH. The FCRA allows you to obtain a copy of all of the information in your consumer credit file disclosure from consumer reporting agencies for a reasonable charge. A full disclosure of information in your file at the three national credit repositories must be obtained directly from the repositories by contacting:

Experian: www.experian.com (https://web.archive.org/web/20130915071452/http://www.experian.com/)
Equifax: 1-800-685-1111
TransUnion: 1-800-916-8800

The FCRA also states that individuals are entitled to receive a disclosure directly from the consumer reporting agency free of charge under the following circumstances:

- You certify in writing that you are unemployed and intend to apply for employment in the 60-day period beginning on the day you make the certification;
- You are a recipient of public welfare assistance;
- You have reason to believe that your file at the consumer reporting agency contains inaccurate information due to fraud; or
- You have been denied credit, insurance, or employment within the past 60 days as a result of your consumer report.

The FCRA also permits consumers to dispute inaccurate information in their consumer report without charge. Accurate information cannot be changed. You do not have to purchase your consumer report from the Sites to dispute inaccurate or incomplete information in your credit file maintained by the CRA Repositories.

The FCRA allows consumers to get one free comprehensive disclosure of all of the information in their credit file from each of the Repositories once every 12 months through a central source. Georgia residents can receive two disclosures per year. Although comprehensive, the credit reports from each of the Repositories that are available through the Sites may not have the same information as a credit report obtained directly from the Repositories or through the central source. To request your free annual report

under the FCRA, you must go to www.annualcreditreport.com (https://web.archive.org/web/20130915071452/http://www.annualcreditreport.com/), or call 877-322-8228. Credit Reports available through the Sites are not related to the free FCRA disclosure that you are or may be entitled to.

The Credit Report you are requesting from the Company through the Sites is not intended to constitute the disclosure of Experian, Equifax or Trans Union information required by the FCRA or similar state laws. Consumers residing in the states of Colorado, Maine, Maryland, Massachusetts, New Jersey, and Vermont may receive an additional free copy of their credit report once per year and residents of the state of Georgia may receive two (2) additional copies per year. For Illinois residents, credit reporting agencies are required by law to give you a copy of your credit record upon request at no charge or for a nominal fee

Click here for a full text of your summary of rights (https://web.archive.org/web/20130915071452/http://www.ftc.gov/bcp/edu/pubs/consumer/credit/cre35.pdf)

## 27. NOT A CREDIT REPAIR ORGANIZATION OR CONTRACT

We may offer access to your credit report and other credit information through one or more of the Services. Neither we nor the Providers are credit repair organizations, and neither we nor the Providers are offering to sell, provide or perform any service to you for the express or implied purpose of either improving your credit record, credit history or credit rating or providing advice or assistance to you with regard to improving your credit record, credit history or credit rating. You acknowledge and agree that you are not seeking to purchase, use or access any of the credit reports, the Sites, or the Services in order to do so. Accurate adverse information in your credit report cannot be changed. If you believe that your credit report contains inaccurate, non-fraudulent information, it is your responsibility to contact the relevant Repository, and follow the appropriate procedures for notifying the Repository that you believe that your credit report contains an inaccuracy. Any information provided to you regarding the procedures followed by the various Repositories related to the removal of inaccurate, non-fraudulent information is provided without charge to you and is available for free.

## 28. Miscellaneous Terms

These Terms and Conditions constitute the entire agreement between you and us relating to the Sites and the Services and they supersede all prior or contemporaneous oral or written communications, proposals and representations with respect to the Sites and the Services and any other subject matter covered by these Terms and Conditions. Our failure to exercise or enforce any right under or provision of these Terms and Conditions will not constitute a waiver of such right or provision. If any provision of the Terms and Conditions is found by a court of competent jurisdiction to be invalid, the parties nevertheless agree that the court should endeavor to give effect to the parties' intentions as reflected in the provision, and the other provisions of the Terms and Conditions will remain in full force and effect. You may not assign these Terms and Conditions or any of your rights or obligations under the Terms and Conditions. These Terms and Conditions may be assigned by us and will inure to the benefit of our successors, assigns, and licensees. The section titles and headings in these Terms and Conditions are for convenience only and have no legal or contractual effect. All of the Company's Providers are third party beneficiaries with respect to the provisions in these Terms and Conditions that reference them. All provisions in these Terms and Conditions that by their nature would survive termination or expiration of your access to the Sites or the Services subscription (including but not limited to those related to limits on our and our Providers' liability, your liability to us and our Providers, investigations, applicable law and venue, and our right to remove and discard your content from the Services) will survive such termination or expiration. In the event of cancelation, termination, or cessation for any reason of your membership in any of the Services, the introductory paragraph of this Agreement, sections 1-4, and 16-28 of these Terms and Conditions will survive. In the event of a conflict between any other notice, policy, disclaimer or other term contained in this website, these Terms and Conditions will control. If any provision is deemed to be unlawful or unenforceable, it will not affect the validity and enforceability of the remaining provisions.

*Last Updated:  July 23, 2013*

CATEGORIES                                                                                                                    +

© 2013 One Technologies LP, All rights reserved.

# EXHIBIT 4



**AMERICAN ARBITRATION ASSOCIATION®**

**DEMAND FOR ARBITRATION**
**CONSUMER ARBITRATION RULES**

Complete this form to start arbitration under an arbitration agreement in a contract.

| | |
|---|---|
| 1. Which party is sending in the filing documents? *(check one)*     Consumer     Business | |

**2. Briefly explain the dispute:**

**3. Specify the amount of money in dispute, if any: $**

**4. State any other relief you are seeking:**

Attorney Fees     Interest     Arbitration Costs     Other; explain:

**5. Identify the requested city and state for the hearing if an in-person hearing is held:**

**6. Please provide contact information for both the Consumer and the Business. Attach additional sheets or forms as needed.**

| **Consumer:** | | | **Business:** | | |
|---|---|---|---|---|---|
| Name: | | | Name: | | |
| Address: | | | Address: | | |
| City: | State: | Zip Code: | City: | State: | Zip Code: |
| Telephone: | Fax: | | Telephone: | Fax: | |
| Email Address: | | | Email Address: | | |
| **Consumer's Representative (*if known*):** | | | **Business' Representative (*if known*):** | | |
| Name: | | | Name: | | |
| Firm: | | | Firm: | | |
| Address: | | | Address: | | |
| City: | State: | Zip Code: | City: | State: | Zip Code: |
| Telephone: | Fax: | | Telephone: | Fax: | |
| Email Address: | | | Email Address: | | |
| Date: | | | | | |

**7. Send a copy of this completed form to the AAA together with:**

- A clear, legible copy of the contract containing the parties' agreement to arbitrate disputes;
- The proper filing fee (filing fee information can be found in the Costs of Arbitration section of the Consumer Arbitration Rules); and
- A copy of the court order, if arbitration is court-ordered.

**8. Send a copy of the completed form and any attachments to all parties and retain a copy of the form for your records.**

To file by mail, send the initial filing documents and the filing fee to: AAA Case Filing Services, 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043.
To file online, visit **www.adr.org** and click on **File or Access Your Case** and follow directions. To avoid the creation of duplicate filings, the AAA requests that the filing documents and payment be submitted together. When filing electronically, no hard copies are required.

Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. If you believe that you meet these requirements, you must submit a completed Affidavit for Waiver of Fees, available on our website.

| | |
|---|---|
| **VICKIE FORBY KIMMEL,** § | |
| § | |
| *Claimant,* § | **IN THE AMERICAN** |
| § | **ARBITRATION ASSOCIATION** |
| **VS.** § | |
| § | **Claim No. _____** |
| **ONE TECHNOLOGIES, LLC,** § | |
| § | |
| *Respondent.* § | |

<u>CLAIMANT'S ORIGINAL CLAIMS</u>

Vickie Forby Kimmel ("**Claimant**"), Claimant in the above-styled and numbered cause, files this Original Claims complaining of One Technologies, LLC ("**Respondent**" or "**One Tech**") and shows the following:

**PARTIES**

1.      Claimant Vickie Forby Kimmel is an individual residing in St. Clair County, Illinois.

2.      Respondent One Technologies, LLC is a Texas limited liability company with its principal place of business located at 8144 Walnut Hill Lane, Suite 600, Dallas, Texas 75231.  One Technologies, LLC may be served with process through its registered agent, Corporation Service Company d/b/a CSC – Lawyers INCO, 211 East 7th Street, Suite 620, Austin, Texas 78701.

**FACTUAL ALLEGATIONS**

**I.      One Tech's "Free" Credit Score Offer and Enrollment Scam.**

3.      From at least 2008 until December 2014, One Tech used deceptive marketing tactics to clandestinely enroll consumers, including Claimant, in various online credit-monitoring programs that One Tech owns and operates.

4.      On the more than 50 websites One Tech owns and operates, One Tech offers consumers "free" online access to their credit scores.  However, One Tech fails to disclose, or fails

to adequately disclose, that by accessing their "free" score, consumers would be enrolled in One Tech's negative-option credit monitoring program and would incur a $29.95 recurring monthly fee.  Although some of Respondent's websites contained statements about the recurring charge, those statements were neither conspicuous nor adequate to inform consumers about the true nature of Respondent's scheme.  Accordingly, Claimant's and consumers' impression of Respondent's websites, advertisements, and marketing practices was that Respondent offered consumers "free" access to their credit scores with no further payment obligation.

5.      Consumers, like Claimant, know that credit scores are important because financial institutions use credit scores to determine whether to extend credit to a consumer, and some employers and property owners also use a consumer's credit score before transacting business with the consumer.  One Tech preyed on consumers' interest in and fear about their credit scores by offering a "free" chance to review their credit scores.

6.      One Tech purchased keyword advertising on search engines, such as Google and Bing.  As a result, consumers who entered terms such as "free credit report" into the search engine often saw an ad for one or more of One Tech's websites neat the top of the search results, in the sponsored links or ads sections.  One Tech's most prominent online ad stated, "View your latest Credit Scores from All 3 Bureaus in 60 second for $0!"

7.      Once a consumer visited one of One Tech's websites to view their "free" credit score, they were prompted to enter their credit or debit card information, which One Tech disguised as being "required" to "verify" the consumers' information.  In fact, the NCR landing page stated, "After verification of your identity, your scores are available for secure online delivery in seconds."

8.      Further, immediately above the credit or debit card field was the following

statement, or similar language: "Tell us which card you would like to use for our $1.00 refundable processing fee," which led consumers to believe that One Tech needed their debit or credit card information to verify their identity or to charge a $1.00 fee to process their credit score. Instead, Respondent used Claimant's and consumers' information to automatically enroll them in its negative-option credit program, for which they never provided informed consent, did not authorize, and otherwise did not want.

9.       Respondent caused millions of dollars in injuries to consumers by enrolling them in its credit-monitoring program. Upon information and belief, more than 200,000 consumers have complained about Respondent's business practices to their banks, their credit card companies, a law enforcement agency, or the Better Business Bureau.

10.      Respondent's unlawful practices led the FTC and two state Attorneys General to file a complaint against it and other related entities, which resulted in a stipulated settlement enjoining Respondent from these practices and monetary relief in the amount of $22,000,000.

## II.    The FTC Action.

11.      On November 12, 2014, the Federal Trade Commission and the Attorneys General for the States of Illinois and Ohio filed a complaint against One Tech in the federal district court for the Northern District of California arising out of the allegations complained of herein. *See FTC v. One Techs, LP*, No. 3:14-CV-050660JSC (N.D. Cal. Nov. 21, 2014) (hereinafter, "**Stipulated Order**") ("The Complaint charges that Respondents participated in deceptive acts or practices in violation of Section 5(a) of the FTC Act . . . Section 4 of ROSCA . . . the Ohio Consumer Sales Practices Act . . . and Section 2 of the Illinois Consumer Fraud Act . . . in the marketing of their credit monitoring programs.").

12.     On November 21, 2014, One Tech and other related entities entered into a Stipulated Order in which they agreed to correct their misleading practices and to pay the sum of $22,000,000 in compensatory damages.  *See FTC v. One Techs, LP*, No. 3:14-CV-050660JSC (N.D. Cal. Nov. 21, 2014) (hereinafter, "**Stipulated Order**").

## III.   Claimant's enrollment in One Tech's "free" credit score scam.

13.     On or about July 7, 2014, Plaintiff was directed to One Tech's Scoresense.com website, where she was offered a "free" credit report.

14.     Claimant entered her credit card information, authorizing One Tech to charge her $1.00 to verify her identity and/or to obtain her credit report for personal, family, or household use.

15.     Claimant did not knowing authorize One Tech to charge her credit card any other amounts or to enroll in her credit monitoring services.

16.     Seven days later, One Tech, without authorization, charged Claimant's credit card $29.95.

17.     On August 12 and September 14, 2014, One Tech again charged Claimant's credit card $29.95.  Upon realizing One Tech was charging her credit card without authorization, Claimant contacted One Tech at least once by telephone and demanded that One Tech stop making unauthorized charges on her credit card.

18.     One Tech still did not stop.  On October 14, November 12, and December 15, 2014, One Tech charged Claimant's credit card repeatedly again despite her demand to stop doing so.

## IV.   Respondent's Credit Repair Organization Status

19.     The CROA defines a "Credit Repair Organization" as "any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in

return for the payment of money or other valuable consideration, for the express or implied purpose of (i) improving any consumer's credit record, credit history, or credit rating; or (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i)." 15 U.S.C. § 1679a(3).

20.     In 2008, Respondent launched MyCreditHealth, a service that monitors consumers' credit reports for fraudulent activity and provides access to their credit score.  In early 2010, Respondent launched ScoreSense, a service substantially similar to MyCreditHealth.  Since then, Respondent has launched other similar services it offers on its websites including ScoreTracker. (MyCreditHealth, ScoreSense, and ScoreTracker are collectively referred to as the "**Credit Repair Services**").  Respondent's Credit Repair Services ScoreTracker and ScoreCast were advertised and marketed on the NCR website in 2013.

21.     In connection with Respondent's Credit Repair Services, Respondent advertised "Credit Specialists" who would "help you make sense of your credit, pinpoint the factors most affecting your scores and understand why."

22.     Respondent also advertised tools to help consumers "detect and correct score-lowering credit errors," including a Dispute Center that provides "a step-by-step guide for navigating the process with all three bureaus to file a credit dispute."

23.     Respondent also advertised "Daily Credit Report Monitoring" that would detect and "minimize the damage that reporting errors, delinquent payments and account fraud can do to your credit score."

24.     ScoreTracker was advertised and marketed to Claimant and consumers as a "self-help tool" to "track your progress from month to month to help you reach your credit goals."

Respondent advertised ScoreCast as a "score simulator that shows how your score may change after you take a certain action."

25.     Respondent's Credit Repair Services were sold, performed, and provided by Respondent, using an instrumentality of interstate commerce (the Internet), in return for the $29.95/month fee it charged Claimant and consumers under its fraudulent and unlawful negative-option credit-monitoring program.

26.     Furthermore, Respondent sold, performed, and provided its Credit Repair Services for the express or implied purpose of improving Claimant's and consumers' credit records, credit histories, or credit ratings.

27.     The Credit Specialists, provided by Respondent, pinpoint the factors most affecting consumers' credit scores and helps them understand why.  Thus, the express or implied purpose of the Credit Specialists were to improve consumers' credit records, credit histories, or credit ratings by "pinpoint[ing]" factors negatively impacting those records, histories, and ratings and providing consumers with the information and steps necessary to remove those factors with negative impacts.  Removing factors that negatively impact a credit score would immediately improve a consumers' credit record, credit history, or credit rating, and Respondent advertises that it provides, sells, and performs that service.  The Credit Specialists also constitute advice and assistance in improving consumers' credit in providing, selling, and performing that service.

28.     Respondent also claims that its Credit Repair Services "detect and correct score-lowering errors," and that its Dispute Center provides a guide "for navigating [the credit dispute] process with all three bureaus," also have the express or implied purpose of improving consumers' credit records, credit histories, or credit ratings.  Detecting and correcting score-lowering errors would immediately improve a consumers' credit record, credit history, or credit rating.

Respondent's Dispute Center also constitutes advice and assistance in improving a consumers' credit in providing, selling, and performing that service.

29.     Respondent's "Daily Credit Report Monitoring," which detects and minimizes the damage to consumers' credit scores, credit histories, and credit ratings, also has the express or implied purpose of improving consumers' credit, and otherwise constitutes advice or assistance in improving a consumers' credit.

30.     Finally, ScoreTracker is advertised to consumers as a tool to help them reach their credit goals.  Consumers' credit goals expressly or implied means improving one's credit score, credit rating, or credit history, and ScoreTracker constitutes Respondent's advice or assistance in achieving those goals.  Respondent's ScoreCast service has the express or implied purpose of improving consumers' credit ratings, credit histories, or credit scores as it shows how a consumers' credit can be improved by taking certain actions.  ScoreCast also constitutes Respondent's advice or assistance in improving consumers' credit.

31.     Therefore, Respondent uses the Internet to sell, provide, and perform services, in return for the $29.95 monthly charge to consumers, for the express or implied purpose of (i) improving consumers' credit scores, credit histories, and credit ratings and (2) provides advice or assistance in improving consumers' credit.  *See* 15 U.S.C. § 1679a(3).  Respondent is a "credit repair organization" under the CROA.  *See, e.g., Hillis v. Equifax Consumer Servs., Inc.*, 237 F.R.D. 491, 509 (N.D. Ga. 2006) (Sellers offered a "service," rather than offering a product, subjecting them to the CROA as a credit repair organization when they furnished buyers with credit report, credit score, analysis of factors considered in determining score, and a simulator showing how a buyers' actions could affect the score.).

32.     Despite One Tech's status as a credit repair organization, it attempts to disclaim its status as such in its Terms and Conditions.

## RELIEF SOUGHT

**Uniform Declaratory Judgments Act,**
**Texas Civil Practice and Remedies Code Chapter 37, *et seq.***

### I.     One Tech's status as a credit repair organization under the Terms and Conditions.

33.     The foregoing paragraphs are incorporated by reference as if set forth herein verbatim.

34.     Claimant seeks equitable relief under the Uniform Declaratory Judgments Act ("**UDJA**") to first obtain a declaration that One Tech is a credit repair organization under the Terms and Conditions.

35.     Claimant is a person interested under a written contract or other writings constituting a contract, the Terms and Conditions, and his rights are affected by the Terms and Conditions.  *See* TEX. CIV. PRAC. & REM. CODE § 37.004(a).

36.     Claimant is therefore entitled to a declaration of One Tech's status as a credit repair organization, whether or not further relief is or could be claimed.  *Id.*; *see id.* at § 37.003(a).

37.     For the reasons stated above, the panel should declare that One Tech is a credit repair organization due to its Credit Repair Services and in accordance with the plain language of the CROA.  *Supra* ¶¶ 17-30.

**II.    Because One Tech is a credit repair organization, the Terms and Conditions shall be treated as void, and may not be enforced by any court or person.**

38.     The foregoing paragraphs are incorporated by reference as if set forth herein verbatim.

39.     Claimant also seeks equitable relief under the UDJA to obtain a declaration that the Terms and Conditions are void and may not be enforced by any court or person.

40.     The Credit Repair Services provided by One Tech render it a credit repair organization under the CROA.  *Id.*

41.     The CROA imposes strict requirements on contracts between credit repair organizations, like One Tech, and consumers.  *See* 15 U.S.C. §§ 1679c(a), 1679e(a)-(b), and § 1679f(b).

42.     First, Credit repair organizations are required to provide consumers with a prescribed, written statement before any contract or agreement between the consumer and the credit repair organization is executed.  *Id.* at § 1679c(a).  The CROA requires the statement to be provided to the consumer as a document separate and apart from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer.  *Id.* at § 1679c(b).

43.     Despite One Tech's status as a credit repair organization and its obligations under the CROA, One Tech never provided such statement to Claimant prior to the execution of the Terms and Conditions.

44.     Second, the CROA requires credit repair organizations to provide the consumer with a right to cancel any contract with the credit repair organization, without penalty, at any time before midnight of the third business day which begins after the date on which the contract or agreement between the consumer and the credit repair organization is executed.  *Id.* at § 1679e(a).

The CROA further requires the contract to be accompanied by a notice of the consumer's right to cancel the contract and to contain the written statement identified in the statute. *Id.* at § 1679e(b).

45.     Despite One Tech's status a credit repair organization and its obligations under the CROA, One Tech never provided Claimant the requisite notice of his right to cancel the Terms and Conditions set forth in the statute.

46.     Finally, the CROA prohibits a credit repair organization, like One Tech, from attempting to obtain a waiver of the protections afforded under the CROA, and any such attempt constitutes a violation of the CROA. *Id.* at § 1679f(b). Paragraph 27 of the Terms and Conditions seeks to disclaim its status as a credit repair organization and, consequently, Claimant's rights afforded under the CROA.

47.      The Terms and Conditions waive Claimant's protections provided by the CROA and does not comply with the applicable provisions of the CROA.  Therefore, both the waiver of Claimant's rights and the Terms and Conditions failure to comply with the CROA "shall be treated as void; and . . . . may not be enforced by any Federal or State court or any other person." *Id.* at §§ 1679f(a), (c).

48.     The panel should therefore declare that the Terms and Conditions are void and unenforceable and any waiver of the protections afforded to Claimant by the CROA are void and unenforceable.

Dated: September 17, 2021                    Respectfully submitted,


                                             */s/ Stuart L. Cochran*
                                             Stuart L. Cochran
                                             Texas Bar No. 24027936
                                             Blake E. Mattingly
                                             Texas Bar No. 24104229

STECKLER WAYNE COCHRAN CHERRY PLLC
12720 Hillcrest Rd., Ste. 1045
Dallas TX 75230
Tel:     972-387-4040
Email:  stuart@swclaw.com
Email:  blake@swclaw.com

David C. Nelson (ARDC 6225722)
NELSON & NELSON, ATTORNEYS AT LAW, P.C.
420 North High Street, P.O. Box Y
Belleville, IL 62222
Tel: 618-277-4000
Email: dnelson@nelsonlawpc.com

Matthew H. Armstrong (MoBar 42803)
ARMSTRONG LAW FIRM LLC
8816 Manchester Rd., No. 109
St. Louis MO 63144
Tel:     314-258-0212
Email:  matt@mattarmstronglaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 17, 2021, I served a copy of this Original Claim on Respondent.

*/s/ Stuart L. Cochran*
Stuart L. Cochran

# EXHIBIT 5



Complete this form to start arbitration under an arbitration agreement in a contract.

| 1. Which party is sending in the filing documents? *(check one)*      Consumer      Business |

| 2. Briefly explain the dispute: |

| 3. Specify the amount of money in dispute, if any: $ |

| 4. State any other relief you are seeking:<br><br>Attorney Fees      Interest      Arbitration Costs      Other; explain: |

| 5. Identify the requested city and state for the hearing if an in-person hearing is held: |

| 6. Please provide contact information for both the Consumer and the Business. Attach additional sheets or forms as needed. |

| **Consumer:** | **Business:** |
|---|---|
| Name: | Name: |
| Address: | Address: |
| City:      State:      Zip Code: | City:      State:      Zip Code: |
| Telephone:      Fax: | Telephone:      Fax: |
| Email Address: | Email Address: |
| **Consumer's Representative (*if known*):** | **Business' Representative (*if known*):** |
| Name: | Name: |
| Firm: | Firm: |
| Address: | Address: |
| City:      State:      Zip Code: | City:      State:      Zip Code: |
| Telephone:      Fax: | Telephone:      Fax: |
| Email Address: | Email Address: |
| Date: | |

**7. Send a copy of this completed form to the AAA together with:**

- A clear, legible copy of the contract containing the parties' agreement to arbitrate disputes;
- The proper filing fee (filing fee information can be found in the Costs of Arbitration section of the Consumer Arbitration Rules); and
- A copy of the court order, if arbitration is court-ordered.

**8. Send a copy of the completed form and any attachments to all parties and retain a copy of the form for your records.**

To file by mail, send the initial filing documents and the filing fee to: AAA Case Filing Services, 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043.
To file online, visit **www.adr.org** and click on **File or Access Your Case** and follow directions. To avoid the creation of duplicate filings, the AAA requests that the filing documents and payment be submitted together. When filing electronically, no hard copies are required.

Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. If you believe that you meet these requirements, you must submit a completed Affidavit for Waiver of Fees, available on our website.

| | | | |
|---|---|---|---|
| **MYLES STAVIS,** | § | | |
| | § | | |
| *Claimant,* | § | **IN THE AMERICAN** | |
| | § | **ARBITRATION ASSOCIATION** | |
| **VS.** | § | | |
| | § | **Claim No. _____** | |
| **ONE TECHNOLOGIES, LLC,** | § | | |
| | § | | |
| *Respondent.* | § | | |

## CLAIMANT'S ORIGINAL CLAIMS

Myles Stavis ("**Claimant**"), Claimant in the above-styled and numbered cause, files this Original Claims complaining of One Technologies, LLC ("**Respondent**" or "**One Tech**") and shows the following:

### PARTIES

1.      Claimant Myles Stavis is an individual residing in Brookline, Norfolk County, Massachusetts.

2.      Respondent One Technologies, LLC is a Texas limited liability company with its principal place of business located at 8144 Walnut Hill Lane, Suite 600, Dallas, Texas 75231.  One Technologies, LLC may be served with process through its registered agent, Corporation Service Company d/b/a CSC – Lawyers INCO, 211 East 7th Street, Suite 620, Austin, Texas 78701.

### FACTUAL ALLEGATIONS

**I.    One Tech's "Free" Credit Score Offer and Enrollment Scam.**

3.      From at least 2008 until December 2014, One Tech used deceptive marketing tactics to clandestinely enroll consumers, including Claimant, in various online credit-monitoring programs that One Tech owns and operates.

4.      On the more than 50 websites One Tech owns and operates, One Tech offers consumers "free" online access to their credit scores.  However, One Tech fails to disclose, or fails

to adequately disclose, that by accessing their "free" score, consumers would be enrolled in One Tech's negative-option credit monitoring program and would incur a $29.95 recurring monthly fee. Although some of Respondent's websites contained statements about the recurring charge, those statements were neither conspicuous nor adequate to inform consumers about the true nature of Respondent's scheme. Accordingly, Claimant's and consumers' impression of Respondent's websites, advertisements, and marketing practices was that Respondent offered consumers "free" access to their credit scores with no further payment obligation.

5.     Consumers, like Claimant, know that credit scores are important because financial institutions use credit scores to determine whether to extend credit to a consumer, and some employers and property owners also use a consumer's credit score before transacting business with the consumer. One Tech preyed on consumers' interest in and fear about their credit scores by offering a "free" chance to review their credit scores.

6.     One Tech purchased keyword advertising on search engines, such as Google and Bing. As a result, consumers who entered terms such as "free credit report" into the search engine often saw an ad for one or more of One Tech's websites neat the top of the search results, in the sponsored links or ads sections. One Tech's most prominent online ad stated, "View your latest Credit Scores from All 3 Bureaus in 60 second for $0!"

7.     Once a consumer visited one of One Tech's websites to view their "free" credit score, they were prompted to enter their credit or debit card information, which One Tech disguised as being "required" to "verify" the consumers' information. In fact, the NCR landing page stated, "After verification of your identity, your scores are available for secure online delivery in seconds."

8.     Further, immediately above the credit or debit card field was the following

statement, or similar language: "Tell us which card you would like to use for our $1.00 refundable processing fee," which led consumers to believe that One Tech needed their debit or credit card information to verify their identity or to charge a $1.00 fee to process their credit score. Instead, Respondent used Claimant's and consumers' information to automatically enroll them in its negative-option credit program, for which they never provided informed consent, did not authorize, and otherwise did not want.

9.      Respondent caused millions of dollars in injuries to consumers by enrolling them in its credit-monitoring program. Upon information and belief, more than 200,000 consumers have complained about Respondent's business practices to their banks, their credit card companies, a law enforcement agency, or the Better Business Bureau.

10.      Respondent's unlawful practices led the FTC and two state Attorneys General to file a complaint against it and other related entities, which resulted in a stipulated settlement enjoining Respondent from these practices and monetary relief in the amount of $22,000,000.

**II.      The FTC Action.**

11.      On November 12, 2014, the Federal Trade Commission and the Attorneys General for the States of Illinois and Ohio filed a complaint against One Tech in the federal district court for the Northern District of California arising out of the allegations complained of herein. *See FTC v. One Techs, LP*, No. 3:14-CV-050660JSC (N.D. Cal. Nov. 21, 2014) (hereinafter, "**Stipulated Order**") ("The Complaint charges that Respondents participated in deceptive acts or practices in violation of Section 5(a) of the FTC Act . . . Section 4 of ROSCA . . . the Ohio Consumer Sales Practices Act . . . and Section 2 of the Illinois Consumer Fraud Act . . . in the marketing of their credit monitoring programs.").

12.     On November 21, 2014, One Tech and other related entities entered into a Stipulated Order in which they agreed to correct their misleading practices and to pay the sum of $22,000,000 in compensatory damages.  *See FTC v. One Techs, LP*, No. 3:14-CV-050660JSC (N.D. Cal. Nov. 21, 2014) (hereinafter, "**Stipulated Order**").

### III.   Claimant's enrollment in One Tech's "free" credit score scam.

13.     In 2013, Claimant was interested in obtaining his credit score during his search for a place to live and was directed to One Tech's website, NationalCreditReport.com ("**NCR**").

14.     Claimant believed that he was signing up to obtain his "free" credit score, as One Tech advertised on NCR.  Indeed, Claimant logged on to NCR on October 31, 2013 at 5:32 PM and reviewed his credit score at 5:33 PM the same day.  Claimant never logged onto NCR or any of Respondent's websites after accessing his "free" score on October 31, 2013; however, Claimant was a victim of One Tech's enrollment scam and, unbeknownst to him, was automatically enrolled in One Tech's negative-option credit-monitoring program.

15.     One Tech charged Claimant's checking account $29.95 per month for 78 months, until Claimant became aware that he had been enrolled in One Tech's credit-monitoring program that he never wanted, he never consented to, and he never agreed to pay for.

16.     Like thousands of other consumers, upon discovering that One Tech had unlawfully been charging him for its credit-monitoring program, Claimant filed complaints with the Texas and Massachusetts Attorneys General and the Consumer Financial Protection Bureau ("**CFPB**") regarding his unauthorized account with One Tech.  One Tech responded to the CFPB complaint and claimed Claimant had been sent dozens of emails from the time of his fraudulent enrollment until June 2019, but Claimant combed through the inbox of the email address on file with One Tech and found zero correspondence from One Tech or NCR relating to his account or otherwise.

One Tech also stated that it would not be refunding any of the monies it unjustly acquired from Claimant.

## IV.    Respondent's Credit Repair Organization Status

17.    The CROA defines a "Credit Repair Organization" as "any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of (i) improving any consumer's credit record, credit history, or credit rating; or (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i)." 15 U.S.C. § 1679a(3).

18.    In 2008, Respondent launched MyCreditHealth, a service that monitors consumers' credit reports for fraudulent activity and provides access to their credit score.   In early 2010, Respondent launched ScoreSense, a service substantially similar to MyCreditHealth.   Since then, Respondent has launched other similar services it offers on its websites including ScoreTracker. (MyCreditHealth, ScoreSense, and ScoreTracker are collectively referred to as the "**Credit Repair Services**").   Respondent's Credit Repair Services ScoreTracker and ScoreCast were advertised and marketed on the NCR website in 2013.

19.    In connection with Respondent's Credit Repair Services, Respondent advertised "Credit Specialists" who would "help you make sense of your credit, pinpoint the factors most affecting your scores and understand why."

20.    Respondent also advertised tools to help consumers "detect and correct score-lowering credit errors," including a Dispute Center that provides "a step-by-step guide for navigating the process with all three bureaus to file a credit dispute."

21.    Respondent also advertised "Daily Credit Report Monitoring" that would detect

and "minimize the damage that reporting errors, delinquent payments and account fraud can do to your credit score."

22.    ScoreTracker was advertised and marketed to Claimant and consumers as a "self-help tool" to "track your progress from month to month to help you reach your credit goals." Respondent advertised ScoreCast as a "score simulator that shows how your score may change after you take a certain action."

23.    Respondent's Credit Repair Services were sold, performed, and provided by Respondent, using an instrumentality of interstate commerce (the Internet), in return for the $29.95/month fee it charged Claimant and consumers under its fraudulent and unlawful negative-option credit-monitoring program.

24.    Furthermore, Respondent sold, performed, and provided its Credit Repair Services for the express or implied purpose of improving Claimant's and consumers' credit records, credit histories, or credit ratings.

25.    The Credit Specialists, provided by Respondent, pinpoint the factors most affecting consumers' credit scores and helps them understand why.  Thus, the express or implied purpose of the Credit Specialists were to improve consumers' credit records, credit histories, or credit ratings by "pinpoint[ing]" factors negatively impacting those records, histories, and ratings and providing consumers with the information and steps necessary to remove those factors with negative impacts.  Removing factors that negatively impact a credit score would immediately improve a consumers' credit record, credit history, or credit rating, and Respondent advertises that it provides, sells, and performs that service.  The Credit Specialists also constitute advice and assistance in improving consumers' credit in providing, selling, and performing that service.

26.    Respondent also claims that its Credit Repair Services "detect and correct score-

lowering errors," and that its Dispute Center provides a guide "for navigating [the credit dispute] process with all three bureaus," also have the express or implied purpose of improving consumers' credit records, credit histories, or credit ratings.  Detecting and correcting score-lowering errors would immediately improve a consumers' credit record, credit history, or credit rating.  Respondent's Dispute Center also constitutes advice and assistance in improving a consumers' credit in providing, selling, and performing that service.

27.     Respondent's "Daily Credit Report Monitoring," which detects and minimizes the damage to consumers' credit scores, credit histories, and credit ratings, also has the express or implied purpose of improving consumers' credit, and otherwise constitutes advice or assistance in improving a consumers' credit.

28.     Finally, ScoreTracker is advertised to consumers as a tool to help them reach their credit goals.  Consumers' credit goals expressly or implied means improving one's credit score, credit rating, or credit history, and ScoreTracker constitutes Respondent's advice or assistance in achieving those goals.  Respondent's ScoreCast service has the express or implied purpose of improving consumers' credit ratings, credit histories, or credit scores as it shows how a consumers' credit can be improved by taking certain actions.  ScoreCast also constitutes Respondent's advice or assistance in improving consumers' credit.

29.     Therefore, Respondent uses the Internet to sell, provide, and perform services, in return for the $29.95 monthly charge to consumers, for the express or implied purpose of (i) improving consumers' credit scores, credit histories, and credit ratings and (2) provides advice or assistance in improving consumers' credit.  *See* 15 U.S.C. § 1679a(3).  Respondent is a "credit repair organization" under the CROA.  *See, e.g.*, *Hillis v. Equifax Consumer Servs., Inc.*, 237 F.R.D. 491, 509 (N.D. Ga. 2006) (Sellers offered a "service," rather than offering a product,

subjecting them to the CROA as a credit repair organization when they furnished buyers with credit report, credit score, analysis of factors considered in determining score, and a simulator showing how a buyers' actions could affect the score.).

30.     Despite One Tech's status as a credit repair organization, it attempts to disclaim its status as such in its Terms and Conditions.

**RELIEF SOUGHT**

**Uniform Declaratory Judgments Act,**
**Texas Civil Practice and Remedies Code Chapter 37,** *et seq.*

**I.    One Tech's status as a credit repair organization under the Terms and Conditions.**

31.     The foregoing paragraphs are incorporated by reference as if set forth herein verbatim.

32.     Claimant seeks equitable relief under the Uniform Declaratory Judgments Act ("**UDJA**") to first obtain a declaration that One Tech is a credit repair organization under the Terms and Conditions.

33.     Claimant is a person interested under a written contract or other writings constituting a contract, the Terms and Conditions, and his rights are affected by the Terms and Conditions. *See* TEX. CIV. PRAC. & REM. CODE § 37.004(a).

34.     Claimant is therefore entitled to a declaration of One Tech's status as a credit repair organization, whether or not further relief is or could be claimed. *Id.*; *see id.* at § 37.003(a).

35.     For the reasons stated above, the panel should declare that One Tech is a credit repair organization due to its Credit Repair Services and in accordance with the plain language of the CROA. *Supra* ¶¶ 17-30.

**II.**     **Because One Tech is a credit repair organization, the Terms and Conditions shall be treated as void, and may not be enforced by any court or person.**

36.     The foregoing paragraphs are incorporated by reference as if set forth herein verbatim.

37.     Claimant also seeks equitable relief under the UDJA to obtain a declaration that the Terms and Conditions are void and may not be enforced by any court or person.

38.     The Credit Repair Services provided by One Tech render it a credit repair organization under the CROA.  *Id.*

39.     The CROA imposes strict requirements on contracts between credit repair organizations, like One Tech, and consumers.  *See* 15 U.S.C. §§ 1679c(a), 1679e(a)-(b), and § 1679f(b).

40.     First, Credit repair organizations are required to provide consumers with a prescribed, written statement before any contract or agreement between the consumer and the credit repair organization is executed.  *Id.* at § 1679c(a).  The CROA requires the statement to be provided to the consumer as a document separate and apart from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer.  *Id.* at § 1679c(b).

41.     Despite One Tech's status as a credit repair organization and its obligations under the CROA, One Tech never provided such statement to Claimant prior to the execution of the Terms and Conditions.

42.     Second, the CROA requires credit repair organizations to provide the consumer with a right to cancel any contract with the credit repair organization, without penalty, at any time before midnight of the third business day which begins after the date on which the contract or agreement between the consumer and the credit repair organization is executed.  *Id.* at § 1679e(a).

The CROA further requires the contract to be accompanied by a notice of the consumer's right to cancel the contract and to contain the written statement identified in the statute.  *Id.* at § 1679e(b).

43.     Despite One Tech's status a credit repair organization and its obligations under the CROA, One Tech never provided Claimant the requisite notice of his right to cancel the Terms and Conditions set forth in the statute.

44.     Finally, the CROA prohibits a credit repair organization, like One Tech, from attempting to obtain a waiver of the protections afforded under the CROA, and any such attempt constitutes a violation of the CROA.  *Id.* at § 1679f(b).  Paragraph 27 of the Terms and Conditions seeks to disclaim its status as a credit repair organization and, consequently, Claimant's rights afforded under the CROA.

45.      The Terms and Conditions waive Claimant's protections provided by the CROA and does not comply with the applicable provisions of the CROA.  Therefore, both the waiver of Claimant's rights and the Terms and Conditions failure to comply with the CROA "shall be treated as void; and . . . . may not be enforced by any Federal or State court or any other person."  *Id.* at §§ 1679f(a), (c).

46.     The panel should therefore declare that the Terms and Conditions are void and unenforceable and any waiver of the protections afforded to Claimant by the CROA are void and unenforceable.

Dated: August 9, 2021                             Respectfully submitted,


                                                  */s/ Stuart L. Cochran*
                                                  Stuart L. Cochran
                                                  Texas Bar No. 24027936
                                                  Blake E. Mattingly
                                                  Texas Bar No. 24104229

STECKLER WAYNE COCHRAN CHERRY PLLC
12720 Hillcrest Rd., Ste. 1045
Dallas TX 75230
Tel: 972-387-4040
Email: stuart@swclaw.com
Email: blake@swclaw.com

David C. Nelson (ARDC 6225722)
NELSON & NELSON, ATTORNEYS AT LAW, P.C.
420 North High Street, P.O. Box Y
Belleville, IL 62222
Tel: 618-277-4000
Email: dnelson@nelsonlawpc.com

Matthew H. Armstrong (MoBar 42803)
ARMSTRONG LAW FIRM LLC
8816 Manchester Rd., No. 109
St. Louis MO 63144
Tel: 314-258-0212
Email: matt@mattarmstronglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2021, I served a copy of this Original Claim on Respondent.

*/s/ Stuart L. Cochran*
Stuart L. Cochran

# EXHIBIT 6

**Lisa Medeles**

---

| | |
|---|---|
| **From:** | ConsumerReview <ConsumerReview@adr.org> |
| **Sent:** | Tuesday, October 26, 2021 4:42 PM |
| **To:** | John Greco |
| **Cc:** | ConsumerReview |
| **Subject:** | RE: [EXTERNAL EMAIL] RE: Consumer Clause Registration Protocol. |
| **Attachments:** | One Technologies, LLC.pdf |

Mr. Greco,

We are in receipt of your signed waiver.  Attached please find a letter confirming your company's inclusion on the AAA's Consumer Clause Registry.

The AAA notes that we previously declined to administer cases involving your company. The AAA decision to proceed with administration of One Technologies, LLC cases would not be applicable to previously declined cases and applies to new filings from this date forward. We would ask that any consumer parties involving a One Technologies, LLC dispute that the AAA previously declined to administer be informed of the recent registration and the matter would have to be refiled with the appropriate documents and filing fees.

Sincerely,
AAA Consumer ADR Team

---

**From:** John Greco <jgreco@onetechnologies.net>
**Sent:** Tuesday, October 26, 2021 2:10 PM
**To:** ConsumerReview <ConsumerReview@adr.org>; Neil Currie <CurrieN@adr.org>
**Subject:** RE: [EXTERNAL EMAIL] RE: Consumer Clause Registration Protocol.

**\*\*\* External E-Mail – Use Caution \*\*\***

Dear Mr. Currie and Consumer ADR Team,

Attached please find your letter of October 20, 2021 signed and dated as requested, waiving the quoted provision of One Technologies LLC's arbitration clause and agreeing to have matters filed with the AAA pursuant to the clause administered under the Consumer Rules and Protocol.

Please advise as to when the AAA will accept administration of cases filed pursuant to the One Technologies LLC consumer arbitration clause.

Sincerely,

John

**John A. Greco Sr.**
VP Deputy General Counsel
Director of Compliance and Government Affairs

**One Technologies, LLC**

8144 Walnut Hill Lane, Suite 600
Dallas, Texas 75231
**Email** jgreco@onetechnologies.net
**Web** www.onetechnologies.net

---

**From:** ConsumerReview <ConsumerReview@adr.org>
**Sent:** Wednesday, October 20, 2021 3:20 PM
**To:** John Greco <jgreco@onetechnologies.net>
**Cc:** ConsumerReview <ConsumerReview@adr.org>
**Subject:** [EXTERNAL EMAIL] RE: Consumer Clause Registration Protocol.

**Warning:** This email is from an outside source and contains an attachment.
Please make sure that you are expecting this and that you trust the sender before opening the attachment.

Dear Mr. Greco,

Attached please find a letter noting that this consumer arbitration clause has a material or substantial deviation from the Consumer Rules and/or Protocol. You will need to sign the waiver contained in this letter or submit a revised consumer arbitration clause that is compliant with the Consumer Rules and/or Protocol before your business's consumer arbitration clause will be made part of the AAA's Consumer Clause Registry.

Very truly yours,
AAA Consumer ADR Team

**From:** do-no-reply@adr.org <do-no-reply@adr.org>
**Sent:** Friday, October 15, 2021 12:23 PM
**To:** ConsumerReview <ConsumerReview@adr.org>
**Subject:** Consumer Clause Registration Confirmation.


Thank you for submitting your consumer arbitration clause(s) for review by the AAA. An invoice acknowledging receipt of your payment of the non-refundable Consumer Clause Review and Registry fee will be sent to the email address of the individual identified as the recipient for communications related to the clause registry. We will review the materials you have submitted to determine if they are in material compliance with the Consumer Due Process Protocol(Consumer Protocol), and you can expect to hear from the AAA again within approximately + 30 days regarding that review. If the AAA determines that your arbitration clause is materially compliant with the Consumer Protocol, you will be advised that your clause and company name will be posted to the Registry. If the AAA determines that your arbitration clause is not materially compliant with the Consumer Protocol, the AAA will advise you of the issue that resulted in a determination not to administer arbitrations arising out of your clause.You will also be provided with information about your options to correct the identified deficiency.

If you have any additional questions regarding your submission or the Registry, please email the AAA at consumerreview@adr.org.

**Thank you,**

The AAA ConsumerTeam

**Company Information**
Business:One Technologies LLC

**Business Contact**
First Name: John
Last Name: Greco
Company: One Technologies LLC
Email Address: jgreco@onetechnologies.net
Address 1: 8144 Walnut Hill Lane
Address 2: Suite 600
City: Dallas
State: tx
Zip Code: 75231
Telephone: 214/8085570/

**Contact Information for Display on Consumer Clause Registry**
Company: One Technologies LLC
Arbitration Clause Information
The name/title of consumer arbitration clause: One Technologies Arbitration Clause.docx

Arbitration Agreement
Please find enclosed the attachment.

# EXHIBIT 8

**Lisa Medeles**

| | |
|---|---|
| **From:** | Jonathan R. Childers <JChilders@lynnllp.com> |
| **Sent:** | Friday, October 29, 2021 3:53 PM |
| **To:** | Stuart Cochran; David C. Nelson (dnelson@nelsonlawpc.com); Matt Armstrong; Blake Mattingly; Lisa Medeles; Renee Theis |
| **Cc:** | Alan Dabdoub; LeGrand, Andrew; Dan Polese; rjensen@gibsondunn.com |
| **Subject:** | One Tech/Forby:  Telephonic Conference - Procedural Item |

Stuart, Dave, and Matt:

We write to confer about a procedural issue in connection with the upcoming Scheduling Conference in the Forby matter, set for Tuesday, November 2 at 11 a.m. CST.

One Tech's arbitration clause is registered with AAA's Consumer Clause Registry.  AAA has requested us to inform Forby of the registration and that AAA will administer the arbitration upon her refiling.  Accordingly, now that AAA will administer the arbitration, and the Fifth Circuit has issued its mandate, please confirm whether Forby will agree to arbitrate her CROA claim pending in Civ. Act. No. 3:16-CV-856-L with AAA administering the arbitration.  Assuming so, One Technologies will agree to a Rule 41 stipulated dismissal of Forby's CROA claim for refiling in AAA arbitration.   Alternatively, One Technologies will agree to an agreed order compelling arbitration of the CROA claim.

If you could please let us know by Monday at 2pm CST, so we may inform the Court at the Scheduling Conference.   Thank you.

**JONATHAN R. CHILDERS**  |  Partner
**Lynn Pinker Hurst & Schwegmann**
Direct   214 981 3810
jchilders@lynnllp.com

2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
www.lynnllp.com

# EXHIBIT 9

**Lisa Medeles**

| | |
|---|---|
| **From:** | Consumer Case Filing Team <ConsumerFiling@adr.org> |
| **Sent:** | Tuesday, October 26, 2021 11:56 AM |
| **To:** | Jonathan R. Childers |
| **Cc:** | Alan Dabdoub; Dan Polese; Consumer Case Filing Team |
| **Subject:** | RE: One Technologies:   AAA Case Number 01-21-0016-5576   Claimant Vickie Forby Kimmel |
| **Attachments:** | docopenservlet.pdf |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Hello,

Thank you for your email and we apologize for the delay in our response. American Arbitration Association has added your contact to the case to receive correspondence. At this time this matter remains closed as One Technologies is not in good standing with the AAA.

The American Arbitration Association will comply with a court order compelling arbitration or the business/respondent can register their clause with the American Arbitration Association's Consumer Clause Registry. **Once the clause is approved they will be in good standing with the AAA once again, and we will administer future cases.**

Even with a court order or the business registering their clause with the Consumer Clause Registry, this matter would have to be refiled  by the claimant with the appropriate documents and filing fees.
If the business would like they may submit its current consumer arbitration clause for inclusion on the Registry at
https://www.adr.org/Consumer   at which time the business will also incur a $500 Registry fee. If you have Registry questions please contact consumerreview@adr.org.

At this time this matter remains closed.

Thank you,
Consumer Case Filing



**Consumer Case Filing Team**

1101 Laurel Oak Road
Suite 100, Voorhees, NJ 08043
E: ConsumerFiling@adr.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**From:** Jonathan R. Childers <JChilders@lynnllp.com>
**Sent:** Thursday, October 7, 2021 7:08 PM
**To:** Rod Toben <TobenR@adr.org>; Consumer Case Filing Team <ConsumerFiling@adr.org>
**Cc:** Alan Dabdoub <adabdoub@lynnllp.com>; Dan Polese <dpolese@lynnllp.com>
**Subject:** One Technologies: AAA Case Number 01-21-0016-5576 Claimant Vickie Forby Kimmel

**\*\*\* External E-Mail – Use Caution \*\*\***

Hello Rod and also the AAA Consumer Filing Team:

Our Client One Technologies was served with a Demand for Arbitration, AAA Case Number 01-21-0016-5576.  *See* attached.

One Technologies intends to comply with AAA's Consumer Rules and Protocol.  Once One Technologies successfully registers its clause on the Consumer Clause Registry and becomes active on the Consumer Clause Registry, are we correct that One Technologies can arbitrate with AAA the attached arbitration initiated by Forby?

If you could please let us know at your earliest convenience.  Thanks very much.    Sincerely, Jonathan

**JONATHAN R. CHILDERS**  |  Partner
**Lynn Pinker Hurst & Schwegmann**
Direct   214 981 3810
jchilders@lynnllp.com

2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
www.lynnllp.com

# EXHIBIT 10

DocuSign Envelope ID: B30C179B-869E-47EE-9D54-11E6934702E1



**AMERICAN ARBITRATION ASSOCIATION**®

Neil B. Currie
VICE PRESIDENT

725 S. Figueroa St., Ste. 400
Los Angeles, CA 90017
**T** 213 622 6358
**E** CurrieN@adr.org

adr.org

October 20, 2021

**Sent Via Email Only**

John Greco
One Technologies LLC
8144 Walnut Hill Lane, Suite 600
Dallas, TX 75231

**RESPONSE DATE:  November 03, 2021**

Re: One Technologies LLC

Dear Mr. Greco:

Thank you for registering the One Technologies LLC consumer arbitration clause through the AAA's Consumer Clause Registry. Please read the following important information about the AAA's administration of consumer arbitrations and the Consumer Clause Registry.

Beginning September 1, 2014, the American Arbitration Association ("AAA") will administer consumer disputes in accordance with the *Consumer Arbitration Rules (Consumer Rules)*. These documents may be found on our web site at www.adr.org/consumer.  In order to determine if an arbitration agreement substantially and materially complies with the due process standards of the *Consumer Due Process Protocol* (*Protocol*), **the AAA reviews the parties' arbitration clause only**, and not the entire contract. The AAA's review of the arbitration clause is only an administrative review to determine whether the clause complies with the AAA's minimum due process standards in consumer arbitrations.

Based upon the administrative review of the One Technologies LLC consumer arbitration clause, we note that the arbitration provision has a material or substantial deviation from the *Consumer Rules* and/or *Protocol*.  Specifically, the provision states:

> THE ARBITRATION . . . AND IN THE CASE OF A FACE-TO-FACE PROCEEDING WILL BE HELD IN DALLAS, TEXAS, OR OTHERWISE IN ANOTHER LOCATION WHICH IS REASONABLY CONVIENENT TO THE PARTIES UPON THEIR MUTUAL AGREEMENT. **(*Protocol* Principle 7. Reasonably Convenient Location)**

The AAA is requesting that One Technologies LLC waive the above provision(s) and agree to have all matters filed pursuant to this clause administered under the *Consumer Rules* and *Protocol* so that the AAA can administer consumer-related disputes filed with the AAA pursuant to the clause, and confirm the consumer arbitration clause will be posted on the Consumer Clause Registry. Please confirm your agreement to waive the above-quoted provision by signing and dating below and returning a copy of this letter. This signed document will also be posted on the Consumer Clause Registry.

1

DocuSign Envelope ID: B30C179B-869E-47EE-9D54-11E6934702E1

 AMERICAN ARBITRATION ASSOCIATION®

DocuSigned by:

*John A Greco*

08910A3E2F8442B

Business (or representative)        10/26/2021

                                    Date

For any future changes to this consumer arbitration clause, pursuant to R-12 of the *Consumer Rules*, One Technologies LLC should notify and provide the AAA a copy of the revised consumer arbitration clause at least 30 days before the planned effective date of the clause.

**The AAA's review is not an opinion on whether the arbitration agreement, the contract, or any part of the contract is or is not legally enforceable. In addition, the AAA's determination of a material or substantial deviation from the *Consumer Rules* and/or *Protocol* noted above does not limit a party that believes that there are additional conflicts with the *Protocol* and/or *Consumer Rules*, from bringing such issues before the arbitrator once one has been appointed. If such an issue is raised with the arbitrator, the AAA's prior review and determinations do not limit the ability of the arbitrator to determine the issue.**

Should you decline to execute this document, the AAA will decline administration of cases filed pursuant to the One Technologies LLC consumer arbitration clause.

Very truly yours,

*Neil B. Currie*

Neil B. Currie
Vice President

2