**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **VICKIE FORBY,** | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil No. 3:16-CV-00856-L |
| | ) | |
| **ONE TECHNOLOGIES, LP, ONE** | ) | |
| **TECHNOLOGIES MANAGEMENT LLC,** | ) | |
| **and ONE TECHNOLOGIES CAPITAL** | ) | |
| **LLP,** | ) | |
| | ) | |
| Defendants. | ) | |

---

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION,**
**AND POSITION ON DISCOVERY**

---

Brian E. Robison
 State Bar No. 00794547
 brobison@gibsondunn.com
Andrew P. LeGrand
 State Bar No. 24070132
 alegrand@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Telephone: (214) 698-3100
Facsimile:  (214) 571-2900

Jonathan R. Childers
 State Bar No. 24050411
 jchilders@lynnllp.com
Alan Dabdoub
 State Bar No. 24056836
 adabdoub@lynnllp.com
Daniel C. Polese
 State Bar No. 24102364
 dpolese@lynnllp.com
**LYNN PINKER HURST &**
 **SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile:  (214) 981-3839

**ATTORNEYS FOR DEFENDANTS**

## TABLE OF CONTENTS

I.     SUMMARY OF ARGUMENT ........................................................................... 1

II.    BACKGROUND ............................................................................................... 3

       A.    Forby Agreed to One Technologies' Terms and Conditions ...................................3

       B.    Forby's Lawsuit Against One Technologies ............................................................4

       C.    The Fifth Circuit's *Forby I* Decision ....................................................5

       D.    Forby's Amended Complaint and The Fifth Circuit's Forby II
             Decision .............................................................................................5

       E.    Forby's Premature Arbitration Demand .................................................5

       F.    The Parties' Post-Remand Status Conference ........................................6

III.   ARGUMENT & AUTHORITIES ...................................................................... 6

       A.    The FAA Applies to the Arbitration Agreement ....................................7

       B.    The Arbitration Agreement Is Valid and Unequivocally Covers this
             Dispute ................................................................................................8

             1.    Valid Agreement to Arbitrate Exists ........................................... 9

             2.    Forby's CROA Claim Falls Squarely Within the Scope of the
                   Arbitration Agreement ............................................................... 12

       C.    No Policy Prohibits Arbitration of Forby's CROA Claim ...................14

       D.    Arbitration Has Not "Been Had," and The AAA's Declination Letter
             Did Not Waive One Technologies' Right to Arbitrate .........................14

       E.    Forby's Arbitration Demand Was Premature Rendering It a Nullity ...................19

IV.    POSITION ON DISCOVERY .......................................................................... 21

V.     CONCLUSION ................................................................................................ 22

# TABLE OF AUTHORITIES

**Cases**

*Aldous v. Darwin Nat'l Assurance Co.*,
    889 F.3d 798 (5th Cir. 2018) .................................................................. 20

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
    513 U.S. 265 (1995).................................................................................. 7

*Am. Heritage Life Ins. Co. v. Lang*,
    321 F.3d 533 (5th Cir. 2003) ................................................................. 14

*Aptim Corp. v. McCall*,
    888 F.3d 129 (5th Cir. 2018) ................................................................. 17

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011).................................................................................. 6

*Bonsmara Nat. Beef Co. LLC v. Hart of Texas Cattle Feeders LLC*,
    603 S.W.3d 385 (Tex. 2020).................................................................. 16

*Carlile v. United States*,
    2008 WL 2757360 (N.D. Tex. July 15, 2008) ....................................... 8

*Carter v. Countrywide Credit Indus., Inc.*,
    362 F.3d 294 (5th Cir. 2004) ................................................................... 7

*Citizens Bank v. Alafabco, Inc.*,
    539 U.S. 52 (2003).................................................................................... 8

*Coffel v. Stryker Corp.*,
    284 F.3d 625 (5th Cir. 2002) ................................................................... 9

*Collin County v. Siemens Bus. Servs.*,
    560 F. Supp. 2d 525 (E.D. Tex. 2006)................................................... 20

*CompuCredit Corp. v. Greenwood*,
    565 U.S. 95 (2012).............................................................................. 5, 14

*Copeland v. Alsobrook*,
    3 S.W.3d 598 (Tex. App.—San Antonio 1999, pet. denied) ................. 9

*Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*,
    748 F.3d 249 (5th Cir. 2014) ................................................................... 9

*Crawford v. Beachbody, LLC*,
    2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ....................................... 10

*Cubria v. Uber Techs., Inc.*,
    2017 WL 1034731 (W.D. Tex. Mar. 16, 2017) ............................................................ 10

*Dean v. Heritage Healthcare of Ridgeway, LLC*,
    759 S.E.2d 727 (S.C. 2014) .................................................................... 15, 16, 17

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)......................................................................................... 7

*DeSantis v. Wackenhut Corp.*,
    793 S.W.2d 670 (Tex. 1990).............................................................................. 9

*Dominguez v. Gulf Coast Marine*,
    9-08-CV-200, 2010 WL 11531148 (E.D. Tex. June 24, 2010) ........................................ 20

*Fedmet Corp. v. M/V Buyalyk*,
    194 F.3d 674 (5th Cir. 1999) ............................................................................. 8

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995)......................................................................................... 9

*Forby v. One Techs., L.P.*,
    13 F.4th 460 (5th Cir. 2021) ..................................................................... passim

*Forby v. One Techs., L.P.*,
    909 F.3d 780 (5th Cir. 2018) .............................................................. 1, 5, 6, 21

*Forby v. One Techs., LP*,
    15-0757-DRH-PMF, 2016 WL 1321194  (S.D. Ill. Apr. 5, 2016) .................................. 12

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012)................................................................. 11

*Galey v. World Mktg. All.*,
    510 F.3d 529 (5th Cir. 2007) ........................................................................... 16

*Gay v. CreditInform*,
    511 F.3d 369 (3d Cir. 2007)............................................................................. 14

*Graves v. BP Am., Inc.*,
    568 F.3d 221 (5th Cir. 2009) ........................................................................... 12

*Gray Law LLP v. Transcon. Ins. Co.*,
    560 F.3d 361 (5th Cir. 2009) ........................................................................... 10

*Green Tree Fin. Corp. v. Randolph*,
    531 U.S. 79 (2000)......................................................................................... 14

*Griggs v. Provide Consumer Discount Co.*,
    459 U.S. 56 (1982) ................................................................................................ 20

*Hill v. Gateway 2000, Inc.*,
    105 F.3d 1147 (7th Cir. 1997) ............................................................................ 12

*In re Bank One, N.A.*,
    216 S.W.3d 825 (Tex. 2007) ............................................................................... 10

*In re Compl. of Hornbeck Offshore (1984) Corp.*,
    981 F.2d 752 (5th Cir. 1993) .............................................................................. 13

*Jaramillo v. TXU Energy*,
    EP-20-CV-00115-DCG, 2021 WL 1177888 (W.D. Tex. Mar. 29, 2021) ...................... 19

*Jose Evenor Taboada A. v. AmFirst Ins. Co.*,
    3:18CV883TSL-RHW, 2019 WL 3604613 (S.D. Miss. Aug. 6, 2019) .............. 15, 16, 17

*Klein v. Nabors Drilling USA L.P.*,
    710 F.3d 234 (5th Cir. 2013) ................................................................................ 8

*Lloyd v. Lawrence*,
    60 F.R.D. 116 (S.D. Tex. 1973) ..................................................................... 20, 21

*Major v. McCallister*,
    302 S.W.3d 227 (Mo. Ct. App. 2009) .................................................................. 11

*Mar–Len of La., Inc. v. Parsons–Gilbane*,
    773 F.2d 633 (5th Cir. 1985) .............................................................................. 13

*Masters v. Time Warner Cable, Inc.*,
    920 F. Supp. 2d 766 (W.D. Tex. 2012) ................................................................. 9

*Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*,
    460 U.S. 1 (1983) ............................................................................................... 17

*Neal v. Hardee's Food Sys., Inc.*,
    918 F.2d 34 (5th Cir. 1990) ................................................................................ 12

*Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*,
    139 F.3d 1061 (5th Cir. 1998) ............................................................................ 13

*Petrofac, Inc. v. DynMcDermott Petrol. Operations Co.*,
    687 F.3d 671 (5th Cir. 2012) ................................................................................ 9

*Picard v. Credit Solutions, Inc.*,
    564 F.3d 1249 (11th Cir. 2009) .......................................................................... 14

*Poly-Am., Inc. v. Beech St. Corp.*,
    CIV. 3:01-CV-1073-H, 2001 WL 1326450 (N.D. Tex. Oct. 12, 2001) ......................... 16

*Primerica Life Ins. Co. v. Brown*,
    304 F.3d 469 (5th Cir. 2002) ................................................................................... 7, 14

*Recursion Software, Inc. v. Interactive Intelligence, Inc.*,
    425 F. Supp. 2d 7563 (N.D. Tex. 2006) ...................................................................... 10

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63 (2010).......................................................................................................... 9

*Resolution Tr. Corp. v. Northpark Joint Venture*,
    958 F.2d 1313 (5th Cir. 1992) ....................................................................................... 9

*Sherer v. Green Tree Servicing LLC*,
    548 F.3d 379 (5th Cir. 2008) ........................................................................................ 8

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984)........................................................................................................... 7

*Starke v. Gilt Groupe, Inc.*,
    2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014).............................................................. 10

*Subway Equip. Leasing Corp. v. Forte*,
    169 F.3d 341 (5th Cir. 2004) ....................................................................................... 18

*Swift v. Zynga Game Network, Inc.*,
    805 F. Supp. 2d 904 (N.D. Cal. 2011) ........................................................................ 11

*U.S. ex rel. Cassaday v. KBR, Inc.*,
    590 F. Supp. 2d 850 (S.D. Tex. 2008) ........................................................................ 14

*United Offshore Co. v. S. Deepwater Pipeline Co.*,
    899 F.2d 405 (5th Cir. 1990) ....................................................................................... 13

*United States v. Ceja*,
    387 Fed.App'x. 441 (5th Cir. 2010) ............................................................................ 20

*United States v. Cook*,
    592 F.2d 877 (5th Cir. 1979) ....................................................................................... 20

*Wash. Mut. Fin. Grp., LLC v. Bailey*,
    364 F.3d 260 (5th Cir. 2004) ........................................................................................ 9

*Williford Energy Co. v. Submergible Cable Servs., Inc.*,
    895 S.W.2d 379 (Tex. App. 1994)................................................................................ 10

**Statutes**

15 U.S.C. § 1679a ............................................................................................ 13

9 U.S.C. § 2 ...................................................................................................... 6

9 U.S.C. § 3 ................................................................................................. 7, 15

9 U.S.C. § 4 ...................................................................................................... 7

9 U.S.C. § 5 .................................................................................................... 17

Credit Repair Organizations Act,
    15 U.S.C. § 1679 ....................................................................................... 1

**Other Authorities**

Restatement (Second) of Contracts § 50(1) ................................................. 10

**Rules**

Fed. R. App. P. 41 ........................................................................................ 20

## I.    SUMMARY OF ARGUMENT

Plaintiff Vicky Forby's CROA claim should proceed to arbitration in accordance with the Terms and Conditions of the Agreement to arbitrate, and her ICFA claim should proceed in this Court, consistent with the rulings of the Fifth Circuit and this Court.

Forby agreed to arbitrate all "claims based upon any federal, state or local statute," against Defendants One Technologies, LP, One Technologies Management LLC, and One Technologies Capital LLP (collectively, "One Technologies" or "Defendants"). In violation of that agreement, Forby sued One Technologies in Illinois state court under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"). One Technologies removed the case to federal court, where it was then transferred to this Court.

After One Technologies was deemed to have waived its right to arbitrate Forby's ICFA claim, *see Forby v. One Techs., L.P.*, 909 F.3d 780, 786 (5th Cir. 2018) ("*Forby I*"), Forby amended her complaint to add a claim under the Credit Repair Organizations Act, 15 U.S.C. § 1679 *et seq*. ("CROA"). *See* Doc. 93. One Technologies asserted its right to arbitrate Forby's CROA claim. *See* Doc. 97-98. The Fifth Circuit held One Technologies' prior waiver with respect to ICFA did not extend to the CROA claim. *See Forby v. One Techs., L.P.*, 13 F.4th 460, 466-67 (5th Cir. 2021) ("*Forby II*").

Before the Fifth Circuit issued its mandate *and* without first dismissing or seeking a stay of her CROA claim that exists in this Court, Forby prematurely filed an arbitration demand with the American Arbitration Association ("AAA") on September 17, 2021, seeking a declaratory judgment that One Technologies is a credit repair organization. *See* Defs' App. 29-41. The AAA, however, declined to administer the arbitration until One Technologies registered its arbitration agreement with AAA. *See id.* 43-44. One Technologies immediately did so, and on October 26,

2021, the AAA notified One Technologies that it would administer arbitration including of Forby's CROA claim. *See id*. 46-47.

On November 2, 2021, the Court held a Telephonic Conference with the parties. *See* Doc. 134. During that conference, One Technologies made clear that, in accordance with the Fifth Circuit's rulings, it would seek to compel Forby's CROA claim to arbitration but proceed in this Court on Forby's individual ICFA claim.[1] Forby contended that arbitration on her CROA claim was improper despite the Fifth Circuit's ruling, and that her ICFA and CROA claims should proceed in this Court.[2]

This Court should compel the CROA claim to arbitration, and Forby's assertion lacks merit. First, arbitration of the CROA claim has not "been had." Consistent with the "majority" of courts – including a district court within the Fifth Circuit – the Arbitration Agreement does not require the arbitration to be "administered by the AAA"; the arbitration only need be held "pursuant to the Rules of [AAA]." Forby misconstrues the effect of the AAA's initial denial to administer arbitration. The AAA's determination that it "must decline to administer" Forby's demand to arbitrate is of no consequence because the arbitration can proceed in a different forum using the "Rules of [AAA]." And moreover, the AAA will now administer arbitrations for One Technologies. This means the parties can proceed (i) with the arbitration "administered" by the AAA or (ii) through a different forum that will arbitrate "pursuant to the Rules of [AAA]." Second, Forby prematurely sought arbitration before the Fifth Circuit's mandate and overlooking that she

---

[1] Forby originally asserted her ICFA and CROA claims as putative class actions. This Court struck Forby's class allegations because all absent putative class members remain bound by their agreement to individually arbitrate "all claims, disputes, or controversies" with One Technologies. *See* Doc. 129.

[2] Forby further contended that this Court's prior ruling striking the class allegations is also now improper and that both claims could proceed as putative class actions. The Court instructed Forby to brief that issue by November 12, 2021.

already asserted a CROA claim in this Court, rendering her arbitration demand a nullity.

Accordingly, pursuant to Sections 4 and 5 of the Federal Arbitration Act, this Court should compel Forby to submit her CROA claim to arbitration. Further, with respect to discovery, in accordance with the Fifth Circuit's rulings, One Technologies is prepared to proceed with Forby's ICFA claim in this Court. One Technologies' position on discovery is: (i) Forby's ICFA claim should be set for bench trial in September 2022 or after; (ii) Forby's CROA claim should be compelled to arbitration where the arbitrator will decide the scope of discovery; and (iii) discovery on the ICFA claim can commence with respect to items reasonably related to Forby's ICFA claim and One Technologies' defenses to the ICFA claim.

## II.     BACKGROUND

### A.     Forby Agreed to One Technologies' Terms and Conditions

One Technologies offers consumers online access to their credit reports and scores and provides credit monitoring, identity theft, and other credit-information programs. Defs' App. 6 ¶ 3. One Technologies brands its credit-monitoring programs as ScoreSense and offers them through several websites. *Id*.

Forby visited One Technologies' ScoreSense.com website on July 7, 2014. Doc. 130 ¶ 3. She completed the registration process and created an account online by clicking through, and providing personal and payment information on a series of five enrollment webpages (the "Enrollment Path"). *Id*. ¶¶ 24–31; Defs' App. 7, 11-15. To complete her purchase, Forby had to agree to the written Terms and Conditions that appear on One Technologies' website and were made available to Forby at every step of the Enrollment Path. *Id*.

Forby's purchase of One Technologies' credit-monitoring program is governed by the "Terms and Conditions" that appear and are readily accessible on all of One Technologies' customer-facing websites. Defs' App. 3, 9, 17-24.

Section 1 states that the Terms and Conditions constitute "a binding legal agreement between you and us and govern . . . your purchase and use of the Services."[3] Defs' App. 17 ¶ 1. Section 23 states:

> You understand and agree that all claims, disputes or controversies between you and us or our providers (including our respective parent, affiliated, subsidiary or related entities), including but not limited to tort and contract claims, claims based upon any federal, state or local statute, law, order, ordinance or regulation, and the issue of arbitrability, shall be resolved by final and binding arbitration that will be held in Dallas, Texas, pursuant to the rules of the American Arbitration Association. Any controversy concerning whether a dispute is arbitrable shall be determined by the arbitrator and not by any court. (the "Arbitration Agreement").

*Id.* at 22 ¶ 23. The Arbitration Agreement also states that the FAA governs its "interpretation, application, enforcement, and proceedings." *Id*. And it makes clear that the parties waive their right to "join or consolidate claims" and any right they might have to a jury trial. *Id*. Furthermore, the "Terms and Conditions and all issues collateral thereto are governed by, and will be construed in accordance with, the laws of the State of Texas." *Id.* ¶ 22.

Also important, the Arbitration Agreement states that the arbitration will be held "pursuant to the rules of the American Arbitration Association." *Id.* ¶ 23. The Arbitration Provision does *not* require that the American Arbitration Association ("AAA") administer the arbitration. *Cf. id*.

**B.     Forby's Lawsuit Against One Technologies**

Forby's Original Complaint, filed in Illinois state court, asserted two claims under Illinois law on behalf a putative class of Illinois consumers who allegedly enrolled in One Technologies' credit-monitoring programs. Forby alleged that One Technologies' negative-option marketing violated the ICFA and unjustly enriched One Technologies because One Technologies' website

---

[3] The Terms and Conditions use "the terms 'you' and 'your' to include any person who accesses the Sites, obtains Materials (defined below), or purchases or acquires any product or service offered on the Sites ('product(s) and 'service(s)' collectively referred to as the 'Services') for any amount of time." Defs' App. 17 ¶ 1.

allegedly did not "clearly and conspicuously" disclose the terms of its membership program.

## C.   The Fifth Circuit's *Forby I* Decision

After the case was transferred to this Court, One Technologies moved to dismiss Forby's Original Complaint, arguing that its website was not deceptive as a matter of law. This Court granted One Technologies' motion, in part, with only Forby's ICFA claim surviving. *See* Doc. 50. One Technologies then moved to compel arbitration of that claim. This Court granted One Technologies' motion, but the Fifth Circuit reversed—holding that One Technologies waived its right to arbitrate Forby's ICFA claim by pursuing a motion to dismiss that "went directly to the merits of Forby's ICFA claim." *Forby I*, 909 F.3d at 785-86.

## D.   Forby's Amended Complaint and The Fifth Circuit's Forby II Decision

After remand, Forby twice obtained leave to amend her Complaint. *See* Doc. 91, 94. Forby's amended Complaint added a new cause of action under the CROA, *see* Doc. 96 ¶¶ 63-76, which "regulates the practices of credit repair organizations." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012). One Technologies moved to compel the CROA claim to arbitration, asserting the arbitration waiver as to the ICFA claim did not apply to Forby's CROA claim, such that the CROA claim should be arbitrated. *See* Doc. 97.

The Fifth Circuit agreed, holding One Technologies "did not waive the right to arbitrate the [CROA] claims raised in the second amended complaint because those claims were not in the case when it waived by litigation the right to arbitrate the [ICFA] claim." *Forby II*, 13 F.4th at 466-677. On October 6, 2021, the Fifth Circuit issued its mandate returning the case to this Court. *See* Doc. 133.

## E.   Forby's Premature Arbitration Demand

Between the Fifth Circuit's September 14, 2021 opinion and its October 6, 2021 mandate, Forby filed an arbitration demand with the AAA on her CROA claim, seeking a declaration that

One Technologies is a credit repair organization. *See* Defs' App. 29-41.  On October 18, 2021, the AAA advised One Technologies that it "decline[d] to administer" the arbitration until One Technologies registered its arbitration clause with the AAA. *See id.* 43-44. One Technologies immediately registered its clause with the AAA, and on October 26, 2021, the AAA advised One Technologies that it would administer arbitrations. *See id.* 46-47.

**F.     The Parties' Post-Remand Status Conference**

On November 2, 2021, the parties appeared before this Court for a Telephone Conference to discuss Forby's claims after the Fifth Circuit's ruling and mandate. *See* Doc. 134. One Technologies advised the Court that, pursuant to the holdings in *Forby I* and *Forby II* and this Court's ruling striking Forby's class allegations, One Technologies would seek to compel Forby's CROA claim to arbitration while litigating the ICFA claim against Forby individually in this Court. Forby indicated she opposed arbitrating the CROA claim, despite the Fifth Circuit's ruling, contending that the AAA's declination letter precludes arbitration of the CROA claim. Forby is incorrect. As discussed below, the Fifth Circuit's mandate vested this Court with jurisdiction to now consider and adjudicate One Technologies' Motion to Compel Arbitration of Forby's CROA claim that currently pends in this Court, and the "majority" position of courts supports this Court compelling Forby's CROA claim to arbitration.

### III.     ARGUMENT & AUTHORITIES

The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It reflects a liberal federal policy favoring arbitration and requires arbitration agreements to be rigorously enforced according to their terms. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted). The FAA "expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in

favor of arbitration." *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002) (*citing Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4) (emphasis in original). "There is a strong presumption in favor of arbitration and the party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

This Court should compel arbitration of Forby's CROA claim because (1) the FAA applies to the Arbitration Agreement; and (2) the Arbitration Agreement reflects the parties' intent to submit any and all disputes to arbitration, and "gateway issues"—including who should decide arbitrability—have been delegated to the arbitrator.

## A.     The FAA Applies to the Arbitration Agreement

The Arbitration Agreement is governed by the FAA. First, the Arbitration Agreement states that "its interpretation, application, enforcement, and proceedings hereunder shall be governed by the Federal Arbitration Act."  Defs' App. 22 ¶ 23. Thus, the parties clearly intended the FAA to apply.

Second, the FAA applies because Forby's purchase and use of One Technologies' credit-monitoring program involve interstate commerce.[4] *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 274– 77 (1995) (interpreting the FAA's "involving commerce" provision as broadly as the words "affecting commerce" and confirming that the FAA should be applied

---

[4] Furthermore, One Technologies is a Dallas-based company, *see* Doc. 130 ¶ 3, and Forby is a resident of Illinois (*id.* ¶ 3); therefore, interstate commerce is necessarily involved.

coincident with the full reach of Congress's powers under the Commerce Clause). Where, as here, the underlying transactions involve the use of the internet to purchase credit reports and scores and other credit-monitoring programs, the "involving commerce" requirement is satisfied. *See United States v. Faris*, 583 F.3d 756, 759 (11th Cir. 2009) (per curiam) ("The internet is an instrumentality of interstate commerce") (internal quotation marks omitted); *Carlile v. United States*, 2008 WL 2757360, at *3 (N.D. Tex. July 15, 2008) ("The internet is a channel or instrumentality of interstate commerce"); *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56–58 (2003) (finding requisite commerce for FAA coverage even when individual transaction did not have "any specific effect upon interstate commerce" because the defendant engaged in business of the type at issue in multiple states). To be sure, the Arbitration Agreement itself states that the "contract is made pursuant to a transaction in interstate commerce." Defs' App. 22 ¶ 23.

## B.    The Arbitration Agreement Is Valid and Unequivocally Covers this Dispute

To determine whether parties have agreed to arbitrate a dispute, courts evaluate two "gateway" issues: (1) whether there exists a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013) (citing *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008)). "[A]ny '[d]oubts as to the availability of arbitration must be resolved in favor of arbitration.'" *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 676 (5th Cir. 1999) (second alteration in original).

Here, Forby's CROA claim should be arbitrated because both gateway issues are easily satisfied.[5]

---

[5] When there is "clear and unmistakable" evidence demonstrating the parties' intent to have the arbitrator decide issues of arbitrability, such gateway issues should be referred to the arbitrator. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010); *Masters v. Time Warner Cable, Inc.*, 920 F. Supp. 2d 766, 770 (W.D. Tex. 2012). Here, the

### 1.      Valid Agreement to Arbitrate Exists

With respect to the first element—whether a valid agreement to arbitrate exists—federal courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004). Here, the Arbitration Agreement's choice of law provision states: "Terms and Conditions and all issues collateral thereto are governed by, and will be construed in accordance with, the laws of the State of Texas."  Defs' App. 22 ¶ 22. "Under the Texas rules, in those contract cases in which the parties have agreed to an enforceable choice of law clause, the law of the chosen state must be applied." *Resolution Tr. Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1318 (5th Cir. 1992) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 678 (Tex. 1990)). Accordingly, Texas law governs whether the parties entered into an enforceable agreement to arbitrate.

Under Texas law, a contract requires: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Coffel v. Stryker Corp.*, 284 F.3d 625, 640 n.17 (5th Cir. 2002) (quoting *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied)).

When determining mutual assent to and acceptance of a contract, courts use an objective standard while looking to "what the parties said and did," not a party's subjective belief of what

---

Arbitration Agreement requires Forby and One Technologies to arbitrate the issue of arbitrability. First, the Arbitration Agreement states that "any controversy concerning whether a dispute is arbitrable shall be determined *by the arbitrator* and not by any court." Defs' App. 22 ¶ 23 (emphasis added). Second, the Arbitration Agreement provides the arbitration will be "pursuant to the rules of [AAA]." *See id.* The Fifth Circuit has clarified that "the express adoption of [the AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Petrofac, Inc. v. DynMcDermott Petrol. Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (citing cases); *see also Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262–63 (5th Cir. 2014).

occurred. *Gray Law LLP v. Transcon. Ins. Co.*, 560 F.3d 361, 366 (5th Cir. 2009). Acceptance

occurs—and a contract is created—when the offeree assents in the manner required by the offer.

*See Williford Energy Co. v. Submergible Cable Servs., Inc.*, 895 S.W.2d 379, 384 (Tex. App.

1994); Restatement (Second) of Contracts § 50(1). It is "presume[d] that a party who signs a

contract knows its contents." *In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex. 2007) (finding

parties reached an agreement to arbitrate disputes).

      Under Texas law, customers are placed on notice of the terms to which they are assenting

when they are provided an opportunity to review and confirm their acceptance of those terms.

Indeed, courts routinely enforce online agreements where users click a button indicating they

consent to hyperlinked terms of service. *See, e.g.*, *Recursion Software, Inc. v. Interactive*

*Intelligence, Inc.*, 425 F. Supp. 2d 756, 781–83 (N.D. Tex. 2006) (finding a valid license agreement

where user was required to click "Yes" to the terms of a license agreement prior to software

installation); *Cubria v. Uber Techs., Inc.*, 2017 WL 1034731, at *5 (W.D. Tex. Mar. 16, 2017)

(finding a valid agreement where user clicked "Done" after entering credit card information and

passing over "Terms of Service & Privacy Policy" hyperlinked button); *Crawford v. Beachbody,*

*LLC*, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (online customer who placed order was

bound by contract terms when website stated that "[b]y clicking Place Order below, you are

agreeing that you have read and understand the Beachbody Purchase Terms and Conditions,"

which were hyperlinked on the same webpage); *Starke v. Gilt Groupe, Inc.*, 2014 WL 1652225,

*3 (S.D.N.Y. Apr. 24, 2014) (enforcing arbitration provision in hyperlinked Terms of Use and, in

so doing, finding plaintiff's "decision to click the 'Shop Now' button represented his assent to [the

Terms]"); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837–41 (S.D.N.Y. 2012) (Facebook

account holder was bound by contract when website stated that "[b]y clicking Sign Up, you are

indicating that you have read and agree to the Terms of Service," which was hyperlinked below the "Sign Up" button); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 908 (N.D. Cal. 2011) (user bound by arbitration provision because she was told that, "[b]y using YoVille, you also agree to the YoVille [hyperlink] Terms of Service" and the user proceeded).

Courts also enforce online agreements when a hyperlink to the "Terms and Conditions" appears on multiple successive webpages of a website. *See, e.g.*, *Major v. McCallister*, 302 S.W.3d 227, 230–31 (Mo. Ct. App. 2009) (forum selection clause enforceable where hyperlink to "terms and conditions" was presented on multiple successive webpages, and the final step in the website's signup process was to click a button next to which was the phrase: "By submitting you agree to the Terms of Use").

As discussed above, One Technologies requires a consumer to manifest assent to the Terms and Conditions and presents a hyperlink to those Terms and Conditions on every page in the Enrollment Path (and in immediate proximity to where consumers must click to continue to the next webpage). Forby had to click through each of five Enrollment Path pages in order to purchase ScoreSense. That means she saw, or should have seen, the Terms and Conditions on no fewer than five occasions. Moreover, after repeated and conspicuous disclosures of the Terms and Conditions and entering her personal information, Forby clicked the "Continue" button on the "Social Security Form" Webpage. Immediately above that "Continue" button appeared a clear statement: "By clicking on the 'Continue' button below, you agree to . . . the Terms and Conditions," which were hyperlinked and accessible by a simple click of a button. Defs' App. 2, 7-9, 11-15.

Forby cannot dispute that she agreed to the Terms and Conditions. Whether Forby chose to read those specific terms is irrelevant. *See, e.g.*, *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148 (7th Cir. 1997) ("A contract need not be read to be effective; people who accept take the risk that

the unread terms may in retrospect prove unwelcome."). One Technologies made an offer, Forby accepted, and consideration was exchanged. The parties have a valid and binding agreement.  Both this Court and the District Court for the Southern District of Illinois recognized that the Terms and Conditions are valid and binding.  *See* Doc. 30 at 17-20;[6] Doc. 129 at 16 (noting "the Illinois Court's determination that the Terms and Conditions are a valid and binding contract[.]"). Indeed, immediately after the *Forby II* opinion, Forby herself sought to arbitrate her CROA claim, expressly acknowledging the enforceability of the Arbitration Agreement. *See* Defs' App. 29-41.

## 2.     Forby's CROA Claim Falls Squarely Within the Scope of the Arbitration Agreement

With respect to the second element—whether a dispute falls within the scope of the arbitration agreement—federal courts apply federal law. *See, e.g.*, *Graves v. BP Am., Inc.*, 568 F.3d 221, 222–23 (5th Cir. 2009). Under federal law, courts "resolve doubts concerning the scope of coverage of an arbitration clause in a contract in favor of arbitration." *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990). Thus, the party seeking to compel arbitration need only show that the arbitration clause can plausibly be read to cover the dispute at issue. *See id*. Here, the Arbitration Agreement unquestionably encompasses this dispute. The Arbitration Agreement specifically covers "claims based upon any . . . federal, state or local statute" and generally covers "all claims, disputes or controversies" between the parties.  Defs' App. 22 ¶ 23.

Because the arbitration provision contains language encompassing "all disputes" between the parties, it is "of the broad type" of arbitration agreements. *See In re Compl. of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 755 (5th Cir. 1993) ("We have held that arbitration clauses containing the 'any dispute' language, such as the one presently before us, are of the broad type.").

---

[6] *See also Forby v. One Techs., LP*, 15-0757-DRH-PMF, 2016 WL 1321194, at *1 (S.D. Ill. Apr. 5, 2016) (denying reconsideration of order to transfer based on validity of Terms and Conditions containing forum selection clause).

Broad arbitration agreements "are not limited to claims that literally arise under the contract, but rather embrace all disputes having a significant relationship to the contract regardless of the label attached to the dispute." *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998); *see also United Offshore Co. v. S. Deepwater Pipeline Co.*, 899 F.2d 405, 410 (5th Cir. 1990) ("[W]hen parties choose such broad language, only the 'absence of any express provision excluding a particular grievance from arbitration' or 'the most forceful evidence of a purpose to exclude the claim from arbitration' would render the dispute non-arbitrable." (quoting *Mar–Len of La., Inc. v. Parsons–Gilbane*, 773 F.2d 633, 636 (5th Cir. 1985))).

Here, Forby's CROA claim alleges that:

- One Technologies is a Credit Repair Organization within the meaning of 15 U.S.C. § 1679a;

- One Technologies violated CROA by failing to adequately disclose that consumers would incur a $29.95 recurring monthly fee for their subscriptions, as well as charging or receiving money before services were fully rendered; and

- One Technologies failed to provide required notice, failed to provide right of cancellation, and attempted to obtain a waiver of statutory protections.

Third Am. Compl., Doc. 130 ¶¶ 37, 55-60.[7]

This dispute falls squarely within the scope of the Arbitration Agreement, which covers "all claims, disputes, or controversies" and all "claims based upon any . . . federal, state or local statute."  Defs' App. 22 ¶ 23.

Courts routinely construe arbitration clauses with similar language to encompass CROA claims—and they just as routinely compel arbitration where the alleged CROA violation is intertwined with the underlying contract. *See, e.g., CompuCredit Corp. v. Greenwood*, 565 U.S.

---

[7] One Technologies vigorously denies Forby's allegations.

95, 112 (2012) (reversing denial of motion to compel arbitration of CROA claim); *Gay v. CreditInform*, 511 F.3d 369, 383 (3d Cir. 2007) (finding CROA claims arbitrable); *Picard v. Credit Solutions, Inc*., 564 F.3d 1249 (11th Cir. 2009) (same). Finally, the Supreme Court has made clear that CROA claims are subject to arbitration agreements. *CompuCredit*, 565 U.S. at 112.

In short, the Arbitration Agreement undisputedly captures Forby's CROA claim.

## C.      No Policy Prohibits Arbitration of Forby's CROA Claim

"Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable." *Primerica Life*, 304 F.3d at 470. Forby, as the party resisting arbitration, bears the burden of showing the dispute is not arbitrable. *See U.S. ex rel. Cassaday v. KBR, Inc.*, 590 F. Supp. 2d 850, 853 (S.D. Tex. 2008) ("[The party resisting arbitration] bears the burden of showing that the dispute is not arbitrable." (citing *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 539 (5th Cir. 2003)). Forby cannot make this showing because there is no such policy concern here. *See Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89–90 (2000) (noting that the Supreme Court has "rejected generalized attacks on arbitration that rest on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants") (quotation omitted). Furthermore, as described above, numerous courts have properly compelled arbitration of CROA claims and the U.S. Supreme Court found no basis for exempting CROA from arbitration. *See CompuCredit*, 565 U.S. at 112.

## D.      Arbitration Has Not "Been Had," and The AAA's Declination Letter Did Not Waive One Technologies' Right to Arbitrate

The AAA's declining "to administer" the arbitration does not preclude arbitration of Forby's CROA claim. *First*, the AAA's declination letter does *not* mean the "arbitration has been had." *See* 9 U.S.C. § 3; Defs' App. 43-44. This is because the Arbitration Agreement does not require the arbitration to be "administered by the AAA"; the arbitration only need be held

"pursuant to the Rules of [AAA]." Defs' App. 22 ¶ 23.  The AAA declination letter speaks solely to AAA's decision that it "must decline to administer" Forby's demand to arbitrate. *Id.* at 43-44. But the Arbitration Agreement does not require the AAA to "administer" the arbitration. Rather, the Arbitration Agreement states only that disputes shall be resolved by "final and binding arbitration . . ., pursuant to the rules of the American Arbitration Association." *Id.* at 22 ¶ 23. Forby's attempt to argue otherwise ignores the distinction between the AAA "administering" an arbitration versus arbitration being conducted "pursuant to the rules of the" AAA.

The majority of courts that have considered this distinction have found it significant – including a district court within the Fifth Circuit.[8] *See Jose Evenor Taboada A. v. AmFirst Ins. Co.*, 3:18CV883TSL-RHW, 2019 WL 3604613, at *5 (S.D. Miss. Aug. 6, 2019) (citing *Dean v. Heritage Healthcare of Ridgeway, LLC*, 759 S.E.2d 727, 733 (S.C. 2014) (collecting cases)). In *AmFirst Ins. Co*., the court noted that a "majority of courts recognize a distinction between agreements requiring a proceeding 'administered by' a particular arbitral forum and those providing for a proceeding conducted 'in accordance with' the named forum's rules." *Id*. It explained that in the former – meaning agreements requiring proceedings to be "administered by" a named forum – such language is viewed as a statement of the parties' intent to arbitrate exclusively in that forum and therefore as essential to the agreement. *Id*. But in the latter – meaning agreements requiring proceedings be conducted "in accordance with" a named forum's rule – such language is viewed "as an *ancillary consideration* to the parties' *primary intent of arbitrating*, in

---

[8] The AAA Consumer Rules note this distinction as well. AAA Consumer Rule R-1 provides, "When parties have provided for the AAA's rules **_or_** AAA administration as part of their consumer agreement, they shall be deemed to have agreed that the application of the AAA's rules and AAA administration of the consumer arbitration shall be an essential term of their consumer agreement." (emphasis added). And this rule merely "authorizes" the AAA to administer the arbitration and does not require administration exclusively *by the AAA*." *See AmFirst Ins. Co.*, 3:18CV883TSL-RHW, 2019 WL 3604613, at *5 (emphasis in original).

front of *any arbitrator*, while *using* a set of pre-specified rules[.]" *Id.* (emphasis added).[9]

Thus, whereas here, the Arbitration Agreement does not require arbitration to be "administered by" the AAA (meaning it must be conducted by and through the AAA), but instead, only that the arbitration will be pursuant to and therefore "in accordance with" its rules—the AAA's declination to administer an arbitration is of no consequence. *See id*; *see also Poly-Am., Inc. v. Beech St. Corp.,* CIV. 3:01-CV-1073-H, 2001 WL 1326450, at *2 (N.D. Tex. Oct. 12, 2001) (discussing distinction between AAA rules and AAA administration); *see also Dean*, 759 S.E.2d at 734 ("[T]here is no reason any potential arbitration proceeding between the parties cannot 'follow the rules' of the AAA in a different arbitral forum."). Accordingly, here, One Technologies and Forby may proceed to arbitrate through a different forum using the AAA's rules. *See id*.

But the parties *can also* arbitrate with the AAA administering the arbitration. The AAA has withdrawn its initial denial and stands ready, willing, and able to administer arbitrations for One Technologies including the parties' arbitration. *See* Defs' App. 46-47 (explaining "the AAA is prepared to administer consumer-related disputed filed pursuant to this clause."). However, even if the AAA remained unwilling to administer the arbitration, this would make no difference. In such cases where "if for any other reason there shall be a lapse in the naming of an arbitrator . . . or in filling a vacancy," Section 5 of the FAA vests courts with the power to appoint an arbitrator.

---

[9] Applying Mississippi law, the Fifth Circuit in 2007 held that "*absent state law to the contrary*," a clause adopting a forum's rules for arbitration constitutes a forum-selection clause. *Galey v. World Mktg. All.*, 510 F.3d 529, 532 (5th Cir. 2007) (emphasis added). Here, Texas law governs the Terms and Conditions. Defs' App. 22 ¶ 22. And significantly, under Texas law, the Texas Supreme Court requires more to show that an arbitral forum is an essential term of an arbitration agreement as opposed to an ancillary one. *See Bonsmara Nat. Beef Co. LLC v. Hart of Texas Cattle Feeders LLC*, 603 S.W.3d 385, 398, 399-400 (Tex. 2020) (clause providing for arbitration "in accordance with the rules then applicable under the arbitration program of the [TCFA]" "f[e]ll far short of the type of contract language that courts have held makes the forum designated for arbitration an essential term[.]"). Moreover, the Fifth Circuit in *Galey* explained that a provision in an arbitration agreement is severable if the intent of the parties demonstrates that the essence of the bargain was to arbitrate and the provision calling for a specific set of rules is a minor consideration ancillary to the arbitration agreement. *See Galey*, 510 F.3d at 533; *see also AmFirst Ins. Co.*, 3:18CV883TSL-RHW, 2019 WL 3604613 at *5 (noting that AAA rules "do[] not require administration exclusively by the AAA").

*See* 9 U.S.C § 5.

In the unlikely event it is needed, pursuant to 9 U.S.C. § 5, One Technologies requests the Court to designate and appoint an arbitrator to conduct arbitration of Forby's CROA claim in accordance with the Terms and Conditions of the Agreement to arbitrate, meaning for the arbitration to be held in Dallas, Texas, pursuant to the rules of the American Arbitration Association. *See AmFirst Ins. Co.*, 3:18-CV-883TSL-RHW, 2019 WL 3604613, at *5 (explaining "if the forum itself is unavailable, courts nonetheless uphold the arbitration agreement and compel arbitration in an alternate forum, so long as the alternate forum follows the agreed-upon rules.").[10] This is especially true because One Technologies' Terms and Conditions contain a severance clause further underscoring the parties' primary intent to arbitrate regardless of forum. Defs' App. 23 ¶ 28; *Dean*, 408 S.E.2d at 735 ("[T]he severance provision indicates that the intention was not to make the [AAA] integral, but rather only to have a dispute resolution process through arbitration.").

*Second*, "[g]iven the strong federal policy in favor of arbitration, the party seeking to prove waiver must overcome the heavy presumption against such a finding." *Aptim Corp. v. McCall*, 888 F.3d 129, 140–41 (5th Cir. 2018); *see also Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability"). To establish waiver, a

---

[10] The court held: "Given that the parties' agreement *requires only that* arbitration be administered *in accordance with* the AAA's Commercial Arbitration Rules, *not* that it be *administered by* the AAA; that the subject rules do not require that arbitration be administered by the AAA; and that the AAA has declined to administer the arbitration, the court, consistent with the parties agreement, will appoint an arbitrator to conduct the arbitration in accordance with the terms of the parties' agreement, which require that said arbitration be conducted pursuant to the AAA's Commercial Arbitration Rules." *AmFirst Ins. Co.*, 3:18CV883TSL-RHW, 2019 WL 3604613, at *5 (emphasis added).

plaintiff must prove that the defendant (1) "invoke[d] the judicial process with respect to the arbitrable claim at issue" and (2) thereby caused the plaintiff prejudice—the "delay, expense, or damage to [her] legal position—that occurs when [a] party's opponent forces [her] to litigate an issue and later seeks to arbitrate that same issue." *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 341, 327–29 (5th Cir. 2004).

Here, no waiver occurred. One Technologies has not invoked any judicial process at any time after the Fifth Circuit ruled that it had not waived its right to arbitrate Forby's CROA claim, and no litigation on Forby's CROA claim has taken place to date. Nor has Forby suffered any prejudice, as any delay to the arbitration was minimal. The Fifth Circuit issued its opinion on September 14, 2021; the Fifth Circuit issued its mandate remanding the matter to this Court on October 6, 2021; and the parties' conference with the Court occurred on November 2, 2021. Thus, this Motion to Compel Arbitration comes less than two months after the Fifth Circuit found no waiver of right to arbitrate the CROA claim and less than two weeks after Forby informed the Court she would contest One Technologies' right to arbitrate the CROA claim.

Forby has also suffered no economic harm. The AAA told Forby it "will refund" her arbitration fees. Defs' App. 43. And One Technologies immediately complied with the AAA's conditions for it to administer an arbitration.[11] As a result, the AAA will as of October 26, 2021 "administer consumer-related disputes[.]" *Id.* at 46. Additionally, as mentioned during the Telephonic Hearing, One Technologies sought Forby's agreement to arbitrate in other forums and with the AAA over the past month. Accordingly, One Technologies has shown no "disinclination to resort to arbitration" through any failing that "would constitute waiver under the FAA" *See*

---

[11] As noted, the AAA sent its letter declining to administer arbitration on October 18, 2021. Eight days later, the AAA sent a letter advising that, given One Technologies' registration with AAA, it would administer. *Compare* Defs' App. 43-44, *with id.* 46-47.

*Jaramillo v. TXU Energy*, EP-20-CV-00115-DCG, 2021 WL 1177888, at *3 (W.D. Tex. Mar. 29, 2021).

Finally, Forby cannot be said to have suffered prejudice because she, herself, did not follow the AAA's Rules in her attempt to arbitrate. Namely, AAA Consumer Rule R-2(a)(1) mandates that a party starting arbitration under an arbitration agreement naming the AAA "must contact, in writing, the party that the case is filed against [] that it wishes to arbitrate a dispute." AAA Cons. Rule R-2(a)(1). Forby did not do so. Instead, One Technologies learned of Forby's attempt to initiate arbitration *through the AAA.* Defs' App. 29-41.  Had Forby complied with the AAA Rule, the parties could have worked in earnest to carry out their Arbitration Agreement efficiently, either before the AAA or another arbitration forum, as specifically contemplated in the Arbitration Agreement.

## E.    Forby's Arbitration Demand Was Premature Rendering It a Nullity

Forby attempted to initiate arbitration preemptively while the Fifth Circuit held exclusive jurisdiction over her CROA claim and before its mandate issued, which was jurisdictionally improper. Forby's complaint in this Court and her Demand for Arbitration at bottom assert the same CROA claim, contending One Technologies is a credit repair organization under CROA. *Compare* Defs' App. 31-41, *with* Doc. 130. Both allege One Technologies failed to provide CROA-required notices and attempted to obtain CROA-prohibited fees and waivers. *Compare* Doc. 130 ¶¶ 54-66, *with* Defs' App. 38-40 ¶ 34, 37, 42-48. In essence, Forby sought to arbitrate the same claim already pending in this Court. Forby's procedural error renders her attempt to seek arbitration a nullity.

It is well established that "a case is lodged in only one court at any one time." *Lloyd v. Lawrence*, 60 F.R.D. 116, 117 (S.D. Tex. 1973). Forby violated this well-settled principle by (i) pursuing arbitration without first dismissing her CROA claim, and further, (ii) doing so before the

mandate issued, and therefore, before this Court was re-vested with the authority to dismiss her CROA claim or compel it to arbitration.

The filing of a notice of appeal "is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *United States v. Ceja*, 387 Fed.App'x. 441, 442 n.3 (5th Cir. 2010) (citing *Griggs v. Provide Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). Here, the aspect of the case involved in the interlocutory appeal was whether One Technologies waived its right to compel Forby's CROA claim to arbitration. *See Forby II*, 13 F.4th at 466-67. The Fifth Circuit had control over this aspect of the case. *Ceja*, 387 Fed. App'x at 442 n.3; *Dominguez v. Gulf Coast Marine*, 9-08-CV-200, 2010 WL 11531148 at *2 (E.D. Tex. June 24, 2010). The district court does not reacquire jurisdiction until the court of appeals has issued its mandate, following the disposition of petitions for rehearing or for Supreme Court review. *Aldous v. Darwin Nat'l Assurance Co*., 889 F.3d 798, 799 (5th Cir. 2018); *United States v. Cook*, 592 F.2d 877, 880 (5th Cir. 1979). "The Mandate is effective when issued." FED. R. APP. P. 41.

Once One Technologies filed its interlocutory appeal to challenge whether Forby's CROA claim would proceed in this Court or in arbitration, this Court was divested of any jurisdiction to control that aspect of the case. That jurisdiction did not return until October 6, 2021—a date *after* Forby attempted to duplicate litigation of her CROA claim by purporting to initiate arbitration. *See* above; *see also Collin County v. Siemens Bus. Servs.*, 560 F. Supp. 2d 525, 527 (E.D. Tex. 2006) ("[U]ntil the court of appeals mandates a return of jurisdiction to the district court, the case is 'in' the court of appeals and any action taken by the district court is null and void.").

In short, Forby's September 17, 2021 arbitration filing was premature and improper. Forby attempted to initiate a parallel proceeding duplicative of her already-pending CROA claim without

first dismissing her claim or otherwise seeking leave of the Fifth Circuit or this Court. Because the Fifth Circuit had not issued its mandate at the time Forby sought to initiate arbitration, this Court would have lacked the authority to either dismiss the CROA claim or send it to arbitration. *See, e.g.*, *Lloyd*, 60 F.R.D. at 118-119. Thus, Forby's arbitration attempt is of no effect and is a nullity. Conversely, One Technologies filed this motion to compel arbitration *after* the mandate issued. This Court is authorized to – and should – compel Forby's CROA claim to arbitration.

## IV.    POSITION ON DISCOVERY

As referenced during the Telephone Conference, One Technologies intends to honor the rulings of the Fifth Circuit (in *Forby I* and *Forby II*) and this Court (including its July 22, 2020 Memorandum Opinion and Order striking Forby's class action allegations and directing Forby to assert ICFA and CROA claims individually). *See* Doc. 129. Accordingly, One Technologies proposes as follows: (i) Forby's ICFA claim should be set for bench trial in September 2022 or after;[12] (ii) Forby's CROA claim should be compelled to arbitration, where the arbitrator can decide the scope of discovery; and (iii) discovery on the ICFA claim can commence with respect to items reasonably related to Forby's ICFA claim and One Technologies' defenses to the ICFA claim.

To this end, One Technologies respectfully requests the Court to order the parties to submit a proposed Scheduling Order addressing the ICFA claim Forby pursues individually. As the Court has held, Forby cannot maintain a class action because all putative-class members remain bound by their arbitration agreement with One Technologies. *See* Doc. 129. This remains true given the AAA is "prepared to administer consumer-related disputes[.]" Defs' App. 46. Accordingly,

---

[12] One Technologies understands that Forby will file a motion for leave to amend her complaint to add putative class allegations. One Technologies will oppose such motion and any efforts to conduct discovery related to class allegations.

Forby's ICFA claim will proceed in this Court rather than in arbitration, *see Forby I*, 909 F.3d at 785-86, and on an individual basis. *See* Doc. 129. One Technologies is ready to litigate Forby's ICFA claim individually. One Technologies respectfully requests the Court to limit the scope of discovery to Forby's ICFA claim and One Technologies' defenses to the ICFA claim, and that all aspects of litigation pertaining to Forby's CROA claim are matters to be determined by the arbitrator.

## V.    CONCLUSION

One Technologies respectfully requests the Court to grant its Motion to Compel Arbitration of Forby's CROA claim; to conduct discovery in the manner set forth herein; and for such any and other further relief, at law and/or in equity, to which it may be justly entitled.

Date: November 12, 2021

Respectfully submitted,

*/s/ Jonathan R. Childers*
Brian E. Robison
  State Bar No. 00794547
  brobison@gibsondunn.com
Andrew P. LeGrand
  State Bar No. 24070132
  alegrand@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Telephone: (214) 698-3100
Facsimile:  (214) 571-2900

Jonathan R. Childers
  State Bar No. 24050411
  jchilders@lynnllp.com
Alan Dabdoub
  State Bar No. 24056836
  adabdoub@lynnllp.com
Daniel C. Polese
  State Bar No. 24102364
  dpolese@lynnllp.com
**LYNN PINKER HURST &
SCHWEGMANN, LLP**

2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile:  (214) 981-3839
**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

On November 12, 2021, I served the foregoing document using the ECF System and e-mail to all counsel of record, in compliance with FEDERAL RULE OF CIVIL PROCEDURE 5(b).

*/s/ Jonathan R. Childers*
Jonathan R. Childers