IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **VICKIE FORBY,** *individually and on behalf of all others similarly situated,* | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. **3:16-CV-856-L** |
| **ONE TECHNOLOGIES, LP; ONE TECHNOLOGIES MANAGEMENT, LLC; and ONE TECHNOLOGIES CAPITAL, LLP,** | § § § § § § | |
| Defendants. | § § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court are Defendants' Motion to Compel Arbitration and Position on Discovery (Doc. 142), filed November 12, 2021; Plaintiff's Opposed Motion for Relief from Order or Judgment Pursuant to Rule 60 (Doc. 140), filed November 12, 2021; and Plaintiff's Opposed Motion for Leave to File Fourth Amended Complaint (Doc. 138), filed November 12, 2021. Having carefully considered the motions, responses, replies, legal arguments, appendixes, record, and applicable law, the court **denies** Defendants' Motion to Compel Arbitration (Doc. 142); **denies** Plaintiff's Opposed Motion for Relief from Order or Judgment Pursuant to Rule 60 (Doc. 140); and **denies as moot** Plaintiff's Opposed Motion for Leave to File Fourth Amended Complaint (Doc. 138).

## I.     Background Facts and Procedural Background

More than seven years have elapsed since this dispute arose between Plaintiff Vickie Forby ("Plaintiff" or "Ms. Forby") and Defendants One Technologies, LP; One Technologies Management, LLC; and One Technologies Capital, LLP (collectively, "One Technologies" or "Defendants"), concerning her claims that Defendants duped consumers into signing up for "free"

credit reports that were not, in fact, free. In that time, the case has been transferred from the Southern District of Illinois to the Northern District of Texas, Ms. Forby has amended her Original Complaint three times, and the Fifth Circuit has weighed in twice. *See Forby v. One Techs., L.P.*, 909 F.3d 780 (5th Cir. 2018) ("*Forby I*"); *Forby v. One Techs., L.P.*, 13 F.4th 460 (5th Cir. 2021) ("*Forby II*").

Notwithstanding the Fifth Circuit's ruling in *Forby II* that Defendants did not waive their right to arbitrate Ms. Forby's federal law claim, Ms. Forby now opposes Defendants' motion to compel her federal law claim to arbitration. She contends that Defendants "have made a series of mistakes that have rightly landed all of [her] claims back in this Court." *See* Pl.'s Resp. to Defs.' Mot. to Compel 2, Doc. 145. Resolution of the proper forum for Ms. Forby's federal law claim— be it in this court, where her state law claim is pending (as she contends), or before an arbitrator (as Defendants contend)—requires an understanding of both the procedural history in this lawsuit and recent developments following *Forby II*, which serve as the catalyst for Ms. Forby's opposition to Defendants' latest motion to compel arbitration.

### A.  Ms. Forby's Lawsuit Against Defendants

On April 24, 2015, Ms. Forby filed a putative class action complaint in Illinois state court against Defendants, alleging violations of the Illinois Consumer Fraud Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.*, and unjust enrichment under Illinois law. *See* Defs.' Notice of Removal, Ex. B (Original Complaint), Doc. 1-2. In her Original Complaint, Ms. Forby alleged that on July 7, 2014, she signed up for a free credit report on Scoresense.com, a website operated by Defendants. She alleged that the website leads consumers to believe they are signing up for a free credit report; once consumers sign up, however, they are enrolled in a credit monitoring service that costs $29.95 per month. *See id.* Specifically, Ms. Forby alleged that Defendants "offered [her]

and consumers 'free' online access to their credit scores, but failed to disclose, or failed to disclose adequately, that by accessing their 'free' score, [she] and consumers would be enrolled in [Defendants'] negative-option credit monitoring program." *Id.* ¶ 10.[1] Ms. Forby alleged she did not realize she was enrolled in a negative-option billing program until discovering multiple monthly charges of $29.95 on her credit card. *Id.* ¶ 3. She also alleged she was "misled into and charged for credit monitoring services [she] did not want[,]" and that Defendants ignored her request to be removed from the program. *Id.* ¶¶ 3, 53. Ms. Forby sought damages on behalf of herself and a proposed class of all other similarly situated persons. *Id.* ¶ 36.

On July 14, 2015, Defendants removed this action to the United States District Court for the Southern District of Illinois pursuant to 28 U.S.C. §§ 1332(d) and 1441(a). *See* Defs.' Notice of Removal, Doc. 1. On July 21, 2015, Defendants moved to dismiss or transfer the case, contending that the parties entered into a valid contract that required them to resolve "all claims, disputes, or controversies" by binding arbitration in Dallas, Texas. *See* Defs.' Brief in Support of Mot. to Dismiss or Transfer 2, Doc. 10. In support, Defendants submitted the agreement to arbitrate contained in the "Terms and Conditions" that appear and are accessible by hyperlink on each of the five webpages Ms. Forby clicked through to complete her enrollment. *See id.* at Exs. A and B, Doc. 10. Those Terms and Conditions contain an agreement to arbitrate and a forum selection clause that provide, in relevant part:

> YOU UNDERSTAND AND AGREE THAT ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN YOU AND US OR OUR PROVIDERS (INCLUDING OUR RESPECTIVE PARENT, AFFILIATED, SUBSIDIARY OR RELATED ENTITIES), INCLUDING BUT NOT LIMITED TO TORT AND CONTRACT CLAIMS, CLAIMS BASED UPON ANY FEDERAL, STATE OR LOCAL STATUTE, LAW, ORDER, ORDINANCE OR REGULATION, AND THE ISSUE OF ARBITRABILITY, SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION THAT WILL BE HELD IN DALLAS, TEXAS,

---

[1] "Negative option billing" is a term used when "customers must opt out to stop charges [on their credit cards] rather than opting in to approve them." *Forby v. One Techs., L.P.*, 13 F.4th 460, 462 (5th Cir. 2021).

> PURSUANT TO THE RULES OF THE AMERICAN ARBITRATION
> ASSOCIATION. ANY CONTROVERSY CONCERNING WHETHER A
> DISPUTE IS ARBITRABLE SHALL BE DETERMINED BY THE
> ARBITRATOR AND NOT BY ANY COURT.

*Id.* at Ex. B ¶ 23 (hereinafter the "Arbitration Agreement") (capitalization in original). The

Arbitration Agreement also prohibited class arbitration:

> NEITHER YOU NOR WE SHALL BE ENTITLED TO JOIN OR
> CONSOLIDATE CLAIMS IN ARBITRATION BY OR AGAINST OTHER
> CONSUMERS OR ARBITRATE ANY CLAIM AS A REPRESENTATIVE OR
> MEMBER OF A CLASS OR IN A PRIVATE ATTORNEY GENERAL
> CAPACITY. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE
> ANY RIGHT THEY HAVE TO A JURY TRIAL.

*Id.*

In light of the forum selection clause in the Arbitration Agreement, Defendants requested

that the court transfer the action to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a)

or, alternatively, dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6). *See id.*

On March 25, 2016, the court determined that "One Technologies' website and sign-up process

provided sufficient notice to consumers that, by completing the sign-up process, they would be

bound by One Technologies' Terms and Conditions." Mem. Op. & Order 17, Doc. 30. The court

concluded that Ms. Forby, while she may not have had actual knowledge of the terms to which she

agreed, "had ample notice and access to One Technologies' Terms and Conditions via numerous

hyperlinks and manifested her assent to those terms by clicking the 'Continue' button, regardless

[of] whether she actually read them or not." *Id.* at 19. In light of the Arbitration Agreement

containing a forum selection clause specifying Dallas, Texas, the court transferred this action to

the Northern District of Texas. *See* Mem. Op. & Order, Doc. 30.[2]

---

[2] The court described the enrollment process on Defendants' website as follows:

> [H]ere the agreement is best characterized as a "sign-in-wrap" agreement, which is a sort
> of hybrid between a browsewrap and a clickwrap agreement. The prospective consumer

### B. Defendants' Motion to Dismiss for Failure to State a Claim

On May 9, 2016, Defendants moved to dismiss all of Ms. Forby's claims under Federal Rule of Civil Procedure 12(b)(6). *See* Defs.' Mot. to Dismiss, Doc. 41. On March 31, 2017, the court denied the motion to dismiss with respect to Ms. Forby's ICFA claim concerning the alleged deceptiveness of Defendants' website, granted the motion with respect to her unjust enrichment claim, and dismissed that claim with prejudice. *See* Mem. Op. & Order, Doc. 50.

### C. Defendants' First Motion to Compel Arbitration and the Fifth Circuit's Decision in *Forby I*

On April 17, 2017, pursuant to the Arbitration Agreement, Defendants moved to compel arbitration of Ms. Forby's remaining claim for violations of ICFA and to dismiss the case. *See* Defs.' Mot. to Compel Arbitration, Doc. 52. On July 7, 2017, the court granted Defendants' Motion to Compel Arbitration of this remaining claim and dismissed the case. *See Forby v. One Techs., LP*, No. 3:16-CV-856-L, 2017 WL 2930514, at *3 (N.D. Tex. July 10, 2017), *rev'd and vacated sub nom. Forby v. One Techs., L.P.*, 909 F.3d 780, 786 (5th Cir. 2018). The Fifth Circuit Court of Appeals reversed, holding that Defendants waived their right to arbitrate Ms. Forby's ICFA claim because, in filing a motion to dismiss all claims without seeking to compel arbitration, they

---

must click through five different webpages, each of which contains a hyperlink to the "Terms and Conditions" (the first one is in grey font, the other four are blue). On the Step 2 Webpage, after the prospective customer enters their Social Security number and date of birth, the customer must click a "Continue" button in order to proceed through the purchase process. Directly above the "Continue" button is the following phrase: "By clicking on the 'Continue' button below, you agree to . . . the Terms and Conditions . . . ." (Doc. 10 Ex. A). The underlined "Terms and Conditions" in that phrase is a sixth hyperlink to the terms.

The first page of the Terms and Conditions contract contains the bolded phrase "This is a Binding Agreement" and in all caps states "PLEASE READ THESE TERMS AND CONDITIONS CAREFULLY." (Doc. 10 Ex. B). The sixth page of the terms contains the forum-selection clause (in normal font) and arbitration clause (in all caps).

Mem. Op. & Order 16, Doc. 30.

"substantially invoked the judicial process and that Forby was prejudiced thereby." *Forby I*, 909 F.3d at 786.[3]

### D.  Ms. Forby's Amendments to the Complaint After *Forby I*

Upon remand, Ms. Forby twice sought and obtained leave to amend her Original Complaint. *See* First Am. Compl., Doc. 93; Sec. Am. Compl., Doc. 96. In her Second Amended Complaint, Ms. Forby reasserted her ICFA claim and added a new claim under the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 *et seq*. *See* Sec. Am. Compl. ¶¶ 63-76, Doc. 96. She alleged Defendants violated the CROA by deceptively offering consumers "free" access to their credit scores without disclosing they would be enrolled in a monitoring program for $29.95 per month. She also alleged they violated the CROA by: (1) charging consumers for services before fully performing them, in violation of § 1679b(b) of the CROA; (2) failing to give consumers notice of their rights, as required by §§ 1679c(a) and 1679e(b) of the CROA; and (3) trying to get consumers to waive their CROA rights, in violation of § 1679f(b) of the CROA. *See id.*

### E.  Defendants' Second Motion to Compel Arbitration, Motion to Strike Class Allegations, and the Fifth Circuit's Decision in *Forby II*

On May 20, 2019, Defendants again sought to compel arbitration of Ms. Forby's claims, contending that she "revived" their previously waived arbitration rights by filing a "Second Amended Complaint that significantly reshapes and broadens this case." Defs.' Brief in Support of Second Mot. to Compel & Stay Proceedings 6, Doc. 98. Alternatively, Defendants argued they should, at a minimum, be permitted to arbitrate the CROA claim because they could not have waived the right to arbitrate a new claim that Ms. Forby did not assert until after the previous

---

[3] Of note, following a recent Supreme Court decision, "[P]rejudice is not a condition to finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA." *Morgan v. Sundance, Inc.*, __ U.S. __, 142 S. Ct. 1708, 1714 (2022).

waiver occurred. Defendants also filed a motion to strike Ms. Forby's class allegations in the Second Amended Complaint. *See* Defs.' Mot. to Strike, Doc. 99.

On June 4, 2019, the court referred the pending motions to United States Magistrate Judge Renée Harris Toliver for findings and recommendation. *See* Order of Reference, Doc. 104. On November 8, 2019, Magistrate Judge Toliver recommended that the court deny Defendants' Motion to Compel Arbitration and grant Defendants' Motion to Strike Plaintiff's class allegations. *See* Findings, Conclusions, and Recommendation ("Report"), Doc. 118. Both parties objected.

On January 13, 2020, the court accepted Magistrate Judge Toliver's recommendation to deny Defendants' Motion to Compel Arbitration and rejected her recommendation to grant Defendants' Motion to Strike Plaintiff's class allegations. *See Forby v. One Techs., LP*, No. 3:16-CV-856-L, 2020 WL 132310 (N.D. Tex. Jan. 13, 2020), *opinion vacated in part on reconsideration*, No. 3:16-CV-856-L, 2020 WL 4201604 (N.D. Tex. July 22, 2020), *and rev'd and remanded sub nom. Forby v. One Techs., L.P.*, 13 F.4th 460 (5th Cir. 2021).

On January 30, 2020, Defendants moved for reconsideration of the order denying their motion to strike the class allegations and filed a notice of interlocutory appeal with the Fifth Circuit of the order denying arbitration. *See* Docs. 123, 124. On July 22, 2020, the undersigned granted Defendants' motion for reconsideration of the order denying their motion to strike the class allegations. *See Forby v. One Techs., LP*, No. 3:16-CV-856-L, 2020 WL 4201604, at *10 (N.D. Tex. July 22, 2020). Among other things, the court reasoned that Defendants "have not waived their rights to compel arbitration against absent class members, nor can the court make such a determination prior to class certification, as the class members are not yet parties to the litigation." *Id.* at *8. The court also recognized that any ruling on enforceability of the arbitration clause as to putative class members would be procedurally improper and akin to an "impermissible advisory

opinion." *Id.* (quoting *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 251 (5th Cir. 2020) (citation omitted)). Accordingly, the court struck Ms. Forby's class allegations and ordered her to file a Third Amended Complaint without the class allegations. *Id.* On August 12, 2020, Ms. Forby filed her Third Amended Complaint, the live pleading. *See* Third Am. Compl., Doc. 130.

With respect to Defendants' interlocutory appeal, on September 14, 2021, the Fifth Circuit held that Defendants' prior waiver with respect to Ms. Forby's ICFA claim did not extend to the CROA claim and, therefore, reversed the court's denial of Defendants' Motion to Compel Arbitration and remanded the case for further proceedings consistent with its opinion. *See Forby II*, 13 F.4th at 466-67. The appellate court reasoned, "Our repeated statements that waiver of arbitral rights is claim-specific, preclude our holding that waiver as to the ICFA and unjust enrichment claims extends to the distinct CROA claims. This is especially so given the CROA claims were not even part of the lawsuit at the time of the waiver." *Id.* at 466 (internal citations and footnotes omitted).

### F.  Developments Following Fifth Circuit's Remand in *Forby II*

On September 17, 2021, Ms. Forby filed an arbitration demand with the AAA, seeking a declaration that One Technologies is a credit repair organization. *See* Pl.'s Mot. for Leave to File Fourth Am. Compl., Ex. 4, Doc. 138-1 at 58-70.[4] On October 18, 2021, the AAA informed Ms. Forby and Defendants that it would not arbitrate any of Ms. Forby's claims or any other consumers' claims against One Technologies because One Technologies had not complied with the AAA's rules and prerequisites allowing it to participate in consumer AAA proceedings. *See id.*, Ex. 1, Doc. 138-1 at 1-3. The letter provided:

> Prior to the filing of this arbitration, One Technologies, LLC failed to comply with the AAA's policies regarding consumer claims, set forth in the Consumer Due

---

[4] The court's citations to the page numbers in Ms. Forby's filings are to the CM-ECF page numbers, as she did not separately number each page of her appendix.

Process Protocol ("Protocol") and the Consumer Arbitration Rules ("Consumer Rules"), including the Costs of Arbitration, which can be found on our web site, www.adr.org. Accordingly, we must decline to administer this claim and any other claims between One Technologies, LLC and its consumers at this time. Please note that, for cases proceeding under the Consumer Rules, the AAA reviews the relevant arbitration agreement for material compliance with the Protocol and the Consumer Rules. The AAA's review is administrative; it is not an opinion on whether the arbitration agreement, the contract, or any part of the contract is legally enforceable, nor is it a determination regarding the arbitrability of the dispute.

We have administratively closed our file and will refund any payment received by the filing party. According to R-1(d) of the Consumer Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

***

If One Technologies, LLC advises the AAA in the future of its intention to comply with the AAA's Consumer Rules and Protocol and, if applicable resolves any outstanding payment obligations, the AAA may consider at its sole discretion, accepting newly filed consumer cases going forward. Therefore, if One Technologies, LLC wishes for the AAA to consider accepting consumer disputes going forward, [it] must, at a minimum, register its clause on the Consumer Clause on our website, www.adr.org/clauseregistry. Upon completion of the registration process and confirmation from the AAA that One Technologies, LLC is now active on the Consumer Clause Registry, One Technologies, LLC is responsible for informing all parties that Claimant may re-file [her] claim.

*Id.* at Ex. 1, Doc. 138-1 at 2-3.

Following its administrative review of the consumer arbitration clause One Technologies eventually submitted, on October 20, 2021, the AAA determined that the "arbitration provision has a material or substantial deviation from the Consumer Rules and/or Protocol." *See id.* at Ex. 10, Doc. 138-1 at 95. The AAA, therefore, requested that One Technologies waive certain language that it had proposed through its submission. *See id.* at 95-96. On October 26, 2021, One Technologies sent correspondence to the AAA waiving the offending provision and seeking registration of its consumer arbitration clause. *Id.* at Ex. 6, Doc. 138-1 at 85-86. Later that same

day, the AAA accepted the waiver and confirmed One Technologies' registration. *Id.* The AAA's letter also provided:

> The AAA noted that we previously declined to administer cases involving your company. The AAA decision to proceed with administration of One Technologies, LLC cases would not be applicable to previously declined cases and applied to new filings from this day forward. We would ask that any consumer parties involving a One Technologies, LLC dispute that the AAA previously declined to administer be informed of the recent registration and the matter would have to be refiled with the appropriate documents and filing fee.

*Id.* at 85.

On November 2, 2021, the court held a telephonic conference with the parties. *See* Doc. 137. During the conference, Defendants' counsel notified the court that they intended to seek to compel Ms. Forby's CROA claim to arbitration and to litigate her ICFA claim in this court. Ms. Forby's counsel advised the court that she opposed arbitrating the CROA claim based on the recent developments summarized directly above and that both her CROA and ICFA claims should proceed in this court. The court directed the parties to brief the issues.

On November 12, 2021, Defendants filed their Motion to Compel Arbitration, and Position on Discovery (Doc. 142), seeking an order compelling Ms. Forby's CROA claim to arbitration. Also on November 12, 2021, Ms. Forby filed Plaintiff's Opposed Motion for Relief from Order or Judgment Pursuant to Rule 60 (Doc. 140), seeking relief from the court's July 22, 2020 Memorandum Opinion and Order (Doc. 129), in which it granted Defendants' motion to reconsider and struck her class allegations. She also filed Plaintiff's Opposed Motion for Leave to File Fourth Amended Complaint (Doc. 138) ("Motion for Leave"), requesting (i) leave to add a new claim seeking equitable relief under 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 to obtain a declaration that One Technologies is a credit repair organization; and (ii) leave to reassert claims

on behalf of absent putative class members. The motions have been fully briefed and are ripe for disposition.

## II.     Applicable Legal Standard

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects a liberal federal policy favoring arbitration and requires arbitration agreements to be rigorously enforced according to their terms. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted). The FAA "expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4) (emphasis in original). "There is a strong presumption in favor of arbitration and the party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

## III.    Defendants' Motion to Compel Arbitration

### A.  Summary of the Parties' Contentions

As previously noted, on November 12, 2021, Defendants filed a motion to compel arbitration of Ms. Forby's CROA claim "pursuant to Sections 4 and 5 of the [FAA]." Defs.' Brief in Support of Mot. to Compel 3, Doc. 143. They contend her "CROA claim should proceed to

arbitration in accordance with the Terms and Conditions of the Agreement to arbitrate, and the ICFA claim should proceed in this Court, consistent with the rulings of the Fifth Circuit and this Court." *Id.* at 1, Doc. 143. In anticipation of Ms. Forby's opposition, Defendants also argue that her arbitration demand with the AAA following *Forby II* was premature and that the AAA's letter declining to administer the arbitration does not present an obstacle to arbitration of the CROA claim at this juncture because (i) the Arbitration Agreement does not expressly require arbitration before the AAA but only in accordance with the AAA's rules; (ii) the AAA now stands ready to administer arbitrations for One Technologies; and (iii) pursuant to Section 5 of the FAA, the court may designate and appoint an arbitrator to conduct arbitration of Ms. Forby's CROA claim. *Id.* at 4, 14-18.

In opposition, Ms. Forby contends that in their "zeal to compel [her] claims to arbitration, [Defendants] ha[ve] made a series of mistakes that have rightly landed all of [her] claims back in this Court. Rather than admitting to those mistakes, however, [they] seek[] to hide those mistakes and run away from the consequences." Pl.'s Resp. to Defs.' Mot. to Compel 2, Doc. 145. She further asserts that following *Forby II*, she sought arbitration, the AAA declined to administer it, and Defendants are precluded from compelling her CROA claim to arbitration "based on the text of the FAA, waiver, and material breach." *Id.* at 8. She argues that there is no legal basis for this court to compel her CROA claim to arbitration because "she sought to address her claims in Defendants' preferred forum (arbitration) but was denied access to that forum because of Defendants' mistake." *Id.* at 5. Ms. Forby maintains that "while it is technically true that [she] *could* agree now to have her claims administered in arbitration by a third-party, or that [she] *could* agree now to refile before the AAA, neither provides a legal basis for this Court to *compel*

arbitration." *Id.* (original emphasis). In further support, she cites to Rule 1(d) of the AAA's

Consumer Rules applicable to the Arbitration Agreement, which provides:

> The AAA administers consumer disputes that meet the due process standards
> contained in the Consumer Due Process Protocol and the Consumer Arbitration
> Rules. The AAA will accept cases after the AAA reviews the parties' arbitration
> agreement and if the AAA determines the agreement substantially and material
> complies with the due process standards of these Rules and the Consumer Due
> Process Protocol. **Should the AAA decline to administer an arbitration, either
> party may choose to submit its dispute to the appropriate court for resolution**.

Pl.'s Mot. for Leave to File Fourth Am. Compl., Ex. 1, Doc. 138-1 at 1-3.

In reply, Defendants argue that Ms. Forby's "arbitration demand is a nullity" because she

filed it with the AAA after the Fifth Circuit's opinion in *Forby II* but prior to its mandate. *See*

Defs.' Reply in Support of Mot. to Compel 4, Doc. 149. Defendants also contend that arbitration

may still proceed because "[u]pon receipt of the AAA's letter declining to administer Forby's

improperly filed arbitration, [they] immediately complied with the AAA's requests." *Id.*

**B. Analysis**

*1. Motion to Compel Arbitration under 9 U.S.C. § 4*

Under the FAA, "[a] party aggrieved by the alleged failure, neglect or refusal of another to

arbitrate under a written agreement for arbitration" may "petition any United States district court

. . . for an order directing that such arbitration proceed in the manner provided for in such

agreement." 9 U.S.C. § 4. When considering a motion to compel, a district court must engage in a

two-step inquiry. First, it must determine whether the parties agreed to arbitrate the claims at issue.

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-628 (1985). Second,

it must evaluate "whether legal constraints external to the parties' agreement foreclosed the

arbitration of those claims." *Id.*

**Memorandum Opinion and Order – Page 13**

Unlike in her previous oppositions to Defendants' motions to compel arbitration, Ms. Forby does not appear to dispute that the parties have a valid contract to arbitrate and that the CROA claim falls within the scope of that contract. Rather, Ms. Forby maintains that, on the facts of this case, there has been no "failure, neglect, or refusal" to arbitrate sufficient to compel arbitration pursuant to 9 U.S.C. § 4. She contends that following *Forby II*, she sought arbitration, the AAA declined to administer it, and Defendants, therefore, can no longer compel her CROA claim to arbitration "based on the text of the FAA, waiver, and material breach." Pl.'s Resp. to Defs.' Mot. to Compel 8, Doc. 145.

For the reasons that follow, the court concludes that the FAA alone forecloses Defendants' request that the court compel Ms. Forby's CROA claim to arbitration. The court, therefore, need not reach Ms. Forby's alternative arguments in opposition to the motion to compel.

The text of Section 4, upon which Defendants rely in their motion to compel, expressly provides that the party being compelled into arbitration either "fail[ed], neglect[ed], or refus[ed]" to arbitrate his or her claims. 9 U.S.C. § 4. Here, however, following the Fifth Circuit's decision in *Forby II*, Ms. Forby tried to seek relief through arbitration, but the AAA refused to arbitrate the claim and informed her that, under Rule 1(d) of the AAA's Consumer Rules, she could choose to file her claim in the appropriate court. Specifically, on September 17, 2021, Ms. Forby filed an arbitration demand with the AAA. *See* Pl.'s Mot. for Leave to File Fourth Am. Compl., Ex. 4, Doc. 138-1 at 58-70. On October 18, 2021, the AAA informed her and Defendants that it would not arbitrate any of Ms. Forby's claims or any other consumers' claims against One Technologies because One Technologies had not complied with the AAA's rules and prerequisites allowing it to participate in consumer AAA proceedings. *See id.*, Ex. 1, Doc. 138-1 at 1-3. The letter provided in pertinent part:

Prior to the filing of this arbitration, One Technologies, LLC failed to comply with the AAA's policies regarding consumer claims, set forth in the Consumer Due Process Protocol ("Protocol") and the Consumer Arbitration Rules ("Consumer Rules"), including the Costs of Arbitration, which can be found on our web site, www.adr.org. *Accordingly, we must decline to administer this claim and any other claims between One Technologies, LLC and its consumers at this time*. Please note that, for cases proceeding under the Consumer Rules, the AAA reviews the relevant arbitration agreement for material compliance with the Protocol and the Consumer Rules. The AAA's review is administrative; it is not an opinion on whether the arbitration agreement, the contract, or any part of the contract is legally enforceable, nor is it a determination regarding the arbitrability of the dispute.

We have *administratively closed our file* and will refund any payment received by the filing party. *According to R-1(d) of the Consumer Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution*.

\*\*\*

If One Technologies, LLC advises the AAA in the future of its intention to comply with the AAA's Consumer Rules and Protocol and, if applicable resolves any outstanding payment obligations, the AAA may consider at its sole discretion, *accepting newly filed consumer cases going forward*. Therefore, if One Technologies, LLC wishes for the AAA to consider accepting consumer disputes going forward, [it] must, at a minimum, register its clause on the Consumer Clause on our website, www.adr.org/clauseregistry. Upon completion of the registration process and confirmation from the AAA that One Technologies, LLC is now active on the Consumer Clause Registry, One Technologies, LLC is responsible for informing all parties that Claimant may re-file [her] claim.

*Id.* at Ex. 1, Doc. 138-1 at 2-3 (emphasis added).

On October 18, 2021, the AAA also advised One Technologies that it had declined to administer the arbitration until One Technologies registered its arbitration clause with the AAA. *See* App. to Defs.' Mot. to Compel Arbitration, Ex. 3B, Doc. 143-1 at 42-44. Following its administrative review of the consumer arbitration clause One Technologies eventually submitted, on October 20, 2021, the AAA determined that the "arbitration provision has a material or substantial deviation from the Consumer Rules and/or Protocol." *See* Pl.'s Mot. for Leave to File Fourth Am. Compl., Ex. 10, Doc. 138-1 at 95. As such, it requested that One Technologies waive

certain language that it had proposed through its submission. *See id.* at 95-96. On October 26, 2021, One Technologies sent correspondence to the AAA waiving the offending provision and seeking registration of its consumer clause. *Id.* at Ex. 6, Doc. 138-1 at 85-86. Later that same day, the AAA accepted the waiver and confirmed One Technologies' registration. *Id.* The AAA's letter also provided:

> The AAA noted that we previously declined to administer cases involving your company. *The AAA decision to proceed with administration of One Technologies, LLC cases would not be applicable to previously declined cases and applied to new filings from this day forward*. We would ask that any consumer parties involving a One Technologies, LLC dispute that the AAA previously declined to administer be informed of the recent registration and the matter would have to be refiled with the appropriate documents and filing fee.

*Id.* at 85 (emphasis added).

This record established that, in compliance with *Forby II* and the parties' Arbitration Agreement, Ms. Forby sought to arbitrate but was declined by the AAA because One Technologies had not complied with the AAA's rules and prerequisites allowing it to participate in consumer AAA proceedings. Although Defendants recognize that Ms. Forby sought arbitration with the AAA following *Forby II*, they seek to reframe the issue as a question of whether the court can compel Ms. Forby to arbitrate in a different arbitration proceeding than the one she sought to initiate. Defendants spill much ink on their argument that arbitration can be administered by any arbitrator so long as it is under the AAA rules. According to Defendants, this distinction is "significant." *See* Defs.' Brief in Support of Mot. to Compel 15, Doc. 143. The court disagrees. The issue presented is not whether the parties may now arbitrate before the AAA or anyone else, but rather whether Ms. Forby can now be *compelled* to arbitrate this dispute. As explained above, under the text of the FAA and R-1(d) of the Consumer Rules to which the parties agreed, she cannot.

**Memorandum Opinion and Order – Page 16**

In support of their motion to compel arbitration, Defendants rely heavily on *Jose Evenor Taboada A. v. AmFirst Ins. Co.*, No. 3:18-CV-883TSL-RHW, 2019 WL 3604613 (S.D. Miss. Aug. 6, 2019). The court has carefully reviewed *AmFirst* and concludes it is procedurally and factually distinguishable. In *AmFirst*, Mr. Taboada filed an arbitration demand with the AAA against his health insurance company, AmFirst, seeking payment of bills for his wife's liver transplant. *Amfirst*, 2019 WL 3604613, at *1. There, like here, the defendant/respondent had not registered with the AAA and, prior to registration, certain non-compliant provisions in the arbitration agreement would have to be waived. *Id.* at *2. There, like here, the AAA declined to hear the case because AmFirst had not registered. *Id.* At this point, the similarity between *AmFirst* and this case ends. Unlike here, Mr. Taboada asked the court to compel AmFirst to arbitrate, and also to arbitrate with the AAA. *Id.* at *4. The court granted the first request and denied the second. *Id.* at *5-6. The court ordered arbitration but denied the request to arbitrate with the AAA because it found that while the arbitration agreement between the parties did specify the arbitration would be conducted under the Rules of the AAA, that agreement did not specify the arbitration would be administered by the AAA. *Id.* Thus, in *AmFirst*, unlike in this case, both parties agreed that arbitration should be compelled, and the sole issue was whether the parties' agreement required them to arbitrate with the AAA specifically, or to arbitrate solely under the AAA's rules.

As Ms. Forby correctly notes, "[t]his is not a battle of the arbitrator case," as in *AmFirst*. Regardless of whether arbitration under the agreement must be administered by the AAA or solely in accordance with AAA rules (the issue in *AmFirst*), Ms. Forby is contending that she attempted arbitration, was rebuffed by the AAA because of Defendants' own lack of compliance, and under Rule 1(d) of the Consumer Rules of the AAA, to which Defendants agreed, once the AAA declined

to arbitrate, she was permitted to submit the dispute to the appropriate court for resolution. The AAA's letter dated October 18, 2021, supports her argument:

> We have administratively closed our file and will refund any payment received by the filing party. According to R-1(d) of the Consumer Rules, *should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.*

Pl.'s Mot. for Leave to File Fourth Am. Compl., Ex. 1, Doc. 138-1 at 1-3 (emphasis added).

The case of *Heisman v. Wyndham Vacation*, 2021 WL 1138125 (D.N.J. Mar. 22, 2021), although not directly on point, is more closely analogous to this case than *AmFirst*. In *Heisman*, the plaintiffs filed a demand for arbitration against Wyndham. As in this case, and for similar reasons, the AAA declined to arbitrate. The district court observed that "Wyndham is not the first defendant to bobble an arbitration forum, only to later seek to compel arbitration when the other party sued." *Heisman*, 2021 WL 1138125, at *2. Wyndham thereafter registered its arbitration clause and sought to compel arbitration. The plaintiffs opposed the motion. In deciding Wyndham's motion to compel arbitration, the *Heisman* court considered whether arbitration was still warranted under the circumstances and concluded it was not:

> There has been no failure, neglect, or refusal on Plaintiffs' part to arbitrate. To the contrary, they complied with the rules of arbitration as provided in the Agreement. Those very rules led the Plaintiffs back to court. There is thus no basis for a court to send them back to arbitration.

*Id.* at *3 (citing *Greco v. Uber Techs., Inc.*, No. 4:20-CV-02698-YGR, 2020 WL 5628966, at *3 (N.D. Cal. Sept. 3, 2020), *appeal dismissed*, No. 20-16814, 2021 WL 4273483 (9th Cir. May 14, 2021)).[5]

---

[5] Defendants attempt to distinguish *Heisman* and argue that in *Heisman*, unlike here, Wyndham failed to address the AAA's complaint. *See* Defs.' Reply in Support of Mot. to Compel Arbitration 6. They point out that here, "the AAA announced One Technologies had addressed [the AAA's complaints] to [the AAA's] satisfaction, so much so that the AAA is willing to conduct consumer arbitration." *Id.* Defendants also note that, unlike in *Heisman*, the parties' arbitration agreement does not require arbitration before the AAA but only in accordance with its rules. Though certain facts in *Heisman* are different, these distinctions

In *Greco*, the plaintiff filed her dispute in arbitration, pursuant to Uber's terms and conditions, and received the AAA declination letter stating that Uber failed to comply with AAA's policies and that it was administratively closing the file. 2020 WL 5628966, at *1. Uber, like Defendants here, sought to remedy the issues that had led to the declination letter, and requested that AAA reopen the plaintiff's case. *Id.* at *2. When Uber requested that the AAA reopen the plaintiff's case, the AAA sent Uber a letter "reiterating that 'AAA declined to administer the matter and closed its file' and that '[b]ecause this case was previously closed, the AAA will not reopen the matter unless the parties agree to reopen the matter.'" *Id.* (alteration in original). The *Greco* court noted,

> Once AAA declines to arbitrate, the rules provide that "either party may choose to submit its dispute to the appropriate court for resolution." . . . *Uber expressly agreed to be bound by these rules.* It cannot now complain of their enforcement. In this case, it is not Ms. Greco that seeks to escape the agreement, but Uber itself, by asking the Court to overturn the AAA rules and force the case back to arbitration. The Court declines to do so.

*Id.* (original emphasis) (citation to record omitted); *see also Eliasieh v. Legally Mine, LLC*, No. 18-CV-03622-JSC, 2020 WL 1929244, at *5 (N.D. Cal. Apr. 21, 2020) ("The bottom line is that AAA terminated the arbitration due to Defendant's conduct. Under well-settled caselaw and the AAA's own rules, the termination of the arbitration due to Defendant's non-payment of fees means that Plaintiff can pursue his claims in court.") (citing AAA R-1(d) of the Consumer Rules).

Approximately three months ago, another district court reached a similar conclusion in a case involving similar facts to those in this case. *See Bedgood v. Wyndham Vacation Resorts, Inc.*,

---

are without a difference. The issue before the court is not whether Ms. Forby could choose to now arbitrate before the AAA or in another forum under AAA rules, but whether she can be *compelled* to arbitrate. AAA Rule 1-(d) of the Consumer Rules allows her to choose to submit her dispute to this court. Further, the AAA made clear in its October 26, 2021 letter that its decision to proceed with administration of One Technologies' cases after it waived the non-compliant provisions and paid the requisite fee "would not be applicable to previously declined cases and applied to new filings from this day forward." *See* Pl.'s Mot. for Leave to File Fourth Am. Compl., Ex. 6, Doc. 138-1 at 85.

**Memorandum Opinion and Order – Page 19**

No. 6:21-CV-418-PGB-DCI, __ F. Supp. 3d __, 2022 WL 1212165, at *6 (M.D. Fla. Mar. 30, 2022), *appeal filed* (11th Cir. May 3, 2022) (rejecting a motion to compel arbitration filed by Wyndham when the plaintiffs had submitted their claims for arbitration and were rebuffed because of Wyndham's failure to comply with AAA rules and procedures, and holding that "while the claims may have originally been arbitrable under the Agreement, [Wyndham's] actions have foreclosed the arbitration of these claims under the plain language of the FAA.").

Finally, the court rejects Defendants' argument that Ms. Forby "[i]n essence" attempted to commence "arbitration preemptively while the Fifth Circuit held exclusive jurisdiction over her CROA claim and before its mandate issued, which was jurisdictionally improper." *See* Defs.' Brief in Support of Mot. to Compel 19, Doc. 143. Defendants posit that because Ms. Forby's arbitration demand was "in essence" premature, "this Court would have lacked the authority to either dismiss the CROA claim or send it to arbitration." *Id.*

Defendants' argument related to what they contend is the premature nature of Ms. Forby's arbitration demand because the mandate had not yet issued would apply to the lower court that was without jurisdiction, not Ms. Forby. *See Collin Cnty. v. Siemens Bus. Servs.*, 560 F. Supp. 2d 525, 527 (E.D. Tex. 2006) ("[U]ntil the court of appeals mandates a return of jurisdiction to the district court, the case is 'in' the court of appeals and any action taken by the district court is null and void."). As Ms. Forby correctly notes, she did not seek any action from this court prior to the mandate, and the court did not take any action prior to the mandate. There is, therefore, no "action taken by the district court" that could be considered, let alone rendered, null or void.[6]

---

[6] The court also rejects Defendants' contention that Ms. Forby did not follow the AAA's rules in her attempts to arbitrate. *See* Defs.' Brief in Support of Mot. to Compel 19, Doc. 143. Ms. Forby provides proof of compliance with the AAA rules in her appendix to her response. *See* App. to Pl.'s Brief in Opp. to Defs.' Mot. to Compel, Aff. of Lisa D. Mendeles, Doc. 146 at 1-3.

**Memorandum Opinion and Order – Page 20**

In summary, while Ms. Forby's CROA claim was originally arbitrable under the Arbitration Agreement, developments since the Fifth Circuit's decision in *Forby II* have altered the analysis under the plain terms of the FAA. At this juncture, there is no "failure, neglect, or refusal . . . to arbitrate" under Section Four of the FAA, as Ms. Forby sought to arbitrate her CROA claim following *Forby II* and was turned away by the AAA because of Defendants' failure to comply with the AAA's policies and rules. In accordance with the parties' Arbitration Agreement, and pursuant to R-1(d) of the AAA's Consumer Rules, to which the parties agreed, because the AAA declined to arbitrate her claim, Ms. Forby may now choose to submit her claim before the court. Otherwise stated, this matter has reached the court under terms to which Defendants agreed to be bound and they cannot now be heard to complain about enforcement of the terms. Accordingly, the court **denies** Defendants' Motion to Compel Arbitration.

    2.   *Other Remedies*

Defendants also contend that, in "the unlikely event it is needed," the court should designate and appoint an arbitrator to conduct arbitration of Ms. Forby's CROA claim pursuant to 9 U.S.C. § 5. *See* Defs.' Brief in Support of Mot. to Compel 17, Doc. 143.

The FAA provides, in relevant part:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator . . ., then upon the application of either party to the controversy the court shall designate and appoint an arbitrator. . . .

9 U.S.C. § 5.

"Caselaw has described a lapse under Section 5 as a lapse in time in the naming of the arbitrator or in the filling of a vacancy on a panel of arbitrators, or some other mechanical breakdown in the arbitrator selection process." *Adam Techs. Int'l S.A. de C.V. v. Sutherland Glob.*

**Memorandum Opinion and Order – Page 21**

*Servs., Inc.*, 729 F.3d 443, 451 (5th Cir. 2013) (internal quotation marks and citation omitted). Here, the facts of the case show no "lapse" under Section 5. There was no lapse in the naming of an arbitrator or in the filling of a vacancy on a panel of arbitrators. There was no mechanical breakdown that requires the court's intervention. Instead, it was Defendants' failure to register the arbitration clause and pay the fee, in addition to the eventual rejection of the proffered arbitration clause as noncompliant with its Consumer Rules, that prompted the AAA to decline to administer the arbitration.

Further, Ms. Forby initiated the arbitration of her CROA claim; she did not "fail to avail" herself of the arbitration process. *Cf. Greco*, 2020 WL 5628966, at *4 (no need to appoint arbitrator under § 5 when party sought arbitration and co-party's failure to follow rules prompted the arbitrator to direct the parties to court).[7] Accordingly, the court declines Defendants' request that it designate and appoint an arbitrator pursuant to 9 U.S.C. § 5.

## IV.    Plaintiff's Motion for Relief from Order or Judgment Pursuant to Rule 60

In Plaintiff's Motion for Relief from Order or Judgment Pursuant to Rule 60 ("Motion for Relief from Order"), Ms. Forby asks the court for relief from its July 22, 2020 Memorandum Opinion and Order (Doc. 129). In that decision, incorporated by reference as if fully set forth herein, the court granted Defendants' Motion to Reconsider and vacated its prior ruling denying Defendants' motion to strike Ms. Forby's class allegations asserted in her Second Amended Complaint. *See Forby*, 2020 WL 4201604. Ms. Forby argues that the court should reverse that decision because, based on the AAA's declination letter, Defendants "cannot compel [her] to

---

[7] In addition, Defendants do not appear of one mind whether the AAA is an available forum or whether they seek the appointment of a substitute arbitrator to conduct the arbitration pursuant to AAA rules. At times in their briefing, Defendants argue that the court should appoint a substitute arbitrator and at other times contend that the court need not appoint a substitute arbitrator, as the AAA is available regardless of whether Ms. Forby had attempted to arbitrate, making it unclear what remedy Defendants are requesting.

arbitrate her claims"; they "could not have compelled any consumers' claims to arbitration before October 26, 2021"; and "because the Terms and Conditions, even if they are enforceable—which they are not, do not waive any consumers' right to represent or participate in class action proceedings." Pl.'s Mot. for Relief from Order 1, Doc. 140.

In response, Defendants argue that, even were the court to deny their motion to compel arbitration, for the reasons set forth by the court in its prior opinion, Ms. Forby's "request for relief to reassert her class claims should be rejected because members of the putative class are not parties to this litigation and are bound by their agreement to arbitrate any and all disputes with Defendants." Defs.' Resp. & Brief in Opp. to Pl.'s Mot. for Relief 1, Doc. 144. For the reasons that follow, the court agrees with Defendants.

### A.  Legal Standard

As a threshold matter, the court notes that Ms. Forby's motion is styled as one under Federal Rule of Civil Procedure 60, and she contends that she is entitled to relief from the court's July 22, 2020 Memorandum Opinion and Order under subsections (b)(2), (b)(5), and (b)(6) of Rule 60. Rule 60, however, is for reconsideration of final orders—it does not apply to interlocutory orders. *See* Fed. R. Civ. P. 60(b). "Orders granting or denying class certification . . . are 'inherently interlocutory.'" *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1706 (2017) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 470 (1978)).

Although the Federal Rules of Civil Procedure do not explicitly provide for motions for reconsideration, Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to "revise[] at any time" "any order or other decision … [that] does not end the action." *Austin v. Kroger Texas, L.P.*, 846 F.3d 326, 336 (5th Cir. 2017) (citing Fed. R. Civ. P. 54(b)). Under Rule 54(b), the court generally reconsiders evidence before it at the time

of its prior opinion and order; however, "a district court has the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Iturralde v. Shaw Group, Inc.*, 512 F. App'x 430, 432 (5th Cir. 2013) (internal quotation marks and citation omitted). As such, although Ms. Forby seeks relief pursuant to Federal Rule of Civil Procedure 60(b), the court will consider her motion as properly styled under Federal Rule of Civil Procedure 54(b), as she is not challenging a final judgment, but rather an interlocutory order striking her class allegations.

### B. Analysis

In its July 22, 2020 Memorandum Opinion and Order, the court granted Defendants' Motion to Reconsider and vacated its prior ruling denying Defendants' motion to strike Ms. Forby's class allegations asserted in her Second Amended Complaint. The court held that Defendants "have not waived their rights to compel arbitration against the absent class members, nor can the court make such determination prior to class certification, as the class members are not yet parties to the litigation." *Forby*, 2020 WL 4201604, at *8. The court also recognized that any ruling on enforceability of the arbitration clause as to putative class members would be procedurally improper and akin to an "impermissible advisory opinion." *Id.* (quoting *Cruson*, 954 F.3d at 251 (citation omitted)). Otherwise stated, the court concluded under applicable law that when the claims of absent putative class members are facially subject to arbitration agreements, as in this case, the court cannot opine on whether Defendants waived their right to arbitrate those claims. *See id*.

In her Motion for Relief from Order, Ms. Forby offers no persuasive grounds for the court to depart from its analysis in its prior decision. Moreover, nothing that has taken place in the course

of this litigation has altered the court's reasoning. Further, Ms. Forby fails to cite any case law in support of her argument.

Finally, insofar as Ms. Forby argues that her class allegations are proper because the Arbitration Agreement only precludes class-wide arbitration and not class claims in a judicial forum, the court rejects this contention for the reasons previously stated in its July 22, 2020 Memorandum Opinion and Order. There, the court declined to accept what it termed Ms. Forby's "escape[-]hatch" argument," because putative class members who are bound by an arbitration agreement cannot get around that agreement by asserting their claims as a class in federal court. *See generally Forby*, 2020 WL 4201604, at *8.

In summary, and as discussed by the court in its July 22, 2020 decision, the court declines to weigh in on the arbitrability of agreements signed by absent putative class members, as any such ruling would be procedurally improper and akin to an advisory opinion. Accordingly, the court **denies** Plaintiff's Motion for Relief from Order or Judgment Pursuant to Rule 60.

## V.      Plaintiff's Opposed Motion for Leave to File Fourth Amended Complaint

Ms. Forby has also filed a Motion for Leave to File Fourth Amended Complaint ("Motion for Leave"). She requests (i) leave to reassert claims on behalf of absent putative class members; and (ii) leave to add a claim seeking equitable relief under 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 to obtain a declaration that One Technologies is a Credit Repair Organization and that the Terms and Conditions are void because it is a Credit Repair Organization. Defendants oppose the motion.

In any event, Ms. Forby's request for leave to file a Fourth Amended Complaint to reassert claims on behalf of absent putative class members is inextricably intertwined with her Motion for Relief from Order, both filed the same day. Because the court has denied her Motion for Relief

from Order, *see supra* Sec. IV, and thereby declined to modify its prior decision striking her class allegations, her Motion for Leave to reassert claims on behalf of absent putative class members is moot.

Ms. Forby's request for leave to file a Fourth Amended Complaint to add a claim seeking declaratory relief concerning One Technologies' alleged status as a Credit Repair Organization and the validity of the Terms and Conditions is largely duplicative of her claims in her Third Amended Complaint. In the Third Amended Complaint, the live pleading, Ms. Forby contends that One Technologies is a Credit Repair Organization. *See* Third Am. Compl. ¶¶ 37-42, Doc. 130; *id.* ¶ 43 ("As a result, Defendants are Credit Repair Organizations as defined in the CROA."). In her Third Amended Complaint, she asserts a claim for "Violations of the Credit Repair Organization Act." *Id.* at 12. She alleges that One Technologies engaged in conduct declared unlawful under the CROA by: (1) charging consumers for services before fully performing them, in violation of § 1679b(b) of the CROA; (2) failing to give consumers notice of their rights, as required by §§ 1679c(a) and 1679e(b) of the CROA; and (3) trying to get consumers to waive their CROA rights, in violation of § 1679f(b) of the CROA. *Id.* ¶ 60. She also alleges that One Technologies' failure to adequately disclose that consumers would incur a $29.95 recurring monthly fee constituted a fraud or deception on her. *Id.* ¶ 59

Further, as Defendants correctly note, "Because Forby has pleaded One Technologies violated the CROA and has therefore assumed the burden of proving that One Technologies is a Credit Repair Organization as defined in 15 U.S.C. § 1679a(3), One Technologies' status as a Credit Repair Organization is already at issue in this lawsuit." Defs.' Resp. in Opp. to Pl.'s Mot. for Leave 6, Doc. 147. *See generally CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) ("[CROA] regulates the practices of credit repair organizations[.]").

**Memorandum Opinion and Order – Page 26**

In summary, having carefully considered the allegations in the Third Amended Complaint and the allegations in the proposed Fourth Amended Complaint, the court concludes that Ms. Forby's proposed request to assert claims for declaratory relief in a Fourth Amended Complaint duplicates her CROA claim already alleged in the Third Amended Complaint.

For these reasons, the court **denies as moot** Plaintiff's Opposed Motion for Leave to File Fourth Amended Complaint.

## VI.     Conclusion

For the reasons herein discussed, the court **denies** Defendants' Motion to Compel Arbitration (Doc. 142); **denies** Plaintiff's Opposed Motion for Relief from Order or Judgment Pursuant to Rule 60 (Doc. 140); and **denies as moot** Plaintiff's Opposed Motion for Leave to File Fourth Amended Complaint (Doc. 138).

Remaining are Ms. Forby's claims that Defendants violated the Illinois Consumer Fraud Act., 815 Ill. Comp. Stat. 505/1 *et seq.*, and violated the Credit Repair Organizations Act, 15 U.S.C. § 1679 *et seq*. In accordance with Federal Rules of Civil Procedure 16(b) and 26(f), the court will issue an Order Requiring Attorney Conference and Status Report forthwith.

**It is so ordered** this 21st day of July, 2022.

_Sam A. Lindsay_
Sam A. Lindsay
United States District Judge